# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

*v.*

**EDWARD JACOB LANG,**

   *Defendant.*

**No. 21-CR-53 (CJN)**

## DEFENDANT LANG'S REPLY MEMORANDUM
## <u>IN SUPPORT OF BOND MOTION</u>

The government's opposition makes the first argument that "there are no conditions or combinations of conditions which can effectively ensure that the safety of any other person and the community." (*See* ECF Doc. 31 at p. 23). However, this Court, even with J6 Defendants has established that it can "order appellant's pretrial release subject to appropriate conditions, including home detention and electronic monitoring." *United States v. Tanios*, 856 Fed. Appx. 325, 326 (D.C. Cir. 2021)(*citing United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021)).

On the full record, and after the upcoming in-person hearing[1] on this matter, we believe Defendant Lang justifies being released on bond, with strict conditions. To this day, not only has the government zealously opposed Mr. Lang's right to defend against this case while on pretrial release, instead of inside the DC jail, where his lawyers cannot

---

[1] Scheduled for Monday, September 20, 2021.

even send him mail; the government yet gain attempts to create conditions of criminality in a vacuum, without telling the entire story, and how these men were seeing women, unarmed and defenseless being physically beaten by office, right in front of them.

The government's Opposition to Defendant Lang's Motion for Pretrial Release, bent the truth, and distorted facts in a vicious attempt to Edward Jacob Lang in the worst possible light, so as to deprive him of freedom, liberty, and justice. Some of the claims the government makes continue to be unsubstantiated and are more suitable for the tabloids, as it has become apparent that such misstatements will surely be further misrepresented immediately in the media.

What about men who showed up to peacefully protest, and when they went to challenge their government with words – where met with tear gas, flash bangs, and some odd gas that, Phillip Anderson put it as orange in color and immediately made people unable to breathe, almost instantly. Where is the faith in your government at that point. What do you do as a man when you see officers physically beating women, do you just turn a blind eye and back on an unarmed, defenseless women.

These helpless, unarmed women being physically beaten right in front of these men lends justification to these men's actions, especially Mr. Lang. When one first watches a video of the lower West Terrance door, commonly referred now as "the tunnel", one's mind could think a thousand thoughts about the protestors. However, upon a closer examination, there are women trapped in "the Tunnel" with the MPD officers, and these women are elderly, unarmed, and being physically beaten by

numerous male officers with batons and metal poles. Those close-up images are not being portrayed in the media.

What about Rosanne Boyland, who actually died, and videos have since captured her being beaten while she lay unconsciously on the ground by officers with batons.

Mr. Lang recused people, who were on the verge of being substantially beaten by officers. He took efforts to rescue women being beaten by officers. All we ask is that if the Court is going to analyze Mr. Lang's "attempted" assaults, one-by-one, in a vacuum, then it should consider the totality of the facts, and the officer's actions that afternoon. We ask this Court to consider the beatings officers were given women who merely showed up to have their voice heard – and the beatings theses men, such as Lang witnessed the officers handed these women right in front of them.

None of these officers were seriously injured because of Mr. Lang's actions. Mr. Lang witnessed women with their back turn to police being physically assault by police. He witnessed women being trapped with officers, who repeatedly beat these women with batons over the head. Not everyone intended to act the way the government has portrayed them.  Some responded, not out of wanting to harm officers, but in an effort to save lives, and separate protestors from the officers, and vice-versa.   Some of what Jake Lang did that day was in response to the sheer magnitude of the physical assault's officers imparted onto unarmed, helpless women.  From the woman being beaten in the tunnel with the red sweatshirt to Roseanne Boyland- Mr. Lang watched officers physically beat these women.

Edward Jacob Lang was standing right there, faced with the fact that he had to help recuse these unarmed, defenseless women, who were being beaten in the tunnel since as early as 2:00pm.  More people would have died on January 6th, but for Jacob Lang.

