```
1                  BEFORE THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2

3      UNITED STATES OF AMERICA,         .
                                         .  Case Number 21-cr-32
4              Plaintiff,                .
                                         .
5          vs.                           .
                                         .
6      GUY WESLEY REFFITT,               .  March 8, 2022
                                         .  9:30 a.m.
7              Defendant.                .
       - - - - - - - - - - - - - - - - -
8

9                       TRANSCRIPT OF JURY TRIAL
                 BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                   UNITED STATES DISTRICT JUDGE

11

12     APPEARANCES:

13     For the United States:      JEFFREY NESTLER, AUSA
                                   RISA BERKOWER, AUSA
14                                 United States Attorney's Office
                                   555 Fourth Street Northwest
15                                 Washington, D.C. 20530

16     For the Defendant:         WILLIAM WELCH, III, ESQ.
                                   5305 Village Center Drive
17                                 Suite 142
                                   Columbia, Maryland 21044
18

19

20

21     Official Court Reporter:    SARA A. WICK, RPR, CRR
                                   333 Constitution Avenue Northwest
22                                 U.S. Courthouse, Room 4704-B
                                   Washington, D.C. 20001
23                                 202-354-3284

24
       Proceedings recorded by stenotype shorthand.
25     Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2         (Jury not present.)
 3              COURTROOM DEPUTY:  Your Honor, we are in Criminal
 4    Action 21-32, the United States of America versus Guy Reffitt.
 5              Representing Mr. Reffitt, we have Mr. William Welch, and
 6    representing the United States, we have Mr. Jeffrey Nestler and
 7    Ms. Risa Berkower.
 8              THE COURT:  Okay.  So we'll bring the jury in.  I will
 9    read the concluding instructions.
10         And you all, I take it, have gone through the exhibits and
11    are all on the same page about what's going back in the jury
12    room?
13              MR. WELCH:  Yes, Your Honor.
14              THE COURT:  All right.  And you're all okay with the
15    verdict form and the set of instructions I've read thus far and
16    you've seen?
17              MR. WELCH:  I haven't seen the verdict form.  I've
18    seen the instructions and read them.
19              THE COURT:  The law clerk has copies.  Why don't you
20    give them those two copies, and then we will have to take one
21    back to go in the binders for the jurors.
22              MR. NESTLER:  The verdict form is fine with us.  The
23    instructions are fine with us.
24         This morning, Mr. Welch, Mr. Hopkins, and I went through
25    all of the exhibits, physical items, the multimedia exhibits on
```

1     a flash drive, and also a binder with the photographs.

2              THE COURT:  Okay.

3              Mr. NESTLER:  And we've given them all to Mr. Hopkins

4     and --

5              THE COURT:  Great.

6              MR. NESTLER:  -- believe they are ready to go.

7              THE COURT:  Great.  Are you all going to be, if not in

8     the courthouse, nearby, 15 minutes away?

9              MR. NESTLER:  Yes, Your Honor.

10             THE COURT:  All right.  Mr. Welch, are you okay with

11    everything?

12             MR. WELCH:  Yes.  I will be in the courthouse.

13    Mr. Hopkins knows where to find me.

14             THE COURT:  Okay.  Terrific.

15        Yes, Mr. Nestler.

16             MR. NESTLER:  Sorry.  The only last issue is we had

17    prepared an exhibit list to accompany our exhibits.  Mr. Welch

18    objected to providing the jury with a copy of the exhibit list.

19    And so we leave that question for the Court's consideration.

20             THE COURT:  Mr. Welch, how do you propose that the

21    jury is going to be able to identify what they might want to see

22    on the computer without any kind of list at all?

23             MR. WELCH:  Well, Your Honor, it was all discussed

24    during the evidence phase of trial.  They've been taking notes.

25    And the exhibit list is not evidence and hasn't been entered in

1    evidence.  I have never had a case where the exhibit list was

2    given to the jury.

3         THE COURT:  Will it be evident to the jurors what the

4    various exhibits on the computer are, or is it just number, you

5    know, random number, 201, 306?

