IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | No. 21-CR-53 (CJN) |
|  | ) |  |
| EDWARD JACOB LANG, | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |

_____)

**DEFENDANT LANG'S BRIEF REGARDING SELF-DEFENSE DEFENSE OF ANOTHER PERSON AND RELATED AFFIRMATIVE DEFENSES**

Now comes Defendant, EDWARD JACOB LANG, by and through his counsel, and submits the instant brief in Support of his application for the jury to be instructed on the affirmative defenses of self-defense, defense of others, necessity, justification, and duress at trial.

Discovery in this case illustrates that various video recordings must be placed together to show the full context of the circumstances before and after each of Mr. Lang's alleged assault Counts. When such videos are placed together, the facts, as a matter of law, support that the above affirmative defenses must be instructed to the jury because Lang was not the initial aggressor and responded with force not greater, and less proportionate to the excessive force the officer's used against Lang and others. The facts further support a claim of necessity, justification, or duress, as a matter of law, because Lang had a reasonable, legal alternative both to violating the law and to avoid the threatened harm officers used against him and others.

Further, a detailed breakdown and pre-trial proffer will require much more time of the defense because counsel still needs to review additional hours of videos supporting our claims, about which requires extreme detail. Then counsel still needs to have Lang review the same as to provide this Court with the specific facts required to provide a pre-trial proffer, and for the Court to decide, whether Lang is entitled to assert any of these defenses.

In the interest of judicial economy, Defendant Lang submits the instant brief and defers to the Court as to whether additional, more detailed pre-trial proffers are required to be filed by the defense.

## I. INTRODUCTION

Mr. Lang's position is that he must be found not guilty on all the Counts the Superseding Indictment charging him with forcibly assaulting, resisting, opposing, impeding, intimidating, interfering, and using a dangerous or deadly weapon on an officer and employee of the United State, in violation of 18 U.S.C. § 111(a)(1) and (b).

Jury instructions, for example, on the defense of another person against excessive force is proper and applicable to Mr. Lang's conduct. Throughout the time Mr. Lang is alleged to have committed assaults (2:57 pm to 5:00 pm), various different Metropolitan Police Department Officers continuously used excessive

force. Some of this force was invoked against unarmed, helpless, women, and such instances occurred just feet in front of Mr. Lang.

Some of this misconduct consisted of Officer's beating a woman over the head with a baton and at times with closed fists. Another example is while a woman, now known as Roseanne Boyland, laid unconscious on the floor was continued to be beaten with a baton. In response to the display of excessive force and calls for help, Mr. Lang did what he could to distract officers, and to ultimately help those protestors in need, those being extremely beaten by the Officers.

Under these circumstances, Lang reasonably believed that himself and others, including these women faced a present threat of death or serious injury and acted lawfully in response to the threat.

## II. SELF-DEFENSE AND THE DEFENSE OF ANOTHER PERSON AGAINST EXCESSIVE FORCE IS AN APPROPRIATE DEFENSE IN THIS CASE, AND SHOULD BE A QUESTION AND INSTRUCTION FOR THE JURY.

Self-defense and the defense of a third person against excessive force are appropriate instructions in this case. The model instruction for lawful self-defense against a federal officer requires the defendant to not know the official status of the federal officer. 2 FED. JURY PRAC. & INSTR. § 24:12 (6th ed.).

However, the model instruction's requirement that the defendant not know the status of the officer is inapplicable here because Lang was responding to the use of excessive force. *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992). The *Span*

court held that the model instruction is inappropriate in a self-defense against excessive force case because:

> the model instruction requires the jury to reject this theory of defense as long as the government proves beyond a reasonable doubt that the defendant knew that the person she is charged with assaulting was a federal law enforcement officer. As such, giving the model instruction is tantamount to refusing an instruction based on the defendant's right to use reasonable force to repel excessive force by a federal law enforcement officer.

*Id.*

First, it is our position that Mr. Lang must be found not guilty on all Counts of the Superseding Indictment charging him with forcibly assaulting, resisting, opposing, impeding, intimidating, interfering, and using a dangerous or deadly weapon on an officer and employee of the United State, in violation of 18 U.S.C. § 111(a)(1) and (b).

