## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
UNITED STATES OF AMERICA,                )
                                         )
            *v.*                         )        No. 21-CR-53 (CJN)
                                         )
EDWARD JACOB LANG,                       )
                                         )
            *Defendant.*                 )
—————————————————————— )

### MR. LANG'S MOTION AND REQUEST FOR IMMEDIATE
### TEMPORARY RELEASE ON AN EXPEDITED BASIS

Now comes Defendant, EDWARD JACOB LANG, by and through his undersigned counsel, and moves this Court to reopen his detention hearing, pursuant to 18 U.S.C. § 3142(f), and to order the immediate temporary release of Mr. Lang from pretrial confinement to the custody of his mother or father, on conditions suitable to the Court because of the following:

(1)    various jails have, and continue to, retaliate against Defendant Lang for being vocal about his rights being violated, his filing of grievances, and for speaking out to others about his pre-trial detention conditions;

(2)    the Marshals have continued to move Lang from jail-to-jail, without justification;

(3)    when transferred Lang is exposed to a new jail facility imposing blatantly punitive and unlawful measures intended to prejudice Defendant's

defense in his criminal case and, worse, to attempt to psychologically torture him;

(4)     the length of Defendant Lang's pretrial confinement is a violation of his due process rights which demands immediate release;

(5)     the Defendant is being held in conditions of confinement that violate his civil and human rights; and

(6)      the conditions of confinement themselves create an environment that make Defendant unable to prepare for his own trial, violating his right to a fair trial.

The urgency of the situation cannot be understated. As set forth below, the Lewisburg Jail, at this moment, may be in possession of sensitive and confidential attorney-client information that can irreparably prejudice Defendant in this case. More importantly, all the jails Lang has been transferred to have engaged in intentional infliction of attempted psychological torture against Lang, thereby causing a hostile, damaging and inadequate environment, that creates an insurmountable ability for Defendant to prepare for trial. Due to the disparity in resources and the ability to prepare, Lang cannot possibly compete or prepare a viable defense against the government. While some defendants may chose to leave their case and defense solely in the hands of their attorneys, Lang is, within his right to be, hands on. Further, despite limited access to his attorney, and to any resources,

he has proven himself to be useful in aiding in his defense, by pointing out various arguments that his legal team did not see at first, such as pointing out clips from a video.

The Court must act swiftly to review this motion, and properly order his immediate release.

## I.       STATEMENT OF FACTS

The facts of this case, insofar as pertinent to this application are, for the most part, contained in Lang's Motion to Dismiss Case for Lack of Jurisdiction and *Due Process Violations* (*See* ECF Doc. 69), and further updated in Lang's Reply Motion (*See* ECF Doc. 78). For purposes of judicial efficiency and economy such facts regarding the outstanding due process claims are incorporated herein and made part hereof.[1]

## II.  FURTHER BACKGROUND

In this case, Mr. Lang's detention does not accord with due process. Lang is a 27-year-old man, with extensive ties to the community, who has no prior convictions for violent or serious conduct; notably only has one minor drug related blemish on his record.  On January 6, Lang did not remove barriers, did not possess

---

[1] Specifically, Dr. Berrill's Report and Opinion filed as an exhibit to Lang's due process claims is incorporated to this application, and will be further backed up with a secondary report of Dr. Berill regarding Lang's lack of dangerousness to any individual or the community.

any weapons and did not encourage or assist anyone else to do any of those things.

