**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-53 (CJN)** |
| | : | |
| | : | |
| **EDWARD JACOB LANG,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION AND REQUEST FOR IMMEDIATE**
**TEMPORARY RELEASE ON AN EXPEDITED BASIS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Edward Jacob Lang's Motion And Request For Immediate Temporary Release On An Expedited Basis, ECF 91. Lang's arguments in support of his motion have either: 1) already been rejected by this Court and the Court of Appeals for the District of Columbia Circuit, 2) fail to establish factual or legal grounds for relief, or 3) are factually inaccurate. Although Lang demands relief based on recycled assertions that his pretrial detention supposedly precludes access to counsel, he is in fact misusing resources made available for confidential attorney-client communications to speak with members of the media and others with no apparent connection to his criminal case. His motion is meritless and should be denied.

**FACTUAL AND PROCEDURAL HISTORY**

On January 15, 2021, United States Magistrate Judge G. Michael Harvey issued a sealed warrant for Lang's arrest for crimes he committed during the January 6, 2021, attack on the United States Capitol. ECF Nos. 1, 27. Lang was arrested in Newburgh, New York, the next day. ECF

No. 27. On January 19, 2021, Lang made his initial appearance before United States Magistrate Judge Andrew E. Krause in the Southern District of New York. *Id*. During the hearing, which Lang and his current attorney of record attended remotely, Judge Krause committed Lang to the custody of this Court and ordered that he be transported to the District of Columbia. *Id*. at 7. Lang was detained pending trial and made his first appearance in this jurisdiction on February 9, 2021. February 9, 2021 Minute Order. At that hearing, with no objection from Lang, United States Magistrate Judge Zia Faruqui ordered Lang to remain detained pending trial. *Id.*

In the meantime, on January 29, 2021, a grand jury indicted Lang on 11 charges: two counts of Assaulting, Resisting, or Impeding Certain Officers with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); one count of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a); three counts of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of Title 18 U.S.C. § 1752(a)(2) and (b)(1)(A); one count of Engaging in Physical Violence in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of Title 18 U.S.C. § 1752(a)(4) and (b)(1)(A); one count of Disorderly Conduct in a Capitol Building, in violation of Title 40 U.S.C. § 5104(e)(2)(D); and one count of Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40 U.S.C. § 5104(e)(2)(F). ECF No. 5. On September 15, 2021, the grand jury returned a superseding indictment removing two counts of civil disorder and adding several counts of assaulting law-enforcement officers. ECF No. 36.[1] These charges stemmed from

---

[1] This Court dismissed a count charging a violation of 18 U.S.C. § 1512(c)(2).  June 7, 2022 Minute Order.  The United States is pursuing an appeal of the Court's dismissal of that count, ECF 65. The Court of Appeals heard oral argument for the appeal on December 12, 2022.

Lang's presence at the front of the police line on the Lower West Terrace of the United States Capitol on January 6, 2021 for more than an hour, where he confronted officers, donning a gas mask and assaulting them, including with a stolen riot shield and an aluminum baseball bat.

After the original indictment, on April 29, 2021, this Court issued a protective order regulating the disclosure of materials produced in discovery. ECF 18. The order called for the defendant to sign a statement expressing agreement with the Order's prohibition against recording personal protected identification information. ECF 18 at 3. Lang never signed the statement and has not consented to have his counsel sign on his behalf. ECF 50.

On August 23, 2021, Lang moved for release into the High Intensity Supervision Program with GPS monitoring. ECF No. 29. Among other things, Lang alleged that he had been physically abused and retaliated against at the District of Columbia Jail, where he was then incarcerated. *Id.* at 9-12. Lang further complained that he could not communicate privately with his attorneys and could not review all of the discovery in this case and asked to be provided with a laptop so that he could do so. *Id.* at 12-19. Lang further claimed that he was neither a risk of flight nor a danger to the community, and thus should be released on conditions. *Id.* at 19-25.

This Court denied Lang's motion at a September 20, 2021, hearing, finding, among other things, "the particular circumstances" of Lang's crimes to be "even more troubling" than the statutes under which the crimes were charged: Lang "was at times at the very front of a large mob seeking to enter the Capitol. Mr. Lang appears to have been one of the leaders. . . and instigators of the violence."  Transcript of Arraignment/Status Conf./Motion Hearing, *United States v. Lang*, 21-cr-53-CJN (D.D.C. Sept. 21, 2021) ("Tr.") at 71; September 20, 2021 Minute Order. Video showed "Lang in front of the crowd, verbally encouraging violence, hitting Capitol Police with at times a metal baseball bat, another time a riot shield and also kicking a police officer[.]" Tr. at 71.

3

This conduct "continued over the course of several hours[.]" *Id.* at 72. Even after the attack on the Capitol, Lang "appear[ed] interested in the possibility of continuing to attack the United States government[.]" *Id.* at 77. Thus, unlike other January 6 defendants, Lang "both engaged in substantial violence on the day of January 6th and then thereafter in his own messages both did not reflect any remorse about those events and indeed said very concerning things about the inauguration[.]" *Id.* The Court thus denied Lang's motion for release. *Id.* at 78.

With regard to Lang's complaints about the conditions at the D.C. Jail and his inability to review discovery, the Court noted that the "Jail has various policies in place to permit, at least to some extent, the review of that information." Tr. at 78. However, "the defense ha[d] not attempted to use those procedures to allow Mr. Lang to review the video and other record evidence." *Id.* The Court invited "additional motions" if the Jail's procedures proved "unworkable," but found that Lang's motion raised an "unripe dispute because defense counsel has not attempted to work under the currently operating policy." *Id.* And while the Court was "concerned about ensuring that Mr. Lang has the ability to talk with counsel," it was "not prepared to intervene at this time into how these communications are occurring." *Id.* at 80-81. On that issue, too, the Court denied the motion without prejudice and invited Lang to bring it again if he had "sufficient additional evidence about his ability to mount [a] defense." *Id.* at 82-83.