## I.   THE CONDUCT OF LAW ENFORCEMENT MUST BE ALSO CONSIDERED

The conduct of law enforcement on January 6, 2021, needs to be taken into consideration when one considers the actions of individuals at The Capitol that day. Again, Mr. Lang witnessed women with their back turn to police being physically assault by police. He witnessed women being trapped with officers, who were repeatedly beat over-the-head. Above we argue, Jake Lang's actions were in response to the sheer magnitude of the physical assault's officers imparted onto unarmed, defenseless, helpless women.

One such example is demonstrated in the video that the government disclosed to the defense, where the shear amount of violence officers handed against a women who is trapped in the tunnel on the side the officers are on, not on the side of protestors. (*See* Video 0074 USCH BA Lower W Terrace Door Exterior-2021-01-06_14h00min00s000ms at 2:05-2:10 attached as **Exhibit A**).

This three-hour video was reviewed for hours, and it took us lawyers hours to pin point the exact second were a "white substance" splashes onto the camera at the Lower West Terrance camera. (*See* Video 0074 USCH BA Lower W Terrace Door

Exterior-2021-01-06_14h00min00s000ms at 2:07:56 attached as **Exhibit A**). If one examines the video between approximately 2 hours and 5 minutes into the video, and watches it for a few minutes, you will be sick to your stomach at the physical violence, the beating, the savagery that takes place to a woman, wearing a red sweatshirt.[2] (*See* Video 0074 USCH BA Lower W Terrace Door Exterior-2021-01-06_14h00min00s000ms at 2:05- 2:10 attached as **Exhibit A**).

This woman appears to be between the age 50-60 years old, she is unarmed, and at times can be seen placing both of her hands in the air, as one who to surrender. She is continuously being beaten by a number of officers with what only appears to be batons, for minutes at a time. While officers are beating this unarmed, helpless woman, there is an officer standing on a ledge, and this officer is spraying this woman with a substance, right in his woman's face while other officers are beating her.

Then another officer is viewed on camera, who is out of the MPD gear, who is wearing a white, long sleeve shirt and MPDC helmet. This officer wearing the white shirt clearly strikes a baton to this woman repeatedly, so many times that we lost count. *See* Video 0074 USCH BA Lower W Terrace Door Exterior-2021-01-06_14h00min00s000ms at 2:08- 2:08:55 attached as **Exhibit A**).

---

[2] There are other protestors stuck in this section of the tunnel with the officers, where if you follow the officer on the ledge who is spying a substance, you can tell who is a protestor stuck in between the officers.

## II.   JUSTIFICATION AND THE DEFENSE OF OTHERS CREATES CIRCUMSTANCES WHERE CONDITIONS OR COMBINATIONS CAN EFFECTIVELY ENSURE THE SAFETY OF ANY OTHER PERSON AND THE COMMUNITY.
### (Responding to Government's Point One)

The government is very much aware that it lacks clear and convincing evidence of dangerousness under the meaning of the Bail Reform Act.  The government is also equally aware that it cannot prove that the Defendant is a flight risk by a preponderance of the evidence.  Because of this, and since the inception of this case, the government has distorted truth and misrepresented facts in a deliberate effort to compensate for its inability to demonstrate that the Defendant should be detained pretrial.   The government's continued misrepresentation and over charging is evidenced by the fact that they filed their Superseding Indictment on September 15, 2021, just days before the hearing in this matter, and on Erev Yom Kippur, the holiest period of the Jewish year. (*See* ECF Doc. #: 36 A, Superseding Indictment).

The Government's Superseding Indictment now contains 13 counts, which serve to paint a smoke screen to Defendant's actual actions on January 6, 2021.  Two examples are Count's One and Two.