6         MR. NESTLER:  Just numbers.  There's no other

7    identifying information for each file; it's just the number.

8         THE COURT:  Yeah.

9         MR. NESTLER:  And contrary to Mr. Welch, I've never

10   had a trial where the jury didn't have an exhibit list.  I

11   usually found the jury appreciates having an exhibit list.  It

12   makes their deliberations far more efficient.

13        THE COURT:  Mr. Welch, in a case with this number of

14   exhibits, I just don't know how the jury can possibly find what

15   it needs to look at without some list of some type.

16     Is there anything prejudicial about the exhibit list, other

17   than it's a guide, like a table of contents to what's on the

18   computer?

19     If you can explain to me what's objectionable about the

20   list.  If it's just a listing of items that are on the computer,

21   I will entertain it, but I don't see how they can possibly find

22   what they're looking for without spending hours just clicking on

23   files.

24        MR. WELCH:  I need to just review it one more time and

25   make sure that there are no references like "riot" or

1    inappropriate comments in the titles.

2           THE COURT:  That's fine.  And I'm not whetted to the

3    exhibit list itself.  I just think that the jury needs something

4    that identifies by file number what it is so they don't

5    literally click on every item in order to watch the video of,

6    you know, the pepper spray or whatever the case might be.

7           MR. NESTLER:  I totally understand, Your Honor, and I

8    can go over it again with Mr. Welch.  And perhaps Your Honor

9    could instruct the jury that the exhibit list is being provided

10   solely as a guide to identify certain exhibits and it's not in

11   evidence.  That might ameliorate some of the defense's concerns.

12          THE COURT:  All right.  Do you want a few minutes to

13   take a look at it now?

14          MR. WELCH:  I can read that while you're reading the

15   remaining instructions, which are not controversial.

16          THE COURT:  All right.  And then if you are all in

17   agreement, then I would give an instruction similar to what

18   Mr. Nestler proposed, unless you have an alternative.

19          MR. WELCH:  No, that's fine.

20          THE COURT:  Okay.  Mr. Hopkins, do you want to get the

21   jurors?

22          COURTROOM DEPUTY:  Absolutely, Your Honor.

23      (Pause.)

24          THE COURT:  Mr. Welch, will you be nearby?

25          MR. WELCH:  Yes, I will.

1        (Jury entered courtroom.)

2        THE COURT:  Good morning, ladies and gentlemen.

3   Welcome back.  I hope you had a nice evening.  I have just a few

4   more instructions, and then I will -- we will recess, and you

5   can go to the jury room to begin your deliberations.

6        You will be provided with a verdict form for use when you

7   have concluded your deliberations.  The form is not evidence in

8   this case, and nothing on it should be taken to suggest or

9   convey any opinion by me as to what the verdict should be.

10  Nothing on the form replaces the instructions of law I have

11  already given you, and nothing on it replaces or modifies the

12  instructions about the elements which the government must prove

13  beyond a reasonable doubt.  The verdict form is meant only to

14  assist you in recording your verdict.

15       A verdict must represent the considered judgment of each

16  juror, and in order to return a verdict, each juror must agree

17  on the verdict.  In other words, your verdict must be unanimous.

18       During the course of this trial, a number of exhibits were

19  admitted into evidence.  Sometimes only those parts of an

20  exhibit that are relevant to your deliberations were admitted.

21  Where this has occurred, I have required the irrelevant parts of

22  the statement to be blacked out or deleted.  Thus, as you

23  examine the exhibits and you see or hear a statement where there

24  appear to be omissions, you should consider only those portions

25  that were admitted.  You should not guess as to what was taken

1   out.

2       I will be sending into the jury room with you the exhibits

3   that have been admitted into evidence, except for the firearms,

4   ammunition, and bear spray.  You may examine any or all of them

5   as you consider your verdicts.

6       Please keep in mind that exhibits that were only marked for

7   identification but were not admitted into evidence will not be

8   given to you to examine or consider in reaching your verdict.