As such, and at a minimum, Mr. Lang must be able to argue justification as a defense in order to receive any fair trial. The Metropolitan Police Department used excessive force against various American citizens, including but not limited to, beating a woman identified as Rosanne Boyland over the head with a baton, including times while Ms. Boyland laid on the floor unconscious. Two other citizens were being crushed under the weight of the crowd while police attacked those attempting to render them aid.  In response to the display of excessive force and calls

for help, Mr. Lang did whatever he could do to render aid, and to briefly deter officers from continuing its attack on other unarmed citizens.

This Court already was presented with a Declaration of Phillip Anderson, contributing Lang as to saving his life from the force the Officers were using against him. Mr. Anderson also states the reason he is still alive to this day is because of Lang's swift actions. Since than another individual has come out, and stated that Defendant Lang also saved his life, and that but for Mr. Lang's actions, he would be dead at the hands of the officer's excessive force on January 6th. That second individual is Thomas Tatum.

Mr. Lang reasonably believed that he was in imminent danger of harm while he attempted to and did affect the rescue of at least two other human lives.

Second, Self-defense against excessive force and Defense of Others are appropriate defenses in this case. *2 Fed. Jury Prac. & Instr*. § 24:12 (6th ed). Further, Mr. Lang's conduct as alleged does not meet the requisite elements for charging an offense based on the circumstances. The statutory elements are triggered only when the "*Police are engaged in an arrest"*. (*See Armbruster v. Frost*, 962 F.Supp.2d 105, 117 (D.C. 2013)(explaining the standard "for analyzing an assault and battery claim against an officer is 'similar to the excessive force standard applied in the Section 1983 context.' ") (citations omitted).

At first glance, on January 6, 2021 anyone would initially believe that all the officers at the Capitol that day were there for official police duties. However, upon further investigation into the actions and conduct of certain officers, a different story can be told.

For example, certain officer's actions that day establishes certain officers were not present that day to "make an arrest". Rather, these officers engaged in excessive police misconduct, which places their actions and conduct into a completely different category from being "on official police duty". Stated otherwise, certain officers who wrongfully assaulted protesters, places these officer's actions into a different category, such as their actions being deemed illegal.

Being "on duty" and in a position to engage "in an arrest" does not consist of the following police misconduct that happened on January 6th:

(1) using a collapsible baton to hit a protestor above the neckline, where certain officers are on camera hitting protestors over their head repetitively[1];

(2) using flash bang grenades;

(3) shooting rubber bullets at protestor's heads and actually hitting some in the face; and

(4) while one officer is beating an unarmed, helpless woman, others officers spray the harmed woman with a substance, right in woman's face while the

---

[1] Such misconduct is one example of actions that certain police officers conducted on January 6th, and this conduct should be deemed as assaults against the protestors. Defendant Lang witnessed these actions happening just feet away from where he was standing at the time.

>other officers are continuing to beat the helpless woman.

On January 6th, video evidence depicts how certain officer's conduct that day shows their true motivations, or even their political view. In certain parts of the Capitol, there were Officers who would shake hands and take pictures with the protestors. In other parts of the Capitol, officers stood in a line against a wall, quietly, while hundreds of protestors entered the Capitol through broken windows. These Officers did not stop anyone from entering through a broken window, and did not tell any of the protestors to stop what they were doing. If these examples do not illustrate where these certain officer's political views were at the time were, then I do not know what does.

Then there were certain officers who were extremely violent, and did not care if the person being beaten was a helpless woman, or whether that helpless woman was unconscious, on the floor. The beating and assaults continued in front of the crowd and were captured on video. And some continued directly in front of Mr. Lang.

Here, because of the police abuse, and though dressed as police, the official employees were not acting in the capacity that a reasonable person would normally view as police functions. *See District of Columbia v. Coleman*, 667 A.2d 811, 820

(D.C. 1995)[2] (*quoting Stevenson v State*, 287 Md.504, 413 A.2d 1340, 1344 (1980) highlighting " '[U]nder the circumstances present here, the District of Columbia police officers were functioning in a private, rather than official capacity for the purpose of evaluating the legality of the arrests here.' ")).

In the *Barker* case, the District of Columbia Circuit, Court of Appeals highlighted that when police actions and conduct rise to a level of violating an individual's civil rights, then such actions constitute: "a gross and elementary violation . . . when done with the extra capability provided by a government position. . . [officers in violating] a clearly defined constitutional right . . . [are] not acting in an official law enforcement capacity.". *United States v. Barker*, 546 F.2d 940, 970-71 (D.C. Cir. 1976).