Thus, neither his background, nor his alleged criminal conduct "make[s] clear that

he poses a concrete prospective threat to public safety" as *Munchel* requires. *See*

*United States v. Klein*, 533 F.Supp.3d 1 (D.D.C. 2021) (Bates, J.) (releasing

defendant who engaged in violence, based on defendant's history and characteristics,

and not finding a prospective risk). Here, the superseding indictment ("SI") and other

records in this case show that Mr. Lang:

(1)   Was not physically present in the interior Capitol/ senate chambers/ and/ or congressional offices;

(2)   did not tear down any fencing;

(3)   did not discuss a plan to attack the Capitol with any other J6 defendant;

(4)   was not privy to any plan to attack the Capitol on January 6th;

(5)   had zero group affiliation on January 6th;

(6)   acted alone to protect his life and others;

(7)   did witness officers brutally beating an unarmed female and various other men;

(8)   did beg and plead with officers to stop violence at one point because people were being crushed to death;

(9)   did save Phillip Anderson and Thomas Tatum's lives by pulling them out of the crowd, where Roseanne Boyland died;

(10)   did not possess any weapons, anti-government reading material or paraphernalia, as no such materials were seized from Lang's apartment, upon being arrested; and

>   (11)   Mr. Lang and his family have an established history of respect for the legal system, law enforcement and the Courts, and there is not a single showing, outside of the instant allegations, of opposition towards any member of the government, or legal system.

(*See* Superseding Indictment at ECF 36; *See also* Detention Hearing transcripts attached as **Exhibit A**).

Respectfully, these allegations along with Lang's history do not support that no set of conditions could reasonably assure his appearance in court, as it would be inappropriate and unfounded to conclude that he is a future danger. 18 U.S.C. § 3142(e)(1).[2] Thus, the limited issue here is whether Lang should be immediately released under the Bail Reform Act ("BRA")'s subsection (i), which should be narrowly applied to pretrial detainees when its "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

The BRA stresses[3] liberty as the norm, and only in extreme cases does detention apply. The conditions Lang requested, along with his history of upstanding citizenship, present no *reasonable, articulable reason* the Government can articulate as to how Jake presents an *identifiable threat* to his

---

[2] The government has not advanced an argument that Lang is a flight risk, thus, such issue need not be addressed at this time.

[3] On December 31, 2020, the Bond Reform Act of 2020 was presented in Congress.

community or *local* law enforcement. Further, all of Lang's communications, social media accounts, and movements can be monitored on home-detention.

Lang's case also stands for a few other principles. *First*, how better access to discovery can present the constitutionally afforded with the best defense; *second*, when a defendant has established, for approximately two years, that he is an asset in reviewing discovery and has countlessly sought to be involved in his own defense, then release is necessary to comport with the Sixth Amendment; and *third*, how a particular defendant's confinement substantially prejudices his ability to communicate and assist in his defense, and such prejudice applies to a BRA analysis under subsection (i).

### A. LANG'S ABILITY TO PREPARE A DEFENSE HAS BEEN SUBSTANTIALLY PREJUDICED, AND THE PROSPECT OF A DISTANT TRIAL IN 2023.

Lang's story in the last 22-months is troublesome. As jail policies drastically differ from jail-to-jail, being continuously transferred makes it extremely difficult for everyone, even defense counsel, to communicate with Lang.

Lang was arrested in January 2021 and most recently transferred to Lewisburg, PA. This marks the eleventh (11th) jail Lang has been detained at since his arrest.  Each time lawyer-client communication is established, Lang gets transferred again, only for us to have to start all over again and become familiar with that particular facility's policies.

Again, throughout this entire time detained, all of Lang's communications have continued to be monitored by the Marshals and whatever Jail he is at – at any given time. While Jake's alleged actions on J6 do not define him as a person, and he remains not convicted of any crime, the Marshal makes allegations such as:

> *Per the request of the Sheriff in Alexandria*, yesterday afternoon the USMS moved defendant Edward Lang USMS# 76480-054, to Rappahannock Regional Jail in Stafford, VA.

(*See* US Marshal Email dated October 8, 2022).

> . . .

> *Per Sgt. Foster of Rappahannock Regional Jail, per his superintendent they want Lang moved*. Since he was placed in administrative segregation the facility has been receiving numerous calls regarding why Lang is in administrative segregation. Sgt. Foster also said Lang is refusing to eat while he is in administrative segregation. Lang did use the phone Sunday while he was in administrative seg, and therefore he believes that's why they are receiving phone calls from various people regarding Lang's status.