Lang appealed this Court's denial of his motion for pretrial release. *See United States v. Lang*, No. 21-3066 (D.C. Cir.). Among other things, Lang argued that the conditions at the D.C. Jail, and his inability to access discovery and meet with his lawyers there justified his pretrial release. Memorandum of Law and Fact on Behalf of Defendant-Appellant, Edward Jacob Lang, *United States v. Lang*, No. 21-3066 (D.C. Cir.) at 12-17. On January 12, 2022, the D.C. Circuit

affirmed this Court's order denying Lang's motion for pretrial release in a per curiam judgment.

ECF 52-1. With respect to the basis for detention, the judgment stated:

> The evidence proffered by the government shows that, over the course of two and a half hours on January 6, 2021, appellant repeatedly pushed, punched, and kicked at police officers defending the Lower West Terrace entrance to the Capitol building.  He also slammed a door against one officer's head and struck other officers first with a stolen riot shield and later with a metal baseball bat.  As we explained in <u>Munchel</u>, "those who actually assaulted police officers . . . are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." <u>Munchel</u>, 991 F.3d at 1284.  After January 6, appellant boasted about his conduct, advocated taking up arms against the government and attempted to organize militias for future acts of violence.

*Id*.  The court of appeals also rejected Lang's arguments for release that were based on his

purported inability to access discovery or communicate with counsel, writing that:

> [Lang] also argues that conditions at the D.C. Jail—specifically, his alleged inability to communicate confidentially with counsel and review discovery—should have warranted pretrial release. [Lang] relies primarily on the proposed Federal Bail Reform Act of 2020, which would have amended 18 U.S.C. § 3142 to provide that district courts deciding whether a defendant is a danger to others must consider, among other things, "the conditions of confinement, including . . . the person's ability to privately consult with counsel and meaningfully prepare a defense." H.R. 9065, 116th Cong., § 2 (2020). However, [Lang] concedes that the Federal Bail Reform Act of 2020 was not enacted into law. And as the Supreme Court has opined, "[o]ur charge is to give effect to the law Congress enacted." *Lewis v. Chicago*, 560 U.S. 205, 217 (2010).

*Id*. at 2.[2]

Lang has repeated claims about his alleged inability to access discovery and communicate

with counsel in a motion to dismiss the superseding indictment.  ECF 69, 69-1.  In that motion,

Lang objected to conditions at the D.C. Jail where he had previously been detained, at USP

Lewisburg, where he had been detained after transfer from the D.C. Jail, and at the Adult Detention

Center (ADC) in Alexandria, Virginia where Lang was detained when he filed the motion to

---

[2] Lang's motion continues to seek application of the Federal Bail Reform Act of 2020, ECF 91:5, n.3, despite the failure to enact that legislation and the D.C. Circuit's judgment quoted above.

dismiss.  ECF 69-1:5-17.[3]  Only three paragraphs of Lang's factual allegations in the motion to dismiss addressed conditions at USP Lewisburg; these paragraphs made general claims about Lang's ability to communicate[4] and did not mention his access to discovery. ECF 69-1:15. The United States filed a response in opposition to the motion. ECF 71.  After this Court granted his request for an extension of time, *see* September 12, 2022 Minute Order, Lang filed an untimely reply.  ECF 78.

Throughout his pretrial detention, Lang has engaged in unauthorized contacts with various radio, television, and online broadcasters, and has violated other regulations.   During these contacts, Lang has acknowledged that his communications can subject him to discipline. *See, e.g.,* ECF 71:25, n.12 (citing recorded broadcasts where Lang stated that he did not fear potential discipline for his communications with online and other media outlets).  While at the ADC, Lang was notified of the United States Marshal Service (USMS)[5] policy regarding contacts with the media and of the procedure to seek authorization for media contact.  Lang continued to violate the USMS policy.

In late September, 2022, the ADC requested the USMS to relocate Lang to another facility. The USMS relocated Lang to the Rappahannock Regional Jail located in Warsaw, Virginia, which provides detainees with access to tablets, subject to the regulations and policies of that institution and, in the case of federal detainees, of the USMS.  In violation of those restrictions, on October

---

[3] While detained at the ADC, it appears that Lang had access to counsel that was sufficient for him to file a civil action in the Eastern District of Texas seeking injunctive relief.  Lang was the third named plaintiff in *Evans, et al. v. The Select January 6 Committee*, No. 4:22-cv-00682 (E.D. Tex., filed Sept. 17, 2022) (complaint for injunctive relief including the signature block for counsel in Texas and attorney Steven A. Metcalf)(ECF 4).

[4] It is unclear whether Lang's motion to dismiss described his complaints with Lewisburg's provisions for telephone and electronic mail communications with non-lawyers or with the institution's provisions for confidential communications with counsel.

[5] Congress has conferred authority on the USMS to house pretrial detainees.  18 U.S.C. § 4086.

29, 2022, corrections officers caught Lang improperly conducting a live feed with the hosts of a YouTube broadcast. Lang was placed in administrative segregation, but from segregation was able to call another media figure named Jim Hoft, who publishes through an outlet called the Gateway Pundit. On or about October 30, 2022, Hoft published an article containing what appears to be a transcript of that call with Lang, where Lang admitted to the October 29 call to broadcasters. Hoft's article concluded with an appeal to its viewers to call the Rappahannock Regional Jail to protest Lang's treatment; that appeal included the telephone number for the jail, which then received calls from protesters. The Rappahannock Regional Jail subsequently requested Lang's relocation.

Since November 4, 2022, Lang has been housed in a pretrial unit at USP Lewisburg, a Bureau of Prisons facility. *See* Exhibit 1 (Declaration of Jennifer Knepper), attached hereto. USP Lewisburg has offered Lang's counsel of record, Steven A. Metcalf, Esq., the options to communicate confidentially with Lang in person, by video, or by telephone. Exhibit 1, p.3. None of Mr. Metcalf's communications with Lang have been monitored. *Id*. at p. 2-3. USP Lewisburg does require verification and pre-clearance for in-person legal visits and legal video conferences to confirm the status of attorneys or their staff. Its video conferences are for legal purposes only, and participants are not authorized to forward the link to access the conference. *Id*. at 1-2. Video conferences with counsel occur in a room designated for that purpose. The Unit Secretary initiates the conference, verifies that the defendant and counsel can see and hear each other, and then leaves the room so communications can occur in confidence. Exhibit 1, p. 2. Legal video conferences are usually limited to an hour absent approval for a longer session. *Id*.