Count One, states:

> On or about January 6, 2021, at or around 2:57 p.m., within the District of Columbia, EDWARD JACOB LANG, did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer and employee of the United States, and of any branch of the United States Government

(including any member of the uniformed services), and any person assisting such an officer and employee, that is, Sgt. J.M., an officer from the Metropolitan Police Department, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

Yet, even a cursory review of the Government's Exhibits E and F together indicate that although Mr. Lang is part of the crowd, where there are hundreds of people and officers involved. Everyone is pushing in various directions. What is for sure is that its uncertain and unclear whether Lang is the individual that intentionally kicked at Sgt. J.M., as demonstrated in the Officer's body camera footage.

While it is apparent that someone may have kicked at Sgt. J.M., its unclear if that person was able to actually kick the officer, and the intent is unclear, as its also uncertain with what was happening with that person's upper body, whose pushing this person around him, next to him, or what force is being applied behind this person's legs. Based off this officer's body camera footage, the videos presented by the Government are not clear and concise, where there were dozens of people pushing in the tunnel at this exact minute. The Government even admits in their opposition that "[a]lthough the top half of the person kicking is not visible . . . the pants and shoes match those worn by LANG . . .". (*See* ECF Doc. 31 at p. 10).  The government then offers Exhibit G as proof.

Further, the Government's Exhibit F is literally a one-minute video of an officer's body cam, who appears to be in a sitting position. Around 38 seconds into the video a foot can be seen. The viewer cannot tell what was going on, or who that person

is. The Government claims Lang kicked an officer, but based off this video, every single aspect is uncertain and unconclusive. There is a mob of hundreds if not thousands of people, where almost everyone is pushing in a separate direction, and this video must be used in conjunction to compare it to Lang's clothing. Upon further examination of the governments exhibits, there even appears to be another person who resembles Mr. Lang. This person is also wearing a black leather jacket, and is of the same build, and race as Lang. However, this individual is wearing a completely different hat then Mr. Lang. The Government even confuses this individual as Mr. Lang. So, if the top part of Mr. Lang is confused, then how can the lower part, not be confused as well.

The Government cited 18 U.S.C § 111 as standing for the Count One, yet Mr. Lang was not "forcibly assaulting, resisting, opposing, impeding, or intimidating" Sgt. J.M., if anything Mr. Lang repeatedly reiterated in Exhibit D that the officers were "squishing us" and protestors within the video indicated "I can't breathe" amongst all the commotion, and according to the People's opposition Exhibit D occurred right before the videos marked Exhibit E and F.

Furthermore, Count Two states:

> On or about January 6, 2021, at or around 3:08 p.m. to 3:13 p.m., within the District of Columbia, EDWARD JACOB LANG did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, while such person was engaged in and on account of the performance of official duties, and where the acts in

> violation of this section involve physical contact with the
> victim and the intent to commit another felony.

The Government cites yet again 18 U.S.C. § 111, during the times mentioned within the description the Government referenced Exhibits K1 – K2 within their opposition. Exhibit K1 is a video depicting Mr. Lang standing within the tunnel, and while he is behind several protestors, in concert, they are all proceeding to push the crowd and are completely stuck.  After a moment, Mr. Lang moves to the side to put water on his face due to the pepper spray[3] that officer's sprayed in his face. In Exhibit K2, Mr. Lang no longer continues to push within the crowd, in fact he stands among the crowd as they pass shields around, at no point was Mr. Lang "forcibly assaulting, resisting, opposing, impeding, or intimidating" anyone.

Overall, throughout this case, and other January 6 cases, the presumption of innocence has been eviscerated by the Government and the media by using terminology that has imparted a belief that those who have been charged, are guilty.[4]  For example, the Government calls the defendant "rioters", "protestors,"[5] states that the defendant was "fighting," without a single finding that the defendant was rioting or fighting. Further, the government has weaponized their words and infected the potential jury

---

[3] Or whatever chemical Officers were using at that minute, tear gas, or the orange substance that made people unable to breathe.

[4] **(j) Presumption of innocence.**--Nothing in this section shall be construed as modifying or limiting the presumption of innocence.  18 U.S.C.A. § 3142 (West).