9       If you wish to examine the firearms, ammunition, or bear

10  spray, please notify the clerk by a written note, and the

11  marshal will bring them to you.  For security purposes, the

12  marshal will remain in the jury room while each of you has the

13  opportunity to examine the evidence.  You should not discuss the

14  evidence or otherwise discuss the case among yourselves while

15  the marshal is present in the jury room.  You may ask to examine

16  the evidence as often as you find it necessary.

17      When you return to the jury room, you should first select a

18  foreperson to preside over your deliberations and to be your

19  spokesperson here in court.  There are no specific rules

20  regarding how you should select a foreperson.  That is entirely

21  up to you.  However, as you go about the task, be mindful of

22  your mission:  To reach a fair and just verdict based on the

23  evidence.  Consider selecting a foreperson who will be able to

24  facilitate your discussions, who can help you organize the

25  evidence, who will encourage civility and mutual respect among

1    all of you, who will invite each juror to speak up regarding his

2    or her views about the evidence, and who will promote a full and

3    fair consideration of that evidence.

4        As I have mentioned frequently throughout the trial, there

5    may be reports in the newspapers or on the radio, Internet, or

6    television about this case.  You may be tempted to read, listen

7    to, or watch this media coverage.  But as I've explained

8    already, you must not read, listen to, or watch such reports,

9    because you must decide this case solely on the evidence

10   presented in this courtroom.

11       If you receive automatic alerts from any source, as I've

12   mentioned, you may need to change your push notifications, news

13   subscriptions, or RSS or Twitter needs.  If any publicity about

14   this trial inadvertently comes to your attention, do not discuss

15   it with other jurors or anyone else.  Just let the clerk know as

16   soon as it happens, and I will then briefly discuss it with you.

17       As you retire to the jury room to deliberate, I also wish

18   to remind you of another instruction that I've given you on

19   multiple occasions throughout this trial.  I previously told you

20   not to communicate with anyone about that -- this case.  Now

21   during your deliberations, you may not communicate with anyone

22   who is not on the jury about this case.  This includes any

23   electronic communications such as e-mail or text or any blogging

24   about the case.

25       In addition, you may not conduct any independent

1   investigation during deliberations.  This means you may not

2   conduct any research in person or electronically via the

3   Internet or in any other way.

4       If it becomes necessary during your deliberations to

5   communicate with me, you may send a note by the clerk or

6   marshal, signed by your foreperson or by one or more members of

7   the jury.  No member of the jury should try to communicate with

8   me except by such a signed note.  And I will never communicate

9   with any member of the jury on any matter concerning the merits

10  of this case except in writing or orally here in open court.

11      Bear in mind also that you are never, under any

12  circumstances, to reveal to any person, not the clerk, the

13  marshal, or to me, how the jurors are voting until after you

14  have reached a unanimous verdict.  This means that you should

15  never tell me in writing or in open court how the jury is

16  divided on any matter, for example 6 to 6 or 7 to 5 or 11 to 1,

17  or in any other fashion, whether the vote is for conviction or

18  acquittal, or on any other issue in the case.

19      It is your duty as jurors to consult with one another and

20  to deliberate expecting to reach an agreement.  You must decide

21  the case for yourself, but you should do so only after

22  thoroughly discussing it with your fellow jurors.  You should

23  not hesitate to change an opinion when convinced that it is

24  wrong.  You should not be influenced to vote in any way on any

25  question just because another juror favors a particular decision

1    or holds an opinion different from your own.

2        You should reach an agreement only if you can do so in good

3    conscience.  In other words, you should not surrender your

4    honest beliefs about the effect or weight of evidence merely to

5    return a verdict or solely because of other jurors' opinions.

6        The attitude and conduct of jurors at the beginning of

7    their deliberations are matters of considerable importance.  It

8    may not be useful for a juror, upon entering the jury room, to

9    voice a strong expression of an opinion on the case or to

10   announce a determination to stand for a certain verdict.  When

11   one does that at the outset, a sense of pride may cause that

12   juror to hesitate, to back away from an announced position after

13   a discussion of a case.