Similarly, in *Allee*, certain police misconduct is not protected just because police officers performed such actions, while on duty. *Allee v. Medrano*, 416 U.S. 802, 837-38 (1974). The *Allee* Court highlighted the following:

> When a policeman willfully engages in patently illegal conduct in the course of an arrest there still should be clear and convincing proof, before bad faith can be found, that this was part of a common plan or scheme, in concert with the prosecutorial authorities, to deprive plaintiffs of their constitutional rights.

---

[2] In *Coleman*, the Court additionally highlighted "they no longer had authority to arrest as police officers. Consequently, their acts must be examined as those of private citizens . . . ." *See Coleman*, 413 A.2d at 1344.

*Allee*, 416 U.S. at 838 (1974).

In *Jackson*, the officer's "show of force" during an arrest was at issue, and "the crux of the assault claim". *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980). The *Jackson* Court explained "[i]n making an arrest, however, a police officer is privileged even to use force unless the "means employed are in excess of those which the actor reasonably believes to be necessary." *Id.* at FN 16 (*citing* "We need not determine how far we would defer to an officer's judgment when force actually is used. In several jurisdictions, cases in which there is substantial evidence of unreasonable force, such as injury to the arrestee, **have been presumed to pose jury questions**. *See Hamilton v. Chaffin*, 506 F.2d 904, 912 (5th Cir. 1975); *Luciano v. Ren, Mont.*, 589 P.2d 1005, 1008 (1979); *Todd v. Creech*, 23 N.C.App. 537, 539, 209 S.E.2d 293, 295 (1974)).

The *Jackson* Court held "that a police officer is protected . . . against assault claims arising from arrests: unless the *threatened* use of force is clearly excessive. . .". *Id.* (citations omitted).

Respectfully, it is requested that the jury be instructed on all the above referenced related affirmative defenses. On January 6th, certain officer's misconduct transformed their position from legal to illegal, such as transforming the officer's function from there to "make an arrest" into an excessive force claim. Such

misconduct takes away the Officer's protection, and affords Defendant Lang the ability to raise the instant affirmative defenses.

### III. THE RIGHT TO USE REASONABLE FORCE AGAINST THE OFFICER'S EXCESSIVE FORCE IS PROTECTED UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

"[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The Fourth Amendment's protection and "freedom from unreasonable searches and seizures [also] encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Garay v. Liriano*, 943 F. Supp. 2d 1, 19 (D.C. 2013) (*quoting Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir.2002)).

Thus, the right to use reasonable force which is less proportionate against an officer's excessive force is protected under the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 395 (1989) (holding "[t]oday we make explicit what was implicit in *Garner's* analysis, and hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of

"substantive due process," must be the guide for analyzing these claims."). (Citations and footnotes omitted).

Other circuits acknowledge this right of self-defense and related claims. For example, the First Circuit has explained "We of course do not suggest that self-defense against unreasonable 'standing up' for [the officer's own] authority ... would subject the resister to liability under 18 U.S.C. § 111." *See United States v. Frizzi*, 491 F.2d 1231, 1232 fn. 2 (1st Cir.1974).

The Fourth Circuit has held section 111 "does not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense." *United States v. Wallace*, 368 F.2d 537, 538 (4th Cir.1966); *cert. denied*, 386 U.S. 976 (1967).

The Fifth Circuit has held "In an assault on a federal officer case, under18 U.S.C. § 111, the defense is available only if the defendant acted in response to excessive force." *United States v. Earnest*, 116 F. App'x 538, 538–39 (5th Cir. 2004) (per curiam). More importantly, the Fifth Circuit has articulated how the defendant has the burden of production, but not proof, when asserting a self-defense claim. *United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996).

Here, Mr. Lang requests jury instructions for the affirmative defenses of self-defense, defense of others, necessity, justification, and duress. Each request is based on Lang clearly acting in self-defense and the defense of others against excessive

force.[3] Self-defense and related claims are only available only when the defendant or others were under an unlawful present or imminent threat of harm. A present or imminent threat of harm must be based on a reasonable fear that a real and specific threat existed at the time of the defendant's assault, resistance, opposition, or impeding. If the defendant unlawfully assaulted, resisted, or impeded an officer when no reasonable fear of a present or imminent threat of serious bodily injury or death actually existed, his defense of self-defense must fail. But, under these circumstances, Lang should not be precluded such instructions, and instead it should be left for a jury to decide.