> Per Sgt Foster they do not want to keep Lang in Segregation for a long period of time. I asked the facility if they can withhold giving him a tablet once he returns to his unit and their response was no. That would be to taxing on his staff to attempt to monitor just the one defendant.

> I asked Sgt. Foster if defendants can only make calls to people on their assigned phone list and he said no. The tablets are set up to where they can call anyone.

(*See* US Marshal Email dated October 31, 2022).

While at Lewisburg, the policy is that defense counsel will have to provide the government with a hard drive, and then the government will have to facilitate Lang's ability to review his electronic discovery. This policy presents numerous concerns, as there are three hard drives that defense counsel has already spent weeks putting together and then hours traveling to DC jail to deliver such hard drive to the facility. These hard drives, except one, never made it to Lang, have all mysteriously disappeared[4] and were not transferred with any of Lang's property, as he is continuously moved around the country to different jail facilities.

Additionally, Lang's current facility is hundreds of miles from the courthouse, and from defense counsel's properties, and work office.  Lang's parents and family must also travel hundreds of hours to such facility, with the hope of being granted access to see their loved one.

By its own description, the government has produced an enormous amount of discovery material in this case, which remains uncompleted. The current schedule in place is: "Discovery due by 1/20/2023. Exhibit List due by 3/24/2023. Motions due by 2/3/2023. Proposed Voir Dire due by 3/24/2023. Proposed Jury Instructions due by 3/24/2023. Pretrial Statement due by

---

[4] None of the three hard drives, which again took defense counsel weeks and countless hours to put together have been returned to counsel.

3/24/2023. Responses due by 2/24/2023 Replies due by 3/3/2023." (*See* 11/28/2022 Minute Order).  Trial has been rescheduled to as follows: "Jury Trial RESET for 5/29/2023 at 09:00 AM". (*See* 10/24/2022 Minute Order).

Lang must be granted temporary release because such step is necessary to provide him the necessary "preparation of the person's defense, or for another compelling reason." 18 U.S.C. § 3142(i). First, Lang's temporary release is necessary for the preparation of his defense; and, second, Lang can be released to the custody of the an "appropriate person." *United States v. Dhavale*, No. 19-mj-00092, 2020 U.S. Dist. LEXIS 69800, at *12-13 (D.D.C. Apr. 21, 2020).

Other compelling reasons for release are that Lang has already been incarcerated for 22-months, and his trial is not scheduled for another six months. Further, there is no definitive date as to when the appellate decision on the §1512 count will be decided, or if another issue will arise before May 2023, which will require a further extension of his trial. Lastly, discovery in this case is voluminous, and Lang has stressed his willingness and eagerness to not only participate in his own defense, but to also be a vital part of discovery review and his trial preparation.

### B.  LANG'S PRIOR DETENTION DECISION.

This Court in denying Jake bond focused on the belief that "Lang does pose a threat to future violence . . .  [because he] views the current United States

government as illegitimate, and it is at least possible he may not comply with future legal orders or respect the rule of law." (Tr. at p. 72- 73). This Court also held that, "Mr. Lang's history and characteristics, perhaps we could suggest that some conditions of release might be possible without further violence or risk of flight, although some of that evidence is quite the contrary." (Tr. at p. 76.).

This Court also determined that the conditions of confinement and denial of attorney client-privilege issues are not a factor that the Court can consider when considering a bond application under the BRA. However, Lang's pretrial detention is degrading his Fifth and Sixth Amendment rights, as he is unable to view nearly any evidence in his case, or virtually confer with counsel. Because there is no statutory basis for detention under § 3142(f) and there are conditions that reasonably assure public safety, indeed virtually guarantee it, he must be released so that he can adequately prepare for trial against novel claims the government has charged. If these conditions and facts do not satisfy the BRA, under which liberty is the norm, the precedent set by this case will be dangerous.