As detailed in Exhibit 1, Mr. Metcalf secured video conferences with Lang on November 18, 2022, and November 21, 2022. Lang also participated in legal video conferences on November

28, 2022 (lasting three hours); November 29, 2022 (lasting four hours); and November 30, 2022 (lasting three hours); however, each of these conferences occurred with an individual named Hoang Quan.  Mr. Quan had also scheduled legal visits for December 2, 5, and 8, 2022, for a duration of 3-4 hours each.  Mr. Quan, if he is an attorney, has not filed an appearance in this case. He does not appear in the directory for Mr. Metcalf's firm.  USP Lewisburg has requested verification of Mr. Quan's status  as a paralegal from Mr. Quan and from Mr. Metcalf but has not received that verification.  Mr. Metcalf has had additional legal video conferences with Lang on December 8, 9, and 13, 2022, each lasting for an hour.  On December 14, 2022, an attorney from Mr. Metcalf's firm had a video conference with Lang for an hour.

On December 15, 2022, a legal video conference with Lang and Mr. Metcalf was scheduled.  The Unit Secretary noted that an individual named Jim Hoft had accepted the meeting link for this conference.  When Lang's Case Manager contacted Mr. Metcalf for information about Mr. Hoft, the Case Manager was informed that Mr. Hoft was another attorney handling the case; however, Lewisburg did not have the necessary verifications for Mr. Hoft and Mr. Metcalf was informed of the need to clear Mr. Hoft for participation in legal video conferences.

Mr. Metcalf had an in-person legal visit with Lang on December 17, 2022.  He has additional video visits scheduled.  None of Mr. Metcalf's visits with Lang, either in person or by video, have been canceled.  Mr. Metcalf's ability to schedule legal visits, whether in person or by video, has not been restricted or prevented.

On December 22, 2022, Mr. Hoft published an article stating incorrectly that authorities had told Lang he would no longer be able to speak with his attorney.  Exhibit 1, attachment H. The article then quoted an "urgent message" from Lang stating that "my fundamental right to speak to my attorney has been dissolved by tyrants."  The article further quoted Lang 1) urging viewers

of the online article to call Lewisburg and the USMS; 2) providing telephone numbers for Lewisburg and the USMS; and 3) providing the electronic mail addresses for several Lewisburg staff members.  The author of the Declaration attached as Exhibit 1 received at least 26 electronic mail messages in response, some of which were hostile and threatening.

Lang now seeks to re-open his detention hearing pursuant to 18 U.S.C. § 3142(f).  ECF 91:1.  He also demands "temporary" release under 18 U.S.C. 3142(i).  ECF 91:9.  Lang attempts to justify his release by challenging the factual basis for his detention, *see, e.g.,* ECF 91:3-4; by arguing that he cannot prepare a defense while detained, ECF 91:6; and because the length of his detention supposedly warrants release on due process grounds, ECF 91:9, 14-15.  To show grounds for relief, Lang also seeks to incorporate the contents of his motion to dismiss, ECF 69, 69-1, and his reply, ECF 78, to the government's response in opposition to the motion to dismiss.[6]  Lang's arguments under Section 3142(f) fail to allege new or material grounds for release and essentially revisit the same arguments that failed to persuade this Court or the court of appeals.  His efforts to utilize Section 3142(i) do not establish the necessity required for temporary release.  Finally, the length of Lang's detention is not enough to establish any lack of due process.  For the reasons explained below, his motion should be denied.

## **LEGAL STANDARDS**

I.  The Standard For Reopening A Detention Hearing

Section 3142(f) provides that a detention hearing:

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

---

[6] Lang specified that he seeks to incorporate "Dr. Berrill's Report and Opinion filed as an exhibit to Lang's due process claims. . ." ECF 91:3, n.1. No Report and Opinion from a Dr. Berrill appears on the docket for this case, and defense counsel has confirmed that this exhibit has not been filed.

18 U.S.C. § 3142(f).  "New and material information ... consists of something other than a defendant's own evaluation of his character or the strength of the case against him; instead, it must consist of truly changed circumstances, something unexpected, or a significant event." *United States v. Caldwell*, No. 2022 WL 168343 at *6 (D.D.C. Jan. 19, 2022) (quoting *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020)).  The "mere passage of time, without a substantial change in the underlying reasons … for pretrial detention is generally not sufficient to warrant reconsiderations, particularly where a trial date has been set in the near future." *United States v. Bikundi*, 73 F.Supp. 31, 55 (D.D.C. 2014) (quoting *United States v. Ali*, 534 Fed.Appx. 1, 2 (D.C. Cir. 2013)(per curiam)).  Information that could have been but was not presented at the original detention hearing does not justify reopening a detention hearing, and conclusory allegations that information is new, absent explanation for why the information was previously unavailable, are insufficient.  *United States v. Stanford*, 341 Fed.Appx. 979, 985 (2009).

Information that is only new is insufficient to support reconsideration under Section 3142(f); instead, the new information must also have a material bearing on the factors a court must consider when deciding whether to impose detention.  *Lee*, 451 F.Supp. 3d at 6-7.  Those factors are stated at 18 U.S.C. § 3142(g) and include:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. …

18 U.S.C. § 3142(g)(1)-(4); *see also United States v. Chrestman*, 525 F.Supp.3d 14, 26-27 (D.D.C. 2021) (identifying factors specific to Capitol riot cases)[7].

As (then) Judge Ketanji Brown Jackson explained in *Lee*, "the relevant statutory inquiry is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial)." *Id*. at 7 (original emphasis).  Instead, any new information must, in a material way, address the danger posed by the person's release. *Id*.  Courts have applied the prerequisites for reopening a detention hearing under Section 3142(f) strictly.  *United States v. Terrone*, 454 F.Supp.3d 1009, 1017 (D. Nev. 2020) ("Courts interpret this provision strictly");  *United States v. Rodriguez*, No. 3:20-CR-565-B, 2022 WL 992739 at *1 (N.D. Tex. Apr. 1, 2022) ("courts have interpreted the requirements of this provision strictly); *see also United States v. Worrell*, No. 1:21-CR-00292-RCL, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021) (reconsideration is permissible under this section *only* when there is new information that would materially influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community)(emphasis added; internal citation omitted), *appeal dismissed*, No. 21-3040, 2021 WL 4765445 (D.C. Cir. Sept. 15, 2021).