[5] *See* ECF Doc. 31 at pgs. 6, 7, 8,9, 10, 11, 13, etc.

pool by constantly using these words, and insurrectionist, even though Defendant Lang superseding indictment is devoid a single charge of insurrectionism, or the fact Mr. Lang has not been convicted of a single one of these counts.

The Government has even found defendant Lang guilty already by stating in their papers that Defendant, " 'actually assaulted' multiple police officers in multiple ways for hours." (*See* ECF Doc. 31 at p. 25). The presumption of guilt has infected this proceeding, and other January 6 ones that the chance of ever obtaining a fair and impartial jury is non-existent, especially when the Government has already found the defendant guilty, even though that is a jury's job.

Overall, it is respectfully submitted that this Court is left with considering whether Lang presents an identifiable or articulable future threat to the community, or any other person as required under *Munchel. United States v. Munchel*, 991 F.3d at 1282-1283.

Here the Government indicates a variety of reasons on why Defendant Lang should not be granted bond, or why there are no conditions ensuring the safety of the community. In one breathe the Government paints Defendant as, "LANG tried to get the attention of law enforcement to get assistance for a woman that was unconscious in the crowd of rioters being pushed out of the tunnel. He also appears to have helped drag another individual out from underneath other rioters that had been pushed out of the tunnel… other rioters, not including LANG, began violently attacking the officers with a variety of sticks and weapons." (*See* ECF Doc. 31 at p. 14).

The government in citing these Lang actions, fail to reference all the violence going on around Lang, and nonetheless he risked his life to help several people that needed help, and how such actions warrant a defense of others.

This is a case that screams for an expansion of *Munchel*, and for Defendant Lang to be granted Bond for having a defense of others defense to his assault, and attempted assault charges. In light of such, and based on the fact that while on Bond, Lang will not witnesses these horrific actions by officers yet again, there are various conditions or a "combination of conditions of release would reasonably assure the safety of the community" if Lang is placed on home incarceration with electronic monitoring. *Cf. United States v. Tanious*, No.21-3034 (D. C. Cir., Sept. Term 2020), 1:21-cr-00222 (TFH) (*citing United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021).

No matter what picture the Government is trying to paint of the Defendant, there is evidence of his humanity and life-saving skills and ability. He showed Phillip Anderson humanity, by saving his life, with little to no regard for his own life. Jake's conduct was selfless, kind and establishes that Jake is a good person, and good people still exist in this world. As Mr. Anderson has stated, "If it wasn't for Jake, I would have been killed by the police on January 6. I am alive today because he saved my life." (*See* Affidavit of Philip Anderson attached to original bail application as **Exhibit A** and Government's C[6]).

---

[6] In this same exhibit, Defendant stated to his mother, that he was pounding on a woman's chest to perform CPR. One can conclude that this woman was probably Roseanne Boylan.

Simply put, Lang needs to adequately prepare for his defense as this matter will most likely go to trial. Lang can do that from the inside of his house, without posing a single threat to the community or any individual.

Therefore, the government's proofs regarding dangerousness lacks sufficient explanation.

We submit that several new factors and information has come to light of undersigned counsel, that justifies this Court granting Defendant's bond application. And lest not forget that the defendant retains the presumption of innocence.

### III.   DEFENDANT LANG HAS CLEARLY DEMONSTRATED THAT THE CONDITIONS AT DC JAIL (CTF) JUSTIFY HIS RELEASE (Responding to Government's Point Two)

The government misses the point about the defendant's access to the discovery as relevant to the bail application.  If there is absolutely no condition by which he can review the discovery while he is incarcerated in a meaningful manner, that factor must be taken into consideration when evaluating an application for bail.  If a defendant is denied the opportunity to participate in his own defense, including reviewing discovery material, then a clear appellate reversable issue would exist if a trial occurred and the defendant claimed he was denied the opportunity to review discovery and participate in his own defense.

The computer policy in place at the CTF is not constitutionally sufficient to guarantee that the defendant has a full and meaningful access to a laptop to review discovery.  As we noted in our opening application, laptop policies around the country

provide defendant's more access than what the CTF policy allows.  For example, a prisoner in New York has access to a laptop 7 days a week, more than 12 hours a day.