14       Furthermore, many jurors find it useful to avoid an initial

15   vote upon retiring to the jury room.  Calmly reviewing and

16   discussing the case at the beginning of deliberations is often a

17   more useful way to proceed.

18       Remember that you are not partisans or advocates in this

19   matter, but you are the judges of the facts.

20       When you have reached your verdict, just send me a note

21   informing me of this fact and have your foreperson sign the

22   note.  Do not tell me what your verdict is.  The foreperson

23   should fill out and sign the verdict form that will be provided.

24   I will then call you into the courtroom and ask your foreperson

25   to read your verdict in open court.

1          All right.  Counsel, let's discuss the other issue.

2          (Pause.)

3              THE COURT:  I just wanted to raise the issue we

4      discussed before the jurors came in.

5              MR. WELCH:  No issue.

6              THE COURT:  No issue, okay.

7          All right.  Ladies and gentlemen, one last point I would

8      like to make is that the exhibit list is being provided to you

9      solely as a guide to help you identify the exhibits that have

10     been admitted into evidence.  You should understand that the

11     exhibit list itself is not evidence in the case.  It's just a

12     way for you to find what you need on the computer.  All right?

13         All right, Mr. Hopkins.  We will dismiss the jurors to

14     deliberate.

15         Thank you, ladies and gentlemen.

16         (Jury exited courtroom.)

17             THE COURT:  All right.  Anything else?

18             MR. WELCH:  I don't believe so.

19             MR. NESTLER:  No, Your Honor.

20             THE COURT:  All right.  I will be available, and we

21     will be in touch if there's a note from the jury.  Thank you.

22             MR. NESTLER:  Your Honor, just scheduling-wise, if we

23     don't hear anything all day, Your Honor is going to dismiss them

24     at 4:30?

25             THE COURT:  Yes.  And they will probably take an hour

1    break for lunch.  But I won't bring them back in the courtroom

2    for that, just to dismiss them.

3        (Jury deliberations.)

4        (Call to order of the court.)

5        THE COURT:  All right.  So we were informed that we

6    have a verdict.  I will have Mr. Hopkins bring the jurors in.

7    Before we bring them in, are there any issues to discuss?

8        MR. NESTLER:  Not from the government, Your Honor.

9        MR. WELCH:  No, Your Honor.

10        THE COURT:  All right.

11        (Jury entered courtroom.)

12        THE COURT:  All right.  Good afternoon, everyone.

13    Who on the jury speaks as its foreperson?

14        (Jury foreperson raises hand.)

15        THE COURT:  All right.  Madam Foreperson, has the jury

16    unanimously agreed on its verdict?

17        FOREPERSON:  Yes, we have.

18        THE COURT:  Okay.  Could you, please, hand the verdict

19    form to the clerk to inspect.

20        (Foreperson complied.)

21        THE COURT:  All right.  Your verdict will now be

22    published.

23        COURTROOM DEPUTY:  As to Count One, transporting a

24    firearm in furtherance of a civil disorder, guilty.

25        As to Count Two, obstruction of an official proceeding,

1    guilty.

2         As to Count Three, entering or remaining in a restricted

3    building or grounds with a firearm, guilty.

4         As to Count Four, obstructing officers during a civil

5    disorder, guilty.

6         And as to Count Five, obstruction of justice, hindering

7    communication through force or threat of physical force, guilty.

8         Dated March the 8th, signed by the foreperson.

9              THE COURT:  Is there a request to poll the jury?

10             MR. WELCH:  Yes, Your Honor.

11             THE COURT:  All right.  The courtroom deputy will now

12    poll the jury.

13             COURTROOM DEPUTY:  Members of the Jury, as your number

14    is called, please indicate if your individual verdict is the

15    same as they were just announced.  If it is, please answer

16    "yes."  If it is not, please answer "no."