"Proportionality" and "reasonableness" must be clearly described determined under these circumstances.  A jury cannot make an appropriate determination if all the facts are not presented, in conjunction with this Court's jury instructions.

The reasonableness of the use of force must be determined based on "the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [s]he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

---

[3] *See* BLACK'S LAW DICTIONARY 1364 (7th ed. 1999) (defining "Self-defense is available when a defendant acts criminally in order to protect himself from a real or threatened attack.").

Here, Mr. Lang was not assaulting the officers, but, instead, in the heat of the moment Mr. Lang was using justifiable – proportional – force in response to a reasonable belief that he was protecting himself and others against imminent harm. As an example of such, Lang is credited with saving the lives of Phillip Anderson and Tommy Tatum, while also attempting to save the life of Rosanne Boyland against excessive use of force actions by the officers. Ms. Boyland died that day. The circumstances surrounding her death should be heard in a trial against Lang. The jury should determine if Lang's actions, including attempting to save Ms. Boyland's life, were justified, or in the defense of others.

Overall, and most important here, is a pre-trial proffer is premature at this point because the evidence supporting the officers use of force was unreasonable – as well as the proportionality of Lang's actions – consists of statements from Lang, Tatum, and Anderson,[4] each of which must be supported with video[5]. Additionally, an expert is required to explain such behavior, and how Lang may have acted outside

---

[4] It is respectfully submitted that putting Lang, Tatum, and Anderson's statements before this Court at this juncture is premature as the defense still needs to verify and fact check parts of each of their claims. Nonetheless, the basis of the claims has already been verified but need to be further explored and reviewed with my client Mr. Lang before submitted in writing to this Court. Such has been impossible to complete at this stage of this litigation. Additionally, and most importantly, the defense still needs to consult experts about such actions before specifics are submitted in writing.

[5] (The Picture was on the West Terrace of the Capital Tunnel steps where Mr. Lang was trying to save the life of Rosanne Boyland and did save the life of Phillip Anderson and Tommy Tatum.)

of his character that day based on what was going on around him. Lastly, we need to explain in detail the videos showing how officers attempted to physically restraining their colleagues[6] while other officers unjustifiably beat protestors just feet from where Lang stood. All of this has been impossible to document in a pre-trial proffer at this juncture.

## IV. CONCLUSION

First, Mr. Lang must be found not guilty on the Counts of the Superseding Indictment charging him with forcibly assaulting, resisting, opposing, impeding, intimidating, interfering, and using a dangerous or deadly weapon on an officer and employee of the United State, in violation of 18 U.S.C. § 111(a)(1) and (b). Second, and alternatively, Lang should be entitled to instructions on self-defense and defense of another person against excessive force is appropriate in this case. Various officer's involved in Lang's case were using excessive force against other citizens, including but not limited to, two women being beating her over the head with a baton and closed fists. In response to the display of excessive force and calls for help, Mr. Lang did anything he could do towards the officers in order to distract him. Mr. Lang reasonably believed that more than one woman, and various others faced a present

---

[6] *See Oberwetter v. Hilliard*, 680 F.Supp.2d 152, 167 (D.C., 2010) (*quoting Rogala v. Dist. of Columbia*, 161 F.3d 44, 54 (D.C.Cir.1998)), *aff'd*, 639 F.3d 545 (D.C.Cir.2011)(holding "An officer will be found to have used excessive force only 'if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions.' ").

threat of death or serious injury and acted lawfully. Third, the Fourth Amendment applies to Lang's right to use reasonable force against the excessive force the officers were using. In acting Lang also feared for his own life, but at certain times choose to put others' lives ahead of Lang's own life.

For all of these reasons, and many more, Mr. Lang, at a minimum should be entitled to the jury instructions highlighted herein.

Respectfully Submitted,

*/s/ Steven Alan Metcalf II*
_____

STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Flr.
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012

*Counsel for Defendant Edward Jacob Lang*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 26, 2022, this motion was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

.

/s/ *Steven Alan Metcalf II*
_____

STEVEN A. METCALF II, ESQ.

*Counsel for Defendant Edward Jacob Lang*