### III.  LEGAL STANDARD

> In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. The Bail Reform Act of 1984 authorizes one of those carefully limited exceptions by providing that the court "shall order" a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

> . . .

> Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety.

*United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021) (*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Additionally, § 3142(i) must be carefully reviewed as it was in *Ryan Nichols* case. (*See US v. Ryan Nichols*, 1:21-CR-00117 (TFH) at ECF Doc. 150). Section 3142(i) highlights that after an initial determination of pre-trial detention, the Bail Reform Act provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Under this statutory provision, the defendant otherwise subject to pretrial detention, may be granted temporary release by showing the presence of two (2) factors: (1) that his temporary release is necessary for the preparation of his defense or another compelling reason; and, (2) that he could be released to the custody of the an "appropriate person." *United States v. Dhavale*, No. 19-mj-00092, 2020 U.S. Dist. LEXIS 69800, at 12-13 (D.D.C. Apr. 21, 2020).

## IV.  <u>ARGUMENT</u>

### A.  RELEASE IS NECESSARY BOTH FOR THE PREPARATION OF LANG'S DEFENSE AND FOR OTHER COMPELLING REASONS.

From the DC Jail to the Rappahannock Regional Jail, each facility Lang has been transferred to have engaged in a pattern of behavior that equates to retaliating against Lang through unlawful inhumane treatment. For example, there have been numerous raids on Lang's cell, one in particular was just a day after Trump's Florida residence was raided. Each facility does not want Lang in the particular jail, so the jail's staff and personnel will stop at nothing to ensure circumstances that warrant the Marshals to immediately transfer Lang.[5] Such circumstances establish a retaliatory motive against Lang. The recent raid of the Defendant's cell shows the Jails intend to escalate and continue their unlawful

---

[5] *See* US Marshal Emails, *supra* (highlighting "*Per the request of the Sheriff in Alexandria,* yesterday afternoon the USMS moved defendant Edward Lang . . . to Rappahannock Regional Jail" . . . . "*Per Sgt. Foster of Rappahannock Regional Jail, per his superintendent they want Lang moved.*").

conduct in retaliation of Lang due to him being outspoken. If such jail behavior is allowed to continue, the predictable possible results will be Lang suffering further abuse, probable adverse effects on his cognition and on his ability to prepare for trial.

> **B**.    **LANG'S ABILITY TO PREPARE FOR TRIAL IN THE JAIL HAS BEEN IRREPARABLY COMPROMISED BY THE JAIL'S UNLAWFUL CONDUCT AGAINST LANG, AND THE CONFISCATION AND DESTRUCTION OF HIS DISCOVERY MATERIALS.**

A pretrial detainee generally is "hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." *United States v. Ali*, 965 F. Supp. 2d 139, 151-52 (D.D.C. 2013)[6] (*citing Barker v. Wingo*, 407 U.S. 514, 520, 533 (1972)). When discussing pretrial incarceration, the *Barker* court stated:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons

---

[6] DC Court of Appeals reversed *Ali*, reversing the district Court decision to place Ali on home confinement.

> who are ultimately found to be innocent. Finally, even
> if an accused is not incarcerated prior to trial, he is still
> disadvantaged by restraints on his liberty and by living
> under a cloud of anxiety, suspicion, and often hostility.

*Barker v. Wingo*, 407 U.S. 514, 532–33 (1972)

The *Ali* Court also emphasized the following:

> Pretrial detention limits defense counsels' access to
> their client and thus limits counsels' ability to prepare
> effectively for trial and to prepare the defendant to
> testify. Moreover, the physical and psychological toll
> of pretrial detention, particularly a detention lasting for
> several years, where the defendant is effectively cut off
> from everyone but his attorneys, can significantly affect
> a defendant's ability to participate in his own defense.