II.  The Standard For Temporary Release

---

[7] The listed considerations in *Chrestman* include (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." 525 F.Supp.3d at 26-27.

Under Section 3142(i), a court that has ordered a defendant's detention "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary to the preparation of a person's defense or for another compelling reason."  18 U.S.C. § 3142(i).  This provision applies in "extraordinary circumstances."  *United States v. Rebollo-Andino*, 312 Fed.Appx. 346, 348 (1st Cir. 2009); *United States v. Hill*, No. 3:17-CR-276, 2020 WL 4208936 at *2 (M.D. Pa. July 22, 2020) ("Release under § 3142(i) is intended for 'extraordinary circumstances' which are exceedingly rare") (quoting *Rebollow-Andino*); *United States v. Blue*, No.  ELH-19-286, 2020 WL 60443328 at * 4 (D. Md. Oct. 9, 2020) ("courts have invoked § 3142(i) parsimoniously and for truly extraordinary circumstances").  A defendant moving under Section 3142(i) bears the burden of showing that he is entitled to relief.  *United States v. Chansely*, 525 F.Supp.3d 151, 160 (D.D.C. 2021); *United States v. Riggins*, 456 F.Supp.3d 138, 149 (D.D.C. 2020).

III.    The Standard For Analysis Of Lang's Due Process Complaint

No fixed amount of time determines when the duration of a defendant's pretrial detention offends due process.  *See, e.g., United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987) ("we intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal").  Instead, courts evaluating due process challenges to the length of detention assess several factors, including the length of detention, such as the extent of the prosecution's responsibility for delaying the trial, the seriousness of the charges, the strength of the evidence upon which detention was based, and the complexity of the case. *United States v. El Hage*, 213 F.3d 74, 79 (2d Cir.), *cert. denied*, 531 U.S.

881 (2000); *United States v. Caldwell*, 21-181 (CKK), 2022 WL 168343 at *9 (D.D.C. Jan. 19, 2022); *United States v. Hare*; 873 F.2d, 796, 801 (5th Cir. 1989).

## **LEGAL ANALYSIS**

I.      Lang Has Not Provided A Basis To Reopen His Detention Hearing

A.      None Of Lang's Arguments Involve New Information

Lang fails to meet the first requirement for reopening his detention hearing, since his motion does not offer information that did not exist at the time of his original hearing.  For example, Lang lists 11 claims that supposedly refute the finding that he is dangerous.  ECF 91:4. The first 10 items on this list address Lang's preparation for,  conduct on, or observations during, January 6, 2021.  Lang's own conduct and observations before and during January 6 were obviously known to Lang at the time of his September 20, 2021 hearing before this Court, and do not compromise new information; indeed, Lang attempts to support the contentions in his list by citing the transcript from his original detention hearing. ECF 91:4-5. The final item on Lang's list states his opinion about the character of Lang and his family.   Lang does not and cannot convincingly claim that his own or his family's character was information he lacked at the time of his hearing; Lang personally addressed this Court on both of those topics.  Tr. at 56.  *See United States v. Esposito*, 354 F.Supp.3d 354, 361 (S.D.N. Y. 2019) (a defendant's own evaluation of his character is not a basis for reconsideration); *see also United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) (no error when district court denied motion to reopen detention hearing for lack of new information when defendant offered letters from family and friends attesting to defendant's character); *Hare*, 873 F.2d at 799 (testimony from defendant's family and friends was not new evidence).

Lang continues to criticize his custodians because of alleged difficulties Lang (but not his attorney) has experienced reviewing discovery materials and because Lang claims he has had difficulty communicating with counsel. Although the detention facilities Lang attacks have changed, Lang's arguments are nothing new.  He made similar protests about discovery and access to counsel before and during his original detention hearing. ECF 29:12-15; Tr. at 6 ("the conditions of Mr. Lang's confinement are depriving him of his right to access to counsel"), 7-11, 60-61, 67-70. *See also United States v. Petters*, No. CR. 08-36(RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) (finding "there is simply nothing 'new' about Defendant's contention that it will be difficult for him to prepare for trial absent release. He made the same argument before").

Even Lang's argument about the duration of his case was forecast in his original motion seeking release, where he argued that the amount of time anticipated for completion and review of the government's global discovery production warranted an end to his detention.  *See* ECF 29:23-25.  Because Lang argued prospectively that his detention should not continue through the discovery phase of his case, his current contention that the length of his detention now justifies release is in fact not a new argument permitting reconsideration.

Accordingly, none of Lang's arguments identify unexpected events or truly changed circumstances.  For this reason alone, his motion fails to provide the necessary grounds for reconsideration.

B.    Lang's Arguments Have No Material Bearing On His Dangerousness

In addition to information not known at the time of his original hearing, under Section 3142(f) a defendant seeking to reopen a detention hearing must offer new information that also has a material bearing on the factors a court must consider when deciding whether or not to impose

detention.  As noted above, those factors are listed in 18 U.S.C. § 3142(g).  Lang's motion fails to provide information material to any factor listed in Section 3142(g) or in *Chrestman*.

His arguments for release consist primarily of repeated complaints about the conditions of his confinement.  According to Lang, those staffing all of the facilities where he has been detained are prejudiced against defendants charged for offenses at the Capitol on January 6, 2021.  Lang also complains about his access to counsel and to discovery, and objects that he should be released because of the length of his detention.  Not one of these arguments, however, has any relevance to Lang's dangerousness, the nature and circumstances of his offense, the weight of the evidence against him, or his history and characteristics, *see* Section 3142(g), or any of the additional considerations listed in *Chrestman*.