The DOT Policy[7], dated March 15, 2021, raises a number of issues that create a number of problematic matters that will deny defendant full and adequate access to a laptop to review discovery.

We draw the court's attention to some of the problems with the policy:

(1) Electronic discovery (i.e., CD's, DVD's, USB flash drives) cannot be mailed to the prisoner (*See*, ¶ #1 of Policy);

(2) After receipt of the discovery, the inmate will be put on a waitlist to review the discovery. (*See*, ¶ #2 of Policy);

(3) An inmate will be allowed up to two (2) weeks to review the electronic evidence and if he needs more time, there is a waitlist (*See*, ¶ #3 of Policy);

(4) If an inmate needs more time, he may file a grievance (*See*, ¶ #3 of Policy);

(5) After an inmate has conducted his review, the attorney should collect the evidence (*See*, ¶ #5 of Policy);

(6) There is no "guarantee that inmates will review any and/or all evidence provided to the DOC." (*See*, pg. 2 of Policy);

(7) "Currently, there is a several week's long waitlist to review evidence on laptops at DOC which fluctuates depending on the demand for this service." (*See*, pg. 2 of Policy);

---

[7] Procedure for Voluminous or Electronic Evidence Review at the Department of Corrections During the COVID-19 Pandemic (dated March 15, 2021).

(8) "[C]ontact and contactless in-person attorney visits resumed at the DOC on June 22, 2020, and are still available to defense attorneys." (*See*, pg. 2 of Policy). We note for the record that we submitted a request to visit another client on August 12, 2021, and to date haven't received a response; and

(9) "A contact visit will result in an inmate being placed in a medical enhanced monitoring unit for up to 14 days following the visit." (*See*, pg. 2 of Policy). So, if we were to visit our client, he would be penalized and placed in medical solitary confinement as a result of seeing his counsel face-to-face.

The totality of the program does not muster a constitutional challenge about a defendant having adequate access to the discovery and participating in his own defense. Considering the constitutionally deficient program at DOC, bail should be granted.

The Government recognizes that if a defendant meets with his counsel, and he is not vaccinated he must quarantine for 14 days. (*See* ECF Doc. 31 at p. 29). The Government and the Department of Corrections are putting Defendant's into a Catch 22. If you choose not to get vaccinated, then you are penalized by exercising your right to counsel. So, you have to succumb and get vaccinated, even if it is against ones religious belief, medical condition or some other foundation. If Defendant Lang was free on bond, this would not be an issue.

The Government states that mistreatment in the jail is not a basis for release. We would submit that the conditions in the DC Jail violate the Eighth Amendment in that, "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *See* Eight Amendment of US Constitution. Further,

the 14th Amendment prohibits states from abridging "the privileges or immunities of citizens of the United States" and from depriving "any person of life, liberty or property without due process of law." *See* Fourteenth Amendment of US Consitution.

The Government's position that the issues raised about the conditions of confinement, access to counsel, and related complaints can all be addressed in a civil proceeding.  However, a significant of them are centered around the defendant's right to counsel and right to access to the discovery in his case.  All of which could be alleviated by the granting of bond.

### IV.   DEFENDANT LANG HAS PRESENTED ADEQUATE INFORMATION REGARDING THE NATURE AND CIRCUMSTANCES OF THE OFFENSES THAT JUSTIFY GRANTING OF BOND (Responding to Government's Point Three)

The government has a duty to disclose all material that is not just exculpatory, but favorable to the accused, sufficiently in advance of a trial.  Further, the Government has an ongoing duty to disclose such materials.  The Government's recent disclosures about the delays in disclosing discovery is a new and changes the landscape of bond applications.  The government is further obligated to disclose all material that can be considered exculpatory, impeachment, etc. pursuant to the Rules of Evidence and Supreme Court precedent.[8]

---

[8] *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*, 473 U.S. 667 (1985); *Strickler v. Greene*, 527 U.S. 263 (1999); *Mackabee v. United States*, 29 A.3d 952 (D.C. 2011) and *Miller v. United States*, 14 A.3d 1094 (D.C. 2011)).