17         Juror number 1?

18             JUROR:  Yes.

19             COURTROOM DEPUTY:  Juror number 3?

20             JUROR:  Yes.

21             COURTROOM DEPUTY:  Juror number 4?

22             JUROR:  Yes.

23             COURTROOM DEPUTY:  Juror number 5?

24             JUROR:  Yes.

25             COURTROOM DEPUTY:  Juror number 6?

1          JUROR:  Yes.

2          COURTROOM DEPUTY:  Juror number 7?

3          JUROR:  Yes.

4          COURTROOM DEPUTY:  Juror number 8?

5          JUROR:  Yes.

6          COURTROOM DEPUTY:  Juror number 9?

7          JUROR:  Yes.

8          COURTROOM DEPUTY:  Juror number 11?

9          JUROR:  Yes.

10          COURTROOM DEPUTY:  Juror number 12?

11          JUROR:  Yes.

12          COURTROOM DEPUTY:  Juror number 14?

13          JUROR:  Yes.

14          COURTROOM DEPUTY:  Juror number 16?

15          JUROR:  Yes.

16          COURTROOM DEPUTY:  Your Honor, the jury has been

17     polled, and the verdict is indeed unanimous.

18          THE COURT:  All right.  The clerk is directed to file

19     and record the verdict, the unanimous verdict.

20          All right, ladies and gentlemen.  This ends your duty.  And

21     as I told you many, many times during the trial when you weren't

22     supposed to talk about this case, that ends.  You're now free to

23     talk about this case to anyone, but it is entirely your choice.

24     You are not obligated to talk to anyone, but you may talk to

25     anyone that you decide you want to talk to.

1    We had a lot of unexpected challenges during the trial with

2 the COVID restrictions and with issues with technology, and I

3 just want to thank you on behalf of the entire court for your

4 patience and your dedication.

5    As I said at the outset, our criminal justice system works

6 because of the willingness of citizens like you to come forward

7 and take time out of your busy schedule to fulfill this very

8 important duty.  And you have done so with dedication, and we

9 are all grateful for your service.

10    So with that, I will excuse you now to the jury room.

11 Thank you again.

12    (Jury exited courtroom.)

13    THE COURT:  All right.  So Mr. Welch, we need to set

14 deadlines for the filing of post-trial motions.  I did want to

15 address on the record your earlier motion under Rule 29.  I will

16 give a brief ruling now, but I do, you know, welcome and

17 anticipate briefing from both sides on this.

18    But while I'm thinking about the calendar, does 14 days

19 give you adequate time?

20    MR. WELCH:  Yes, it does.

21    THE COURT:  All right.  So the defense will file any

22 post-trial motions within 14 days, the government shall respond

23 within 14 days with any oppositions, and any reply within seven

24 days.  If there's a need for a hearing, I will let you all know.

25    And in terms of -- well, I should wait for Mr. Hopkins to

1    set the sentencing date.  Why don't I, while he's out, go ahead

2    and address the pending motion under Rule 29.

3         Mr. Welch, now that the jury has spoken, did you wish to

4    make any argument on this?

5              MR. WELCH:  I do, Your Honor, but in view of the

6    Court's, not Your Honor's but another judge's ruling on a 1512

7    motion as well, I would like to consider that and see if there's

8    anything that's appropriate for me to include in my written

9    papers.

10             THE COURT:  Absolutely.

11             MR. WELCH:  I don't want to add any oral comments

12   now --

13             THE COURT:  Okay.

14             MR. WELCH:  -- because that would just complicate

15   that.

16             THE COURT:  That's fine.  So I'm going to give you a

17   brief ruling now.  And I am familiar with that decision, and

18   I've taken a look at it.  But I do welcome your briefing.

19        But considering -- this is defendant's motion, Rule 29

20   motion for judgment of acquittal on all counts that was made at

21   the close of the government's case that I reserved ruling on

22   until now.

23        Considering the evidence in the light most favorable to the

24   government, as the Court must, the Court finds that a rational

25   jury could find the essential elements of the crimes charged

beyond a reasonable doubt.  See *U.S. v. Wahl*, 290 F.3d at 375.