(*Id.* at 520).

The "lengthy exposure to these [pretrial detention] conditions [having] a destructive effect on human character" and "the physical and psychological toll of pretrial detention" in this case bears a striking resemblance to the *Barker* and *Ali case. Id.*

*The Ali* Court found "a disregard for Ali's constitutional rights, as well as the depressing reality of conditions at the D.C. Jail" because the defendant – as a pretrial detainee – was punished without a timely hearing for allegedly possessing "major contraband" in the form of a USB drive containing educational materials. *Id.* The Court found the DC Jail's conduct "exemplifies the exceedingly harsh conditions that pretrial detainees face while awaiting

trial" and "points strongly to a denial of due process." *Id.* (*citing Gonzales Claudio*, 806 F.2d 334, 341(2d Cir. 1986).

In *Gonzalez* the court found that "pretrial detention of defendants without bail for more than 14 months violated due process clause of the Fifth Amendment, though defendants' presence at trial could not be reasonably assured in any other fashion, where Government's delay in complying with defendants' discovery request had contributed to length of pretrial detention, where there was no evidence that either defendant had ever fled from lawful authority or failed to honor court orders, and where Government estimated that defendants' trial would not be concluded until almost two years and two months had passed from day they were incarcerated." *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir. 1986) (*citing* U.S.C.A. Const. Amend. 5; 18 U.S.C.A. § 3142(e)). Similar to the case in *Gonzalez*, a trial would conclude a significant amount of time away from when Lang was incarcerated. Further, like in *Gonzalez*, the government's delay in concluding discovery has resulted in the case has contributed to the case not being ready for trial.

An additional factor that the *Ali* Court accordingly weighed in favor of the Defendant was the length of defendant's pretrial detention. *Id.* Here, Lang has been a pretrial detainee for approximately 22-months.

As highlighted in the pending Due Process Motion(ECF #69) and Reply (ECF #78), Lang has been subject to continuous violations and infringements that have made it impossible for him to prepare for trial. As of recent, at the current Lewisburg facility, Lang has not been given a legal line to make calls, which disallows him from communicating with his attorney, investigators or witnesses, has been denied legal calls multiple times, has had his meetings intentional shortened or canceled, has inappropriately had his legal calls spied on and monitored, and has not been given access to research via Evidence.com, Realitevely.com and Everlaw.com. Further, on December 15, 2022, during a "confidential" legal call, staff members were eavesdropping and stated that they knew who was in the video call.

In all the institutions Mr. Lang has been housed at he suffers the same crippling circumstances to his legal case which deny him his right to amply prepare for his trial and therefore denying him his constitutional right to a fair trial. The amount of times his cell has been raided in 23 months, the raw amount of data, privileged correspondences, and legal notes on discovery that have been corrupted and exposed in these raids and confiscations is utterly baffling. The amount of legal calls he has been denied, and overall access to be able to build his case in any meaningful way would not possibly fit within this motion, if given the details of every instance. These abridgements are systematically

applied in every institution and will not be remedied until Mr. Lang is freed to prepare for his trial.

### C. THE SHEER LENGTH OF LANG'S PRETRIAL CONFINEMENT IS A VIOLATION OF HIS DUE PROCESS RIGHTS.

Lang has been detained without trial for 22 months in violation of his due process rights. Pretrial detention violates due process when it "become[s] excessively prolonged, and therefore punitive" rather than regulatory. *United States v. Salerno*, 481 U.S. 739, 747-48 & 747 n.4 (1987).

The length of pretrial detention is excessive when it is no longer related to its regulatory purposes, including protecting the public from dangerous defendants and ensuring that they will not flee. *United States v. Torres*, 995 F.3d 695, 709-10 (9th Cir. 2021). There is no set time when pretrial detention crosses the line from regulatory to punitive because due process is a flexible concept and, thus, its limits depend on the facts of the case. *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986).