Thus, courts have ruled that objections such as Lang's do not satisfy prerequisites for reopening a detention hearing.  *E.g., Lee*, 451 F.Supp.3d at 7 (covid-19 pandemic had no material bearing on Section 3142(g) factors, and did not justify reconsideration of decision to detain the defendant); *Petters*, 2009 WL 205188, at *2 (difficulties the defendant might encounter preparing for trial have absolutely nothing to do with whether he is a risk of flight or a danger to the community); *United States v. Krol,* No. CR 22-110 (RC), 2022 WL 16948611, at *11 (D.D.C. Nov. 15, 2022) (defendant's lack of access to electronic devices was not a sufficient basis to reopen his detention hearing; restrictions imposed by the jail did not have material bearing on the court's assessment of whether conditions of release existed that would reasonably assure the safety of the community); *United States v. Wittenmyer*, No. 00-40024-14-SAC, 2001 WL 968406 at *4 (D. Kan. July 6, 2001)(defendant's lack of access to individual drug counseling, religious services, and narcotics anonymous meetings, and improper seizure of his mail did not bear materially on detention considerations or support reconsideration of detention under Section 3142(f)).

Lang's objection to the length of his detention also fails this test. *See United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (length of the defendant's current or potential future detention could not be considered under Section 3142(f) since it was not material to the issue of risk of flight or dangerousness); *United States v. Gotti*, 776 F.Supp. 666, 669 (S.D.N.Y. 1991) (same); *United States v. Acevedo-Baldera*, No. 3:18-cr-00155 (AWT), 2020 WL 9156933 at *6 (D. Conn. Nov. 23, 2020) (length of detention did not bear on question of whether to reopen detention hearing).

Accordingly, Lang's motion fails to establish any basis for relief under Section 3142(f). His motion to reopen the hearing should be denied.

II. Lang's Arguments For Release Under Section 3142(i) Are Meritless

Under extraordinary circumstances, a district court may permit the "temporary release" of a defendant who has been detained. 18 U.S.C. § 3142(i). Lang's motion, however, does not appear to seek his release on a temporary basis. The motion does not link his release from detention to any specific purpose or proceeding and lacks any indication for when his supposedly temporary release would end. Insofar as Lang demands release that is either permanent or indefinite, the relief he seeks exceeds what the statute allows.

To obtain temporary release, Lang must show that such release is "necessary for preparation of [his] defense or for another compelling reason." Lang has not made this showing.

First, Lang's argument that his release is necessary for him to have access to counsel is not factually supported. As demonstrated by Exhibit 1, Lang does have access to counsel, through telephone calls, video conferences, and in-person visits. His attorney of record, Stephen A. Metcalf, has utilized each of these options, and two other lawyers (Silberman and Santiago) have had conferences with Lang. Because Lang has the ability to access counsel, his release for this purpose is not a necessity.

Exhibit 1 also establishes that Lang's communications from Lewisburg with his counsel are not monitored and are confidential.  His claims to the contrary consist of mere speculation.  After noting that jails have complained about Lang's "calls to the outside world" (that is, his improper calls to media outlets that publicly broadcast his statements), Lang assumes that "the jails are *potentially* eavesdropping in on all of Lang's communications, including his legal calls." ECF 91:21 (emphasis added).  The motion overlooks the difference between non-legal calls which are monitored, and legal calls which are not; it also ignores the intention to publicize the calls which were not with counsel, not confidential, and accessible to anyone, including but not limited to corrections officials.  Moreover, Lang's speculation about monitoring is directly refuted by Exhibit 1.

Lang's other baseless assertions that his legal communications are monitored fail to warrant consideration.  For example, he protests that he never received certain computer hard drives sent by counsel, a claim he raised before his transfer to Lewisburg, and that previous detention facilities have "literally thrown [his] discovery materials in the trash", ECF 91:20; however, such assertions fall far short of establishing that any staff at Lewisburg either have Lang's legal materials or are reviewing them.  Lang's counsel also complains that during a legal call from his iPhone, the words he spoke were transcribed at the bottom of his screen.  The motion fails, however, to explain any connection between that transcription and personnel at Lewisburg or any logical reason why transcription means that the content of his call was monitored.[8]  Nothing in Lang's motion credibly refutes his access to confidential communications with counsel.

---

[8] *See* https://support.apple.com/en-us/HT208343#:~:text=To%20enter%20text%2C%20tap%20the,can%20check%20it%20for%20accuracy (explaining that for the iPhone 6 and later models, the user can enable dictation without an internet connection by tapping a microphone icon which will cause text to appear on the phone's screen as the user speaks).

Lang in fact has access to counsel.  He has abused that access by using video legal visits for unauthorized contacts with the media or with persons other than his counsel for this case.  For example, since arriving at Lewisburg, Lang has used the video teleconference available for legal visitation to speak (without seeking authorization) with Jim Hoft, who reports for the Gateway Pundit. Under similar circumstances, Judge Kollar-Kotelly rejected an application under Section 3142(i), explaining:

> The issue, then, is not that defense counsel cannot confidentially communicate with his client. The issue is that when defense counsel *is* able to speak with his client, he squanders the opportunity for private conversations, preferring instead to conduct a public interview. Such media appearances are undoubtedly conducive to defense counsel's fame. But they are not at all conducive to an argument that the only way defense counsel could privately communicate with his client is if defendant were temporarily released. Given defense counsel's decision to use what could have been a confidential videoconference on a media publicity stunt, that argument is so frivolous as to insult the Court's intelligence. For these reasons, the Court finds that defendant has not met his burden of establishing a "compelling reason" necessitating his temporary release.

*Chansely*, 525 F.Supp.3d at 172.  Here, instead of defense counsel, it is Lang himself who has squandered the opportunity for private conversation with his attorney, but the reasoning in *Chansely* applies with equal force.  Lang's assertion that access to counsel has been denied is frivolous, and at a minimum it fails to support his temporary release.[9]

Exhibit 1 also details procedures allowing Lang to review discovery, including electronic discovery.  These options include a review of material provided on compact disks or review of materials on a hard drive during an in-person visit with counsel; counsel can also coordinate with the prosecution to produce a hard drive to USP Lewisburg.  In light of these options, the motion fails to show why it is necessary to release Lang to permit his review of discovery material.