The Government in recent court appearances have publicly acknowledged that they most likely will not be able to satisfy all their discovery obligations, especially their obligations to disclose all *Brady* materials in a timely manner.[9]

Mr. Lang should not remain in prison any longer unless the government states affirmatively that every single piece of discovery, including information favorable to the accused has been disclosed.  If not, Lang should be released on bail.

The Government has publicly stated that materials, such as grand jury transcripts, videos, exculpatory material, and other materials may not be fully disclosed until 2022. The Government has submitted two Memorandum's Regarding Status of Discovery, one dated August 23, 2021 and September 14, 2021 (*See* ECF Docs. 30 and 35).  In the September 14, 2021 memorandum, we learn a number of factors that need to be taken into consideration when considering the continued detention of Defendant Lang:

1. The Government is setting up a discovery repository with an outside company which will use Relativity as the host program;
2. There are 2,300 hours of body-worn-camera videos;
3. The government is "hopeful" to have all production by September 24, 2021;
4. The government has uploaded 20% of what they consider "relevant" USCP surveillance footage, that includes in excess of one terabyte of video, consisting of about 140 cameras, 4900 files, and 1,600 hours of footage";

---

[9] *See* https://beckernews.com/22-the-doj-admits-it-is-withholding-potentially-exculpatory-evidence-in-january-6-criminal-cases-in-legal-filing-40792/ https://www.npr.org/2021/07/27/1013500073/the-justice-department-is-struggling-to-bring-capitol-riot-cases-to-trial-heres-; https://www.nytimes.com/2021/08/10/us/politics/jan-6-investigation-evidence-speedy-trials.html; https://www.washingtonpost.com/local/legal-issues/capital-riot-evidence-cost/2021/07/16/d5e81bdc-e404-11eb-8aa5-5662858b696e_story.html

5. That defense counsel will not receive Axon licenses until "approximately one week after the first significant production of discover is loaded in the defense instance evidence.com platform";

6. That the Government "believes" by October, the defense could have access to Relativity, however, "the defense Relativity database will be partially populated in October, we do not expect it to be complete at that time";

7. "On Friday, September 10, 2021, the Discovery Team made available for production in all Capitol Breach cases approximately 850 pages consisting of redacted reports from USCP investigations of alleged wrongdoing by USCP officers on January 6, 2021. We anticipate providing Metropolitan Police Department internal investigation reports (approximately 600 pages) by next week. We are still reviewing the approximately 30,000 files in Relatvity that were provided to us by USCP"; and

8. "In collaboration with FPD, we are developing proposals to increase access by incarcerated defendants to voluminous materials, which we expect to share with D.C. Department of Corrections and to discuss within the next two weeks."

What is most revealing is that there isn't a single discussion on how those who are incarcerated will gain access to the Relativity platform, thereby exacerbating the problem of defendant's having access to the discover in their own case.

No defendant should remain in prison, especially a defendant that is not been charged with the death of someone, without having bond set.

## V.   DEFENDANT LANG HAS ESTABLISHED A CONSTITUTIONAL VIOLATION AS A RESULT OF OTHER DEFENDANTS' RELEASE

Section 1 of the Fourteenth Amendment states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make

> or enforce any law which shall abridge the privileges or
> immunities of citizens of the United States; **nor shall any**
> **State deprive any person of life, liberty, or property,**
> **without due process of law; nor deny to any person**
> **within its jurisdiction the equal protection of the laws.**

(emphasis added)

If individuals across the United States are charged with similar or harsher crimes than the defendant, and they are being released on bail, that is clearly a denial of equal protection of the law.  The fact that a defendant committed a crime at The Capitol should not weigh more heavily against him, then if he committed a similar crime elsewhere.