With respect to Count One, the jury could credit Mr. Reffitt's own statements captured on tape and in text messages, along with Rocky Hardie and Jackson Reffitt's testimony, Mr. Reffitt's cell phone records and photographs that show that Mr. Reffitt transported guns in commerce from Texas to D.C. in 2021.

The testimony of Capitol police officers and videos show that the January 6 riot qualifies as a civil disorder, a public disturbance that caused an immediate danger to persons and property.

Although some testimony shows that Mr. Reffitt intended to use his firearms for self-defense or to protect others, other evidence, including Mr. Reffitt's own taped statements, show that he was prepared, if necessary, to use at least his handgun at the Capitol.

Thus, a jury could well find beyond a reasonable doubt that Mr. Reffitt knew or intended that the guns would be used in furtherance of the civil disorder in violation of Title 18 United States Code Section 231(a)(2).

For these same reasons, a rational jury could find beyond a reasonable doubt that Mr. Reffitt entered or remained in a restricted area with a firearm in violation of Title 18 United States Code Section 1752(a)(1) and (b)(2).

The testimony of Capitol police officers shows that

Mr. Reffitt knew he was on restricted grounds and did not have the lawful authority to be there, as he ignored police barricades, signs, and officers' commands to retreat.

A rational jury could also find beyond a reasonable doubt that Mr. Reffitt obstructed officers during a civil disorder in violation of Title 18 United States Code Section 231(a)(3).  Not only did the evidence demonstrate that the January 6 riot constituted a civil disorder, the parties stipulated that the riot adversely affected commerce, and the riot adversely affected the Secret Service's plans to protect Vice President Pence and his family, thus interfering with the performance of a federally protected function.

A jury could also reasonably credit the Capitol police officers' testimony, along with video evidence of Mr. Reffitt charging up the stairs to the Senate chamber, as establishing his intent to obstruct, impede, or interfere with those officers.

And separately, a jury could certainly find that Mr. Reffitt took a substantial step toward obstructing, impeding, or interfering with those officers.

A rational jury could also find that Mr. Reffitt obstructed justice by threatening physical force in violation of Title 18 United States Code Section 1512(a)(2)(C) or that he took a substantial step toward obstructing justice.

A jury could credit Jackson Reffitt's testimony that

Mr. Reffitt threatened to shoot his children or put a bullet through his daughter's phone if they informed the FBI about his actions on January 6, and the information that they would have provided, and indeed Jackson had already provided, related to federal offenses.

Finally, a rational jury could find beyond a reasonable doubt that Mr. Reffitt obstructed an official proceeding in violation of Title 18 United States Code Section 1512(c)(2) or that he attempted the offense or aided and abetted others in committing the offense.

Witness testimony revealed that because of the Capitol breach Congress was forced to halt its joint session to certify the electoral results.  Mr. Reffitt's own taped statements and video footage of his ascent on the west stairs show that he led a throng of people who first breached the Capitol.

As he admitted to another Three Percenter, he knew that Congress was in the joint session, and at a minimum, he knew of and intended the natural consequence of that action that Congress would be unable to continue with the joint session.

Plus, substantial evidence supports the charge that Mr. Reffitt acted corruptly.  The officers' testimony and video footage shows that he assisted and encouraged others who used unlawful means, namely assaults of federal officers, to forcibly breach the Capitol.  He led the mob and encouraged it to charge toward federal officers, pushing them aside to break into the

1  Capitol.

2      He also acted with an unlawful purpose to physically over-

3  throw Congress, and he expressed this clear purpose on numerous

4  occasions before, during, and after January 6.  Mr. Reffitt

5  repeatedly said that the government would be destroyed in the

6  fight and that he wanted to drag lawmakers out of the Capitol by

7  their heels with their heads hitting every step.

8      Lastly, a reasonable jury could find that Mr. Reffitt acted

9  with consciousness of wrongdoing.  Despite his stated view that

10  his actions were justified and protected by the Constitution, he

11  knew, as he acknowledged, that the Capitol police officers were

12  faithfully doing their jobs when they ordered them to retreat.