However, courts consider six factors when evaluating whether the length of pretrial detention violates due process:

(1)   the seriousness of the charges;
(2)   the strength of the government's proof that the defendant poses a risk of flight or a danger to the community;
(3)   the strength of the government's case on the merits;
(4)   the length of the detention;
(5)   the complexity of the case; and

(6)    whether the strategy of one side or the other has added needlessly to that complexity.

*United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986); *see also United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989); *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988); *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986) (same); *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986).

The First Circuit has highlighted "we shall assume that in many, perhaps most, cases, *sixteen months* would be found to exceed the due process limitations on the duration of pretrial confinement." *Zannino*, 798 F.2d at 547-48. In *Zannino*, with regards to the first factor, the charges were "of the gravest order, including predicate acts of murder and conspiracy to commit murder." *Id.* Here, despite Lang's charges being incomparable to the defendant in *Zannino* charges, Lang has been detained for many more months. The third factor described the government's case on the merits as "strong". Regardless, the *Zannino* Court found that sixteen months would have been unconstitutionally excessive for pretrial detention. Zannino did, however, delay his trial.

Similarly, the Second Circuit condemned, as unconstitutionally excessive, the fourteen (14) month detention of two defendants charged with robbery. *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986).

Likewise, the Ninth Circuit recently stated that a twenty-one-month detention is "significant under any metric and is deeply troubling". *Torres*, 995 F.3d at 709. The *Torres* case's finding of "deeply troubling" involved a defendant who was convicted of drug related crimes five-times before, had an outstanding warrant when arrested, a gun with live ammunition, and 64 grams of methamphetamine. *Torres*, 995 F.3d at 709.

Courts not only consider the time already spent in detention, but also "the non-speculative nature of future detention," i.e., the time until trial, and the length of the trial. *Compare Hare*, 873 F.2d at 801; *Compare to Ojeda Rios*, 846 F.2d at 168-69. In *Ojeda Rios*, the Second Circuit ordered the release of the defendant even though the district court found that the defendant "posed a risk of flight and also presented a danger to the community." *Id.* The *Ojeda Rios* Court highlighted the length of Defendant's confinement and the fact that the trial was anticipated to take months. *Id.* In doing so, the court found "we do not believe that due process can tolerate any further pretrial detention in this case." *Id.*

Here, Mr. Lang is neither a flight risk nor a danger to the community. His pretrial detention of **22 months** in this matter should be considered "troubling". *Torres*, 995 F.3d at 709.  Regarding the complexity of the case, jail-after-jail-after-jail has deprived Lang of his basic human rights such as the denial of

religious services and basic hygiene. His right to counsel remains a daily struggle, as the jails have literally thrown Lang's discovery materials in the trash. The litany of violations can go on and on. (*See* Lang's *Due Process Violations* at ECF Doc. 69; *See also* Lang's Reply Motion at ECF Doc. 78).

"In determining whether preventive detention violates due process, court must consider not only factors relevant in initial detention decision, such as, seriousness of charges, strength of Government's proof that defendant poses risk of flight or danger to community, and strength of Government's case on the merits, but also additional factors, such as, length of detention that has in fact occurred or may occur in the future, nonspeculative nature of future detention, complexity of case, and whether strategy of one side or the other occasions delay." U.S.C.A. Const.Amend. 5; 18 U.S.C.A. § 3141 et seq. *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989).

Here, the prejudice of Lang's jail conditions have created has needlessly added to the complexity of the case. The reasons behind the jails unlawful conduct on numerous occasions to Lang mostly remain a mystery. Lang accumulated hundreds of pages of discovery to assist in his defense, only for such documents to be confiscated. Then to make matters worse, when Lang requested his materials back, he was informed that all such documents, some of which contained Defendant's litigation strategy, were just thrown in the trash.