---

[9] Exhibit 1 notes the consequences of that call for staff at USP Lewisburg and the Bureau of Prisons.  The use of both BOP and USMS time and resources as a result of Lang's unauthorized communication provide one example of why the USMS media policy is rationally related to legitimate governmental interests. *See generally Bell v. Wolfish*, 441 U.S. 520 (1979).

To the extent that the motion for temporary release assumes that Lang must personally review each and every item produced in discovery, the motion is incorrect. *See* Tr. at 65; *see also, United States v. Celis,* 608 F.3d 818, 840-41 (D.C. Cir. 2010) (rejecting argument that it was necessary to translate all discovery material for represented defendant who was detained and did not speak English); *Carillo v. United States,* 995 F.Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none"); *United States v. Ingram,* No. 3:19CR113-MCR, 2021 WL 4134828, at *3 (N.D. Fla. Sept. 10, 2021) (professional obligations of defense counsel did not mandate that defendant see every item of available discovery material and court was not aware of any such constitutional requirement); *United States v. Thompson*, No. 2:10-CR-200-DBH, 2013 WL 1809659, at *6–7 (D. Me. Apr. 29, 2013) (rejecting argument that defendant needed to personally review discovery in order to enter valid plea because Courts appoint lawyers for defendants in criminal cases so that the lawyers can do the legwork in preparing for trial and give sound advice about whether a defendant should go to trial or plead guilty), *aff'd*, 851 F.3d 129 (1st Cir. 2017); *United States v. Stork*, No. 3:10-CR-132 JD, 2014 WL 1766955, at *7 (N.D. Ind. May 1, 2014) (a defendant represented by counsel does not have a right under either the Constitution or the Federal Rules of Criminal Procedure to be provided with discovery personally) (collecting cases); *United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 30650, at *6 (N.D. Tex. Jan. 3, 2013) ("Contrary to what Defendant contends, he does not have a constitutional right to a personal laptop to help his attorney prepare his defense. Defendant is represented by counsel, who does not have any limitations on computer access or usage"), *aff'd,* 544 F. App'x 274 (5th Cir. 2013); *cf. United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011) (denying motion to continue trial because detained but represented defendant had not completed

review of digital discovery); *see also United States v. Deering*, 179 F.2d 592, 596 (8th Cir. 1999) (holding district court did not abuse its discretion in failing to permit a defendant the right to personally inspect the government's "open file" and instead permitting his stand-by counsel to do so).

Moreover, Lang's release will not result in the review of discovery material to the extent he demands because Lang has refused to comply with the protective order this Court has issued. He has yet to sign the attachment acknowledging the terms of the order and will not permit his counsel to sign for him; accordingly, cannot have access to certain online databases and would still, at a minimum, need to review certain materials only in the presence of his counsel.  Thus, releasing a dangerous defendant who attacked police officers with a baseball bat and also planned to form an armed militia will not resolve Lang's objections concerning discovery.

Read in the best light for Lang, his motion identifies inconveniences resulting from his detention. Courts have consistently rejected claims that the inconveniences of detention are adequate grounds for temporary release. *United States v. Otunyo*, No. CR 18-251 (BAH), 2020 WL 2065041, at *10 (D.D.C. Apr. 28, 2020) (agreeing that if every pretrial detainee is entitled to temporary release to aid working with counsel, then the exception in Section 3142(i) would swallow all detention orders)(internal citations and quotations omitted); *Krol*, 2022 WL 16948611, at *12 ("Although Krol himself may not be allowed access to electronic devices, his defense counsel has not averred that counsel is barred from bringing electronics into the jail to show Krol the relevant video evidence. The limitation on Krol's access, while inconvenient, does not lead the Court to conclude that release would be *necessary* for Krol to participate in his defense"); *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *7 (W.D. La. Jan. 18, 2013) (90-minute commute to jail and complexity of case with thousands of documents requiring thousands of hours

to review was common to all incarcerated defendants and did not justify release); *Petters*, 2009 WL 205188, at *2 ("While this case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release" and "accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result"); *United States v. Blue,* No. CR ELH-19-286, 2020 WL 6044328, at *7 (D. Md. Oct. 9, 2020), *appeal dismissed*, No. 21-4500, 2021 WL 7569805 (4th Cir. Sept. 23, 2021) (defendant's detention at  Northern Neck, a two and one half hour commute from the courthouse, was an inconvenience and did not establish necessity required for  temporary release under Section 3142(i)).

The Court's current scheduling order also weighs against any finding that temporary release is a necessity.  At Lang's request, this Court agreed to move the January 9, 2023 trial date to May 29, 2023.  ECF 89.  No pretrial evidentiary hearings have been set.  The current schedule allows the defense five months to prepare for trial in a case where Lang has already formulated a defense.[10]  *Compare United States v. Acevedo-Baldera*, No. 3:18-CR-00155 (AWT), 2020 WL 9156933, at *8 (D. Conn. Nov. 23, 2020) (when jury selection was at least seven weeks away, defendant had time to work through challenges of preparing for trial while detained and did not meet his burden of showing release was necessary for effective preparation); *United States v. Gumora*, 454 F.Supp.3d 280, 292 (S.D.N.Y. 2020) (denying temporary release where no hearing

---

[10]  *See,  e.g.,*  https://anchor.fm/politicalprisoner/episodes/The-Political-Prisoner-Podcast-Jake-Lang--Prisoner-in-the-DC-Gulag-e1csdd2 dated Jan 12 (last checked December 27, 2022) (at 21 minutes and 44 seconds, Lang states "my trial is not going to be one of did he do it, did he not do it; it's why did he do it"); ECF 38:2-6 (claiming conduct of police at the Capitol justified Lang's actions); Transcript of Status Conference on February 23, 2022 at 10 (announcing Lang's intent to rely on a justification defense); ECF 80 (Defendant's Trial Brief Regarding Self-Defense and Defense of Others).

or forthcoming proceeding was scheduled that would require preparation involving the defendant); *United States v. Eley*, 20-cr-78-3 (AT), 2020 WL 1689773 at *1 (S.D.N.Y. Apr. 6, 2020) (denying temporary release when trial was nine months away); *United States v. Ray*, No. TDC-19-0215, WL 2020 4053822 at *4 (D. Md. July 20, 2020) (denying temporary release when covid-19 pandemic impacted access to counsel, because trial was five months away); *United States v. Shipp*, No. 19-CR-29 (NGG), 2020 WL 3642856 at *4 (E.D.N.Y. July 6, 2020) ("courts have uniformly declined to release detainees in the absence of an imminent trial or hearing").[11]  The current trial date is also a factor that weighs against any finding that temporary release is necessary.