That the Court's prior ruling and the government's position, are entirely out of line with legal precedent as demonstrated by the fact that persons accused of far more egregious crimes under analogous circumstances have consistently been released because the of the strength of the Bail Reform Act's presumption against pretrial detention.

Some examples of cases where bail was granted are:

(a) Elizabeth Ann Duke, a member of the radical and extremely violent M19 terrorist group, who materially participated in the bombing of the United States Capitol's Senate Chamber on November 7, 1983.  Despite being charged with multiple crimes related to domestic terrorism, including the possession of stolen explosives, possession of instruments of forgery, and falsified identification documents- Elizabeth Duke was released on bail during a time that the Bail Reform Act did not even exist. (*See United States v. Elizabeth Duke*, Case No. 2:58-cr-00222 (MSG); Criminal Docket:  ECF Document No. 69, (filed June 20, 1985).

(b) In the case of *United States v. Robinson*, where on May 28, 2020, Dylan Shakespeare Robinson was granted pretrial release by the U.S District of Minnesota despite materially participating in a nationally televised coordinated attack on Minnesota's 3rd Precinct, where after breaching the doors, the interior was set ablaze with officers still inside.[10] (*See United States v. Robinson*, Order Setting Conditions of Release, Case #: 0-20-cr-00181 (PJS) (BRT), ECF Doc.#: 12.

(c) On May 30, 2020, Utooj Rahman and Colinford Mattis firebombed an NYPD vehicle parked on a Brooklyn, New York street, without regard for the safety of thousands of protesters and police. Rahman and Mattis were subsequently charged with several violent felonies and faced over forty years in jail if convicted. Even so, the Eastern District of New York granted bond, and the Second Circuit Court of Appeals affirmed.[11] (*See United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020). Defendants Rahman and Mattis were subsequently charged with several violent felonies, and nonetheless release on pretrial bond.

(d) *United States v. Chrestman,* 2021 WL 765662 (D.D.C February 26, 2021), slip op. at *1-2 (detention ordered for Proud Boy defendant who brandished an axe handle; wore a tactical vest, a hard helmet and a gas mask; toppled the metal barriers used by police to hold back the crowd; was on front lines and threatened a police officer, "You shoot and I'll take your fucking ass out"; encouraged others to interfere with police officers' arrest of a protester; and used his axe handle to prevent police from closing barriers to Capitol building), *with United States v. Cua*, 2021 WL 918255 (D.D.C. March 10, 2021), slip op. at *1 (detention not justified for defendant who previously called for execution of elected officials and "glorified violent protest," and who on January 6, 2021, walked through Capitol building twirling a black baton, attempted to open office doors in the Capitol, thrice shoved aside a police officer to enter the Senate Chamber, sat "atop the Senate dais in the chair previously occupied by former Vice President Mike Pence, with his feet up on [] the desk," and photographed senators' papers in the chamber).

(e) *United States v. Hunter Ehmke*, 21-cr-29 (TSC) (detention not justified for defendant who broke window of Capitol building and did not cease when ordered to do so by police officer)

---

[10] *U.S. v. Robinson, Order Setting Conditions of Release* (ECF Document No. 12 July 14, 2020).

[11] *United States v. Mattis*, 963 F.3d 285 (2d Cir. 2020).

(f) *United States v. Jones*, 21-mj-76 (ZMF) (government did not seek detention for defendant who violently broke glass of doorway to House chamber (doorway Ashley Babbitt tried to climb through seconds later));

(g) *United States v. Gossjankowski*, 21-cr-123 (PLF) (government did not request detention for defendant who activated taser in Capitol multiple times); *United States v. Miller*, 21-cr-75 (RDM) (detention not justified for defendant who discharged fire extinguisher onto police officers and used a crowd barrier fence as a ladder to scale the Capitol building walls);