13  Yet, he continually refused their orders.  He also acknowledged

14  many times his violation of D.C. gun laws.

15      A jury could reasonably interpret all of his statements as

16  demonstrating his awareness that his actions were wrong.

17      For those reasons, the Court finds that a rational jury

18  could find that the government has proven all the elements of

19  the charged offenses beyond a reasonable doubt.

20      As Mr. Welch mentioned, last night, another judge in this

21  district issued an opinion dismissing the Section 1512(c)(2)

22  charge in another case, *United States v. Miller*, 21-cr-119.

23      Again, I do anticipate briefs being filed on this issue

24  with respect to the upcoming motion or motions, and I look

25  forward to reviewing them.  But based on what I've read so far,

1    I'm not inclined to reconsider my earlier ruling.

2        Once the issue has been fully briefed, I will provide my

3    reasons in greater detail, but for now, let me state that I'm

4    not inclined to follow *Miller*, because as I explained in

5    *Sandlin*, the plain meaning of the words "obstruct," "impede,"

6    and "influence" are broad and encompass all sorts of actions

7    that affect or interfere with official proceedings, including

8    interfering with the evidence that may be considered in an

9    official proceeding or halting the occurrence of the proceeding

10   altogether.

11       And in my view, the plain meaning of the word "otherwise,"

12   which is defined as "any different way or manner, differently,

13   in different circumstances, under other conditions, in other

14   respects."  See *Miller* opinion at 11, quoting Webster's Third

15   New International Dictionary of the English Language Unabridged

16   2002.

17       That definition does nothing to limit the expansive meaning

18   of Section 1512(c)(2)'s verbs.  Rather, the word "otherwise"

19   simply indicates that a defendant violates Section 1512(c)(2) by

20   corruptly obstructing or impeding a proceeding in a manner or

21   respect that is different than altering or concealing documents.

22       Moreover, I don't believe that the Supreme Court's decision

23   in *Begay* alters this conclusion.  The *Begay* Court expressly

24   indicated that its interpretation of the word "otherwise" was

25   not the only permissible one.  See *Begay v. United States*,

1   553 U.S. at 144.

2       The Court held that a violent felony that otherwise

3   involves conduct that presents a serious physical risk of injury

4   to another must be similar in kind to the example crimes listed

5   before that catchall clause.  That's *Begay* at 142.

6       But the *Begay* Court also recognized that "otherwise" in

7   other contexts could instead be interpreted as a link to what

8   follows the word as opposed to what comes before.  *Begay* at 144.

9       And Section 1512(c) presents a sufficiently different

10  context such that I don't believe *Begay* controls here.

11      First, the two statutes are structured differently, with

12  Section 1512(c)(2) housed in a separate subsection as opposed to

13  the same sentence.  Second, *Begay* found that the examples listed

14  in the Armed Career Criminal Act were insufficiently similar

15  with respect to the serious physical risk of injury that they

16  pose, such that the other violent felonies must be similar to

17  those examples beyond their degree of risk.  *Begay* at 142

18  through 143.

19      By contrast, the actions covered by Section 1512(c)(1) can

20  each obstruct, impede, or influence a proceeding.  So Section

21  1512(c)(2)'s residual clause can simply cover any different

22  manner of obstructing, impeding, or influencing.

23      Plus, the *Begay* Court relied on the particular statutory

24  history of ACCA, which is not replicated here.  *Begay* at 143

25  through 144.

1    The Court's interpretation admittedly creates

2 superfluities, but as I explained in *Sandlin*, the same is true

3 for a narrowing construction that covers only acts affecting

4 evidence.  See *Sandlin* opinion at 14 through 15.

5    Finally, the rule of lenity is inapplicable here.  The rule

6 applies only when a statute is ambiguous after seizing

7 everything from which aid can be derived.  *Ocasio v. United*

8 *States*, 578 U.S. at 295, Note 8, quoting *Muscarello v. United*

9 *States*, 524 U.S. at 138 through 139.