Similar issues exist with the three hard drives defense counsel submitted to the DC jail for Mr. Lang. Again, these hard drives have been in the jail's hands for over a year now. Lastly, the jails clear animosity towards Mr. Lang has led to various jails complaining about Lang's communications with the outside world. Logically, the jails are potentially eavesdropping in on all of Lang's communications, including his legal calls.[7]

Without a detailed investigation, the defense has no way of definitively knowing which files the Government may have viewed, copied, altered, or deleted from these hard drives, or from all the documents that have been confiscated from Lang's cell throughout the last year. So, the question remains, if any sensitive material has made it into the Government's possession, there is no way to determine how any such action may effect the Defendant's trial strategy.

Once again, defense concerns of Lang's legal calls being illegally monitored will not be easily resolved and will unquestionably add to the convolution of the case. Further, the Government's continued discovery dumps also add to the complexity of the case – which is an additional factor when

---

[7] During the last legal video call I had with Lang, I was in route from Washington, DC to New York City. Consequently, I had to sign in such meeting on my I-phone, and could not help but noticing that every word being said was simultaneously being transcribed at the bottom of my screen.

determining release in pretrial detention under *Hare*. (*See United States v. Hare*, 873 F.2d 796 (5th Cir. 1989) "…additional factors, such as, length of detention that has in fact occurred or may occur in the future, nonspeculative nature of future detention, complexity of case, and whether strategy of one side or the other occasions delay.")

J6 has shown to be an unprecedented crusade to find, detain and prosecute hundreds of American citizens who were present at the Capitol on January 6, even for the most minimal non-violent participation.

The events that took place at the Capitol on January 6 lasted less than four hours, and have somehow produced the most expansive federal law enforcement investigation in US history. This is the largest number of defendants prosecuted on a single event. Further, the nature and volume of the evidence collected has been as a result of the largest FBI investigation. There are currently over 800 defendants from all 50 states facing charges, with more defendants being investigated, hunted down, and arrested to this day.

### D.   OTHERS INVOLVED IN SIMILAR CONDUCT HAVE BEEN RELEASED PRETRIAL.

Just recently, Judge Hogan released Defendant Nichols after analyzing Section (i) of the BRA for the limited purpose of determining his necessity and need to prepare for trial. (*See US v. Ryan Nichols*, 1:21-CR-00117 (TFH) Minute Entry as to RYAN TAYLOR NICHOLS (1) for proceeding held on 11/10/22 before Judge

Thomas F. Hogan: Motion Hearing re <u>150</u> Emergency Motion for Release from Custody. Reports by Counsel regarding conditions of release due by 11/18/2022. Bond Release Hearing set for 11/22/2022 11:30 AM in Courtroom 26A); (*See also US v. Ryan Nichols*, 1:21-CR-00117 (TFH) at ECF Doc. 181).

On the record, Judge Hogan addressed his understanding that Lewisburg Facility is not a viable option in ensuring that a Defendant in Nichols' or Lang's position can assist and prepare for his trial adequately.

Jake was unarmed on January 6th.  As a U.S. citizen, he appeared to stand for Liberty, the Constitution, and assert his First Amendment Rights.  Now Lang stands charged with a 13 count SI, where the last 22 months establishes how necessary it is for Lang's temporary release as to afford him the opportunity to prepare for trial

## CONCLUSION

For the aforementioned reasons, this Court should order Mr. Lang's immediate release to the custody of his father, Ned Lang, or his mother. For all of these reasons, and any that may become apparent at a hearing on this matter, Mr. Lang respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society, in light of all the recent additional evidence that submitted herein.

Wherefore, he respectfully requests that this Honorable Court release him on high intensity supervision and conditions the Court deems necessary.

Dated:  December 16, 2022

Respectfully Submitted,

/s/ Steven Alan Metcalf II

_____

STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6ᵗʰ Flr.
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

/s/

_____

STEVEN A. METCALF II
*Attorney for Edward Jacob Lang*

Dated: 12/16/22