Lang's motion for release is deficient for an additional reason.  It offers no facts in support of any finding that either of his parents are "an appropriate person" to whom Lang should be released.  A family relationship, without more, does not automatically establish that a person is an appropriate custodian for a defendant determined to be a danger or a flight risk.  *See United States v. Armstead*, No. CR 18-00357 (APM), 2020 WL 1821130, at *1 (D.D.C. Apr. 10, 2020) (finding, among other reasons, that defendant did not satisfy requirements of Section 3142(i) when he did not explain why his mother was an appropriate person to whom he should be released); *Lee*, 451 F.Supp.3d at 10 (same) (citing *United States v. Courtney*, No. 19-cr-413, ECF 27 (D.D.C. Mar. 20, 2020 (defendant's sister was not an appropriate person)); *Otunyo*, 2020 WL 2065041 at *9 (defendant's sister was not an appropriate person because she was an essential worker spending more than 40 hours a week outside of her home, and was therefore not in a position to monitor the defendant and prevent him from recidivating or fleeing); *United States v. Thorne,* No. CR 18-389 (BAH), 2020 WL 1984262, at *3 (D.D.C. Apr. 27, 2020) (parental and work responsibilities of

---

[11] In *Shipp*, the defendant, like Lang, argued that the destruction of his discovery materials supported his temporary release. His argument had no impact on the court's decision "because the Bail Reform Act analysis turns on the imminence of the defendant's trial or other proceeding[,]" *Id*. at *4, n. 7.

defendant's niece raised obvious concerns about her ability to monitor the defendant or control his conduct, even if he were released with condition of strict home confinement).

The defendant's motion says little about his parents.  According to a recording of Lang that is available online, his father resides in New York and his mother resides in Florida.[12]  The motion does not explain how releasing Lang to a family member in Florida would improve his access to discovery or to counsel.  Other recordings from the D.C. Jail establish that one of Lang's parents deposited funds into the accounts of other detainees so Lang would be allowed to use accounts other than his own to make calls in violation of the jail's regulations; the other parent appears to have been aware of this activity.[13]  Lang has consistently broken rules and defied authorities at numerous detention facilities and it is far from clear that he would abide by any conditions of release if his motion were granted. Jail recordings provide cause to question whether Lang's parents would monitor or enforce conditions of release if temporary release were granted. With or without these concerns, his motion lacks sufficient information to meet Lang's burden of proof that either parent is an appropriate custodian.

In every respect, Lang's attempt to utilize Section 3142(i) is deficient.  This Court should deny his application for temporary release.

III.     Lang's Detention Does Not Violate Due Process

Lang argues that his 22 months in pretrial detention violate due process.  *Compare United States v. Ali*, 534 Fed.Appx. 1 (D.C. Cir. 2013) (per curiam judgment reversing district court's

---

[12] The recording is embedded in an online article dated April 14, 2022 (when Lang was detained at the ADC) with a byline for Jim Hoft.  *See* https://www.thegatewaypundit.com/2022/04/exclusive-jan-6-political-prisoner-hoping-see-family-birthday-15-mos-isolation-biden-regime-moved-right-family-visit-audio/ (last checked December 28, 2022).

[13] If requested, the United States can provide the recording.

decision to revoke pretrial detention and finding that period of detention did not violate due process in case where detention amounted to a period of two years).

The length of detention alone will rarely offend due process. *E.g.*, *United States v. El Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (addressing 30-33 month period of detention); *United States v. Nero*, No. 17-CR-20183-5, 2021 WL 1137988 at *3 (E.D. Mich. Mar. 25, 2021)(defendant's detention of 45-54 months was not unprecedented; rejecting claim of due process violation and collecting cases with similar periods of detention), *aff'd*, 854 Fed.Appx. 14 (6th Cir. 2021).  Due process analysis occurs on an individualized, case-by-case basis. *See Hare*, 873 F.2d at 801; *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986).  In addition to considering the length of detention, courts will evaluate the extent of the prosecution's responsibility for delaying the trial, the seriousness of the charges,  and the strength of the evidence upon which detention was based. *El Hage*, 213 F.3d at 79; *Caldwell*, 2022 WL 168343 at *9; *Hare*; 873 F.2d 801 (adding complexity of the case as a consideration).  Application of these factors fails to establish any due process violation.

A.  The Charges Against Lang Are Serious

"The gravity of the conduct that occurred at the U.S. Capitol on January 6, 2021, cannot be understated." *United States v. Sabol*, 534 F.Supp.3d 58, 71 (D.D.C. 2021); *see also United States v. Cua*, No. 21-107 (RDM), 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021) ("This was a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself"). During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals armed with baseball bats, stun guns, fireworks, and pepper spray, among other dangerous weapons.

Lang was part of the mob.  He faces four separate counts for assaulting police officers. Evidence of his conduct includes recordings that show he pushed, punched, and kicked officers, slammed a door against an officer's head, and struck other officers with a metal baseball bat.  Such conduct implicates "grave concerns." *See Chrestman*, 525 F.Supp.3d at 26-27.   Several of the assault counts against Lang carry a statutory maximum penalty of incarceration for 20 years. *See also* Tr. at 71 (finding that the charges against Lang include serious felonies). By any measure, the charges against Lang are grave, and this factor weighs against any argument based on due process concerns.