(h) *United States v. Powell*, 21-cr-179 (RCL) (detention not justified despite presumption of detention for crime of violence for defendant who used a battering ram to break a window of the Capitol, climbed in, came back out, used bullhorn to direct others inside with what seemed to be detailed knowledge of the floor plan, and exhorted others to break another window);

(i) *United States v. Leffingwell*, 21-cr-5 (ABJ) (government did not request detention of defendant who repeatedly punched a police officer at Capitol with a closed fist and breached line of officers attempting to keep people out of the building);

(j) *United States v. Capsel*, 21-mj-122 (RMM) (detention not justified for defendant captured on video physically fighting National Guardsmen who were attempting to hold a boundary, and who did not desist until he was sprayed with pepper spray);

(k) *United States v. Colt*, 21-cr-74 (TFH) (government did not request detention of defendant wearing assault gear who scaled the wall of the Senate chamber, later proclaimed on social media that he was the first person to sit in former Vice President Pence's chair, and called Speaker Pelosi a "traitor");

(l) *United States v. DeCarlo/Ochs*, 21-cr-73 (BAH) (government did not request detention for Proud Boy organizers who planned and fundraised for the riot, one of whom had Proud Boys name tattooed on his body, who posted their obstructionist intent on social media, defaced the Capitol building with the words, "Murder the Media," and took flexicuffs from the Capitol);

(m) *United States v. Bisignano*, 21-cr-36 (CJN) (detention justified for defendant accused of being an "instigator, a director, and an active participant in the violence, destruction and obstruction at the Capitol," who was on the front

lines pushing against the police, shouted through a bullhorn, "Everybody, we need gas masks! We need weapons! We need strong, angry patriots to help our boys!" and who is charged with destruction of property);

(n) *United States v. Cudd*, 21-mj-68 (TNM) (government did not request detention for defendant who livestreamed video from inside Capitol building stating that to gain entrance "we just pushed, pushed, and pushed, and yelled go and yelled charge," and said "fuck yes, I am proud of my actions, I fucking charged the Capitol today with patriots today. Hell, yes, I am proud of my actions," and later told a new station, "Yes, I would absolutely do it again").

Overall, these line of cases, establish the continued enforceability of the Bail Reform Act's presumption against pretrial detention. Especially, during circumstances where in can be reasonably inferred that a person's actions arise from an ardent desire to openly criticize the actions of government. The Court's granting of the government's motion for against pretrial release, when viewed in light of the *Duke-Robinson-Mattis-Munchel*, is grossly unjust because the objective facts regarding Defendant's personal history. The fact that Edward Lang remains detained simply cannot be justified.

## VI.   CONCLUSION

The government's argument in favor of pretrial detention is unsupported by facts demonstrative of risk of flight or danger to the community. The government has also utterly failed in demonstrating a specific articulated future threat of dangerousness but has instead advanced speculation and conjecture in its absence. Jake's personal history, community ties, and the support of his parents are more than sufficient proof to rebut

any presumption of detention. Because of this, Jake Lang should be released from the dangerous conditions of punishment in the DC Central Detention Facility.

**WHEREFORE**, for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant, Jake, through counsel, respectfully requests that he be released on personal recognizance. If that request is denied, defendant requests as an alternative, that he be released on Third Party Custody and placed under the Supervision Pretrial Services under the reasonable conditions of electronic monitoring, work release, out of state travel restrictions and curfew.

Dated: September 17, 2021

Respectfully Submitted,

*Martin Tankleff*
_____
MARTIN H. TANKLEFF, ESQ.
**Metcalf & Metcalf, P.C.**
*Attorneys for Lang*
99 Park Avenue, 6th Floor
New York, NY 10016
*Phone* 646.253.0514 / *Fax* 646.219.2012
martytankleff@gmail.com

/s/ **Steven A. Metcalf II, Esq.**
_____
STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
*Attorneys for the Lang*
99 Park Avenue, 6th Floor
New York, NY 10016
*Phone* 646.253.0514
*Fax* 646.219.2012
metcalflawnyc@gmail.com