10    The Supreme Court has underscored that point through its

11 repeated use of the phrase "grievous ambiguity."  See

12 *e.g., Shaw v. United States, 580 U.S. at 71, Salman v. United*

13 *States*, 580 U.S. at 51.

14    As Justice Kavanaugh summarized current Supreme Court

15 precedent in an opinion released just yesterday, a Court must

16 first exhaust all the tools of statutory interpretation and

17 determine the best reading of the statute before the rule of

18 lenity comes into play and only then when the Court has

19 identified a grievous ambiguity.  See *Wooden v. United States*,

20 Slip Opinion at 2, Kavanaugh concurring.

21    That is not the case here.  So this is not one of those

22 rare situations where lenity comes into play.

23    All right.  So for all those reasons, I will deny for now

24 the defense Rule 29 motion.

25    In terms of sentencing, we're looking roughly 90 days out,

1  which I think takes us to some time the week of June 6.

2        Mr. Hopkins, if you can consult the calendar.

3        Mr. Welch, I take it this would be an in-person sentencing?

4              MR. WELCH:  Yes, please.

5              THE COURT:  Okay.  Do you have any conflicts that

6  week?

7              MR. WELCH:  No, I don't.

8              COURTROOM DEPUTY:  The first week of June, Your Honor,

9  we are free that week, Your Honor.

10             THE COURT:  The week of June 6?

11             COURTROOM DEPUTY:  Yes, Your Honor.

12             THE COURT:  All right.  I will start with you,

13  Mr. Welch.  Do you have a preference for that week?

14             MR. WELCH:  I do not.

15             THE COURT:  Mr. Nestler?

16             MR. NESTLER:  No preference, Your Honor.

17             THE COURT:  All right.  Bear with me just a moment.

18        All right.  So let's set this for sentencing on June 8 at

19  10:00 a.m.  And I would ask the parties to file their sentencing

20  memoranda 14 days before sentencing, which is May 25, I think.

21             COURTROOM DEPUTY:  You are correct.

22             THE COURT:  And to the extent either side wants to

23  respond to the other -- I'm not asking for that, but you're

24  welcome to do so -- you should file any response by June 1.

25        Mr. Nestler, do you expect any victims to seek to be heard

1    at that sentencing hearing?

2              MR. NESTLER:  It's possible, Your Honor.

3              THE COURT:  Can you let us know sufficiently in

4    advance and let Mr. Welch know?

5              MR. NESTLER:  Of course, Your Honor.

6              THE COURT:  And does either side -- Mr. Welch, do you

7    expect the need for any expert testimony or any other

8    evidentiary testimony?

9         If you don't know now, you can let me know later.  But

10   again, for planning purposes for the calendar, it would be

11   helpful to know ahead of time.

12             MR. WELCH:  I don't expect that.  There might be

13   mitigation witnesses.

14             THE COURT:  All right.  But again, reports or you

15   think testimony?  You're not sure?

16             MR. WELCH:  More like letters and possibly testimony.

17             THE COURT:  All right.  I would ask both of you to let

18   us know two weeks before.

19        Given what I've seen in the trial, I don't need the

20   government -- as I've requested in other January 6 cases, have

21   the government post things on USAfx.  I have it all now.  So I

22   don't need anything additional.

23        Any other issues we should discuss now?

24        All right.  So we have this set for sentencing on June 8 at

25   10:00 a.m.  Mr. Reffitt, we will see you back on June 8.

1     Thank you all.

2     (Proceedings adjourned at 1:57 p.m.)

3

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

5

6              CERTIFICATE OF OFFICIAL COURT REPORTER

7

8     I, Sara A. Wick, certify that the foregoing is a correct

9  transcript from the record of proceedings in the above-entitled

10  matter.

11

12

13

14  /s/ Sara A. Wick                    March 9, 2022

15  SIGNATURE OF COURT REPORTER         DATE

16

17

18

19

20

21

22

23

24

25