B.      Evidence Against Lang Is Strong

Evidence of Lang's assaults and other offenses includes video recordings of his conduct from surveillance cameras, police body-worn cameras, Lang's own cellular phone recordings, cellular phone recordings from other January 6 rioters, and social media posts, including a photograph posted to Lang's Instagram account showing Lang outside of the inaugural archway with a gas mask, a stolen police riot shield, and a caption with the words "This is me" and an arrow.  Lang has been recorded since his arrest making publicly broadcasted statements during which he admits to his presence at the Capitol and admits to fighting with police officers. During Lang's detention hearing before this Court, his counsel did not contest that video evidence showed Lang hitting an officer with a riot shield, Tr. at 19.  This Court noted the "large amount of video and photo evidence" that the prosecution had gathered to support the charges against Lang,  Tr. at 71, and concluded that the weight of the evidence against Lang "is very strong."  Tr. at 73.  This factor does not support Lang's claim of a due process violation.

C. The Prosecution Has Not Delayed This Case

Lang does not argue that the prosecution has delayed his case.  This case has not been tried

primarily as a result of the global covid-19 pandemic and its impact on the court.  Delays from a global pandemic that has forced courts to adapt in unprecedented ways cannot be blamed on the United States or the defense. *E.g.*, *United States v. Nero*, 854 Fed.Appx. 14, 18 (6ᵗʰ Cir. 2021)(when the delay is attributable to the covid-19 pandemic, courts have concluded that the delay is beyond the government's control); *United States v. Nikparvar-Fard*, No. CR 18-101-1, 2021 WL 2160545, at *5 (E.D. Pa. May 27, 2021) (and cases cited therein)(judicial system's response to a public health crises and suspension of trials was not attributable to either party); *Shipp*, 2020 WL 3642856 at *3 (unquestionably long time defendant was detained did not violate due process in light of the extenuating circumstances of the covid-19 pandemic and the danger the defendant presented to the community).

The United States has not sought to delay this case since  trials in this district have resumed. In April, 2022, in response to an inquiry from this Court, the defense requested that trial not be set until at least November, 2022.  Transcript of April 5, 2022 Status Conference at 14.  Without objection from the defense, this Court scheduled Lang's trial for January 9, 2022.  *Id*. at 19.[14] More recently, when this Court presented the parties with the option of starting trial on January 9, 2023 although the government's appeal from the dismissal of Count Nine was still pending, the defense elected to delay the trial date until May 29, 2023.  The defense affirmatively chose to delay the trial date by nearly half a year, regardless of Lang's continued detention.  Accordingly, delay in the posture of this case cannot be attributed to the prosecution and does not support relief on due process grounds.

D.  Evidence Supporting Lang's Detention Is Strong

---

[14]  Previously, in a February 23, 2022 statement to the Washington Times, *see* https://www.washingtontimes.com/news/2022/feb/23/father-jan-6-prisoner-makes-plea-son-getfair-tria/, defense counsel stated that he was set on refusing to schedule a trial date at all and was quoted directly stating "I refuse to set a trial date."

The decision to detain Lang and the evidence supporting that decision have withstood appellate review, providing at least one reason to conclude that the evidence for detention is strong. Lang offers no new evidence that undermines this Court's original findings or the reasoning of the D.C. Circuit.   Recordings from a variety of sources show that Lang disobeyed and assaulted uniformed and armed police officers for hours.   Anti-riot measures, including the use of tear gas and pepper spray did not deter him.   He encouraged and joined with others attempting to breach police lines and assault officers.   He seriously injured at least one officer.   His participation in the riot ended only once a rubber bullet struck his foot.

Lang has never shown remorse for his actions at the Capitol.   Following the riot, he attempted to create a violent militia willing to take up arms against the federal government.   These facts provide strong grounds for detention.

Lang's history since his arrest only strengthens the case for his detention.   Even within the controlled environment of various detention facilities, Lang has defied authorities and persistently violated rules and regulations through his misuse of communication resources.   He has paid and impersonated other inmates to use their phone accounts and he has refused to refrain from making unauthorized communications that have caused others to harass or threaten staff at the facilities where he has been housed.   Such conduct makes it unlikely that Lang would abide by any conditions of release if this Court were to grant his motion and enhances the case for his detention. Because the evidence for detention remains strong, this factor does not support Lang's claim of any due process violation.

E.      The Complexity Of This Case Does Not Support Finding A Due Process Violation

Lang argues that the global discovery productions unique to prosecutions for the breach of the Capitol on January 6, 2021 make his case complex.   The United States does not dispute that

materials made available in global discovery are voluminous.  Lang, however, misapprehends the significance of complexity, which can justify delay.  *See, e.g.,* 18 U.S.C. § 3161(h)(7)(B)(ii) (complexity is a factor supporting delay for the ends of justice under the Speedy Trial Act). Accordingly, the interests of the defense in reviewing discovery weigh against rather than for finding a due process violation.  *See also United States v. Nero*, 2021 WL 1137988 at *2 (E.D. Mich. Mar. 25, 2021) (rejecting due process challenge to 45-54 months of detention where delay resulted from defense counsel's legitimate desire to review an extraordinary amount of material as well as from an unprecedented world-wide pandemic and finding neither party was at fault for delay), *aff'd*, 854 Fed.Appx. 14 (6th Cir. 2021). This factor also fails to support Lang's due process claim.

## CONCLUSION

Lang cannot convincingly claim he lacks access to counsel when he wastes opportunities to confer with his attorneys on publicity stunts; his claims that confidential communications have been monitored are speculative and equally frivolous.  Lang's other arguments fail to undermine a decision to detain him that has been affirmed on appeal, and for the reasons stated above, his motion fails to establish threshold requirements for reconsideration of detention or for temporary release.  Similarly, he has not established any of the factors supporting his claim for a due process violation.  His motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   s/Karen Rochlin
Karen Rochlin
Assistant U.S. Attorney Detailee
DC Bar No. 394447
99 N.E. 4th Street

Miami, Florida 33132
(786) 972-9045
Karen.Rochlin@usdoj.gov

Craig Estes
Assistant U.S. Attorney Detailee
John Joseph Moakley Federal Courthouse
1 Courthouse Way
Boston, MA 02210
(617) 748-3100
Email: craig.estes@usdoj.gov