**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.                                          Criminal Action No. 1:21-cr-00053 (CJN)

EDWARD JACOB LANG,

*Defendant*.

**MEMORANDUM OPINION AND ORDER**

Defendant Edward Jacob Lang is charged with several offenses arising out of his participation in the January 6th attack on the United States Capitol. Before the Court are Lang's Motion for a Due Process Violation Finding and to Dismiss the Indictment for Want of Jurisdiction, ECF No. 69, and his Motion and Request for Immediate Temporary Release on an Expedited Basis, ECF No. 91. For the reasons discussed below, the Court denies both motions.

**Background**

Lang is charged by superseding indictment with 13 federal crimes: two counts of Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting, in violation of 18 U.S.C. §§ 111(a)(1) and 2; two counts of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); two counts of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, Inflicting Bodily Injury, in violation of 18 U.S.C. § 111(a)(1) and (b); one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation

1

of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); one count of Engaging in Physical Violence in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); one count of Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and one count of Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).  *See* Superseding Indictment, ECF No. 36.

United States Magistrate Judge G. Michael Harvey issued a warrant for Lang's arrest on January 15, 2021, and Lang was arrested in Newburgh, New York, the next day.  *See* Rule 5(c)(3) Documents at 1, ECF No. 27.  Lang's initial appearance occurred on January 19, 2021, before Magistrate Judge Andrew E. Krause in the Southern District of New York.  *Id.* at 3.  At that hearing, Lang was committed to the custody of this Court.  *Id.* at 7.  On February 9, 2021, Magistrate Judge Zia M. Faruqui ordered Lang to be detained pending trial without objection.  *See* February 9, 2021 Minute Entry.

On August 23, 2021, Lang moved for release into the High Intensity Supervision Program with GPS monitoring.  *See* Def.'s Mot. for Bail, ECF No. 29.  This Court denied the motion at a hearing on September 20, 2021, finding that no conditions of release would reasonably assure the safety of the community under the Bail Reform Act, 18 U.S.C. § 3142(g).  Lang appealed that decision, and the Court of Appeals affirmed in a per curiam judgment.  *See United States v. Lang*, No. 21-3066, 2022 WL 127437 (D.C. Cir. Jan. 12, 2022).

The Court of Appeals briefly summarized the allegations surrounding Lang's participation in the January 6th attack as follows:

> [O]ver the course of two and a half hours on January 6, 2021, [Lang] repeatedly pushed, punched, and kicked at police officers defending the Lower West Terrace entrance to the Capitol building.  He also slammed a door against one officer's head and struck other officers first with a stolen riot shield and later with a metal baseball bat.

*Id.* at *1.  The Court of Appeals also described how after January 6th, Lang "boasted about his conduct, advocated taking up arms against the government, and attempted to organize militias for future acts of violence."  *Id.*  In addition to rejecting Lang's challenge to this Court's decision to continue Lang's pretrial detention because of his dangerousness, the Court of Appeals rejected Lang's argument that "conditions at the D.C. Jail—specifically, his alleged inability to communicate confidentially with counsel and review discovery—should have warranted pretrial release."  *Id.*

On June 7, 2022, this Court granted Lang's motion to dismiss Count Nine of the superseding indictment, which charged him with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2).  *See* June 7, 2022 Minute Order.  The Government appealed the Court's dismissal of Count Nine, *see* ECF No. 65, and the Court of Appeals heard oral argument on December 12, 2022.

The Court now addresses two motions by Lang:  his Motion for a Due Process Violation Finding and to Dismiss the Indictment for Want of Jurisdiction, and his Motion and Request for Immediate Temporary Release on an Expedited Basis.  In both motions, Lang objects to conditions at the various facilities where he has been detained,[1] claiming that he has been subjected to physical abuse, inadequate meals, and exposure to illness, among other things.  He also complains, as in his previous motion for pretrial release, about his limited access to counsel and discovery.

---

[1] By the time Lang filed his motion to dismiss, he had been transferred from the D.C. Jail to USP Lewisburg in Pennsylvania, and later to the Alexandria Detention Center in Virginia.  *See* Def.'s Mem. in Support of Dismissal Mot. at 14–16, ECF No. 69-1; Def.'s Reply to Dismissal Mot. at 2 n.1, ECF No. 78.  By the time he filed his second motion for release, Lang had been transferred to the Rappahannock Regional Jail in Virginia, and then back to USP Lewisburg.  *See* Def.'s Release Mot. at 6–7, ECF No. 91; Gov't Opp'n to Release Mot. at 5–7, ECF No. 92.

Lang seeks several forms of relief—primarily dismissal of the indictment and pretrial release.  He also asks the Court to issue an order permitting him to have his own laptop computer to access discovery and another order prohibiting the U.S. Marshals Service (USMS) from restricting his communications with people of his choosing.

**Legal Standards**

Dismissal of an indictment is a "drastic" remedy that is "appropriate only as a last resort, where no other remedy would cure prejudice against a defendant."  *United States v. Morrison*, 449 U.S. 361, 366–67 (1981); *United States v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015).  Even if a constitutional violation occurred, and even if that violation was deliberate, dismissal is not warranted "absent demonstrable prejudice, or substantial threat thereof."  *Morrison*, 449 U.S. at 365.  The appropriate remedy in a criminal proceeding is "limited to denying the prosecution the fruits of its transgression."  *Id.* at 366.  A defendant may also move to dismiss an indictment based on lack of personal jurisdiction.  *See, e.g.*, *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006).

After a defendant has been ordered detained pending trial under the Bail Reform Act, the detention hearing "may be reopened" before trial if the Court "finds that information exists that was not known to the movant at the time of the hearing" that "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  The Act also provides that the Court may "permit the temporary release" of a detainee "in the custody of a United States marshal or another appropriate person" if the Court "determines such release to be necessary for preparation of the person's defense or for another compelling reason."  *Id.* § 3142(i).  The defendant bears the burden of showing that he would be released to an appropriate person and

4

that a compelling reason justifies the release. *See United States v. Riggins*, 456 F. Supp. 3d 138, 149 (D.D.C. 2020). The Court may also order release if the length of pretrial detention violates due process. *See United States v. Ali*, 534 F. App'x 1, 2 (D.C. Cir. 2013) (citing *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)).

## Analysis

### I. Dismissal of the Indictment

Lang advances two arguments in support of his motion to dismiss the indictment: first, that he has experienced due process violations that should be cured by dismissal; and second, that the Court lacks personal jurisdiction over him.

#### A. Lang's Allegations of Due Process Violations Do Not Require Dismissal of the Indictment

To the extent that Lang seeks dismissal of the indictment based on alleged due process violations at various pretrial detention facilities, the Court declines to grant that relief. Lang concedes that "there are no cases on point" supporting the proposition that "an indictment should be dismissed because of [a] Defendant's conditions of confinement" and that the alleged misconduct here was solely "of the jail, not the AUSA." Def.'s Reply to Dismissal Mot. at 5, ECF No. 78. Indeed, Court of Appeals cases addressing whether to dismiss an indictment on due process grounds based on government misconduct arise in the context of alleged abuses by law enforcement officers, prosecutors, or other individuals connected with the investigation or prosecution—not jail staff. *See, e.g.*, *United States v. Kelly*, 707 F.2d 1460, 1475–76 (D.C. Cir. 1983) (addressing "police overinvolvement in crime" (quotation and brackets omitted)). *But see United States v. Dominguez-Caicedo*, 40 F.4th 938, 949–50 (9th Cir. 2022) (suggesting that dismissal due to outrageous government conduct is not available based on conditions of pretrial

detention, but recognizing authority in that circuit "assumed without deciding" that the doctrine could apply to conditions of confinement).

Even if conditions of pretrial detention could justify dismissal of an indictment, a defendant would have to show a connection between the alleged violations and the Government's efforts to secure either an indictment or conviction for the instant charges. *See id.* (requiring "a nexus between the conduct and securing the indictment or conviction"); *United States v. Jayyousi*, 657 F.3d 1085, 1111–12 (11th Cir. 2021) (requiring that government misconduct "relate to the defendant's underlying or charged criminal acts"). Lang has not demonstrated such a connection here. At most, he contends that the conditions he has experienced will have a detrimental psychological effect, citing to a doctor's report that he never submitted in the record. *See* Def.'s Reply to Dismissal Mot. at 6, 14; *see also* Def.'s Release Mot. at 3 n.1, ECF No. 91 (citing doctor's report "filed as an exhibit to Lang's due process claims"); Gov't Opp'n to Release Mot. at 9 n.6, ECF No. 92 (confirming that Lang did not file this exhibit). He offers no authority to show that this is a type of nexus that can underlie dismissal of an indictment. *See Dominguez-Caicedo*, 40 F.4th at 949. And despite the unsupported suggestions of psychological harm, Lang's defense counsel writes that Lang "has proven himself to be useful in aiding in his defense, by pointing out various arguments that his legal team did not see at first." Def.'s Release Mot. at 2–3.

Because Lang has not shown that allegedly unlawful conditions of pretrial detention have prejudiced his case in a way that can only be cured by dismissal of the indictment, such relief is inappropriate. The Court will further address alleged due process violations bearing on Lang's ability to prepare his defense in connection with his request for temporary release. *See id.* at 6 (arguing that his detention "substantially prejudices his ability to communicate and assist in his defense, and such prejudice applies to a BRA [Bail Reform Act] analysis under subsection (i)").

### B.  The Court Has Personal Jurisdiction Over Lang

Lang's next argument for dismissal is, as the Government puts it, "[n]onsensical."  Gov't Opp'n to Dismissal Mot. at 14, ECF No. 71.  In short, Lang argues that his arrest—executed by federal agents acting pursuant to a concededly proper federal warrant—was unlawful because those agents did not follow interstate extradition processes.  The premise underlying this argument is that the federal government has jurisdiction to effect an arrest only where it has *exclusive* jurisdiction, and that it does not have exclusive jurisdiction in geographic locations under concurrent state and federal jurisdiction (including the state of New York).

This argument is wholly frivolous (at best).  Under Federal Rule of Criminal Procedure 4(c)(2), "[a] warrant may be executed, or a summons served, *within the jurisdiction of the United States* or anywhere else a federal statute authorizes an arrest."  Fed. R. Crim. P. 4(c)(2) (emphasis added).  That authority is not limited to the federal government's exclusive jurisdiction, but extends to its concurrent jurisdiction as well.  Federal authorities had power to effect Lang's arrest at his New York residence because the federal government has jurisdiction (even if not exclusive jurisdiction) over New York.  *See Ratification of the Constitution by the State of New York; July 26, 1788*, Avalon Project, Yale Law School Lillian Goldman Law Library, https://avalon.law.yale.edu/18th_century/ratny.asp (last visited Jan. 23, 2023); *see also* U.S. Const. art. VI, cl. 2.  Lang was first brought before a magistrate judge in the Southern District of New York following his arrest in accordance with Federal Rule of Criminal Procedure 5(c)(2), which addresses arrests "in a district other than where the offense was allegedly committed."  *See also* Fed. R. Crim. P. 5(c)(3)(D) (providing that "the magistrate judge must transfer the defendant to the district where the offense was allegedly committed" if the government produces the arrest warrant and the magistrate judge "finds that the defendant is the same person" named in the

warrant).  And more fundamentally, the Court has personal jurisdiction over Lang in this federal criminal case because Lang is "within the territory of the United States."  *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005).

Lang has identified no non-frivolous argument to suggest that this Court lacks jurisdiction over him.  His extradition theory is propped up by a litany of misquoted and clearly inapplicable extradition statutes and cases pulled from their context.  To name just one example of many, Lang cites *Pennoyer v. Neff*, 95 U.S. 714 (1877)—a case concerning personal jurisdiction in an ejectment action—to argue that the federal government has impermissibly attempted to assert "extraterritorial jurisdiction" here.[2]  Def.'s Mem. in Support of Dismissal Mot. at 24, ECF No. 69-1.  Defense counsel is "not free to say literally anything and everything imaginable . . . under the pretext of protecting his client's rights to a fair trial and fair representation."  *United States v. Cooper*, 872 F.2d 1, 3 (1st Cir. 1989); *see United States v. Kouri-Perez*, 187 F.3d 1, 12–13 (1st Cir. 1999).  With the hope that this reminder will deter similarly baseless arguments in the future, the Court declines to dismiss the indictment.

## II.   Pretrial Release

Lang refers to multiple mechanisms in his effort to secure pretrial release:  (1) reopening of the detention hearing under 18 U.S.C. § 3142(f); (2) temporary release under 18 U.S.C. § 3142(i); and (3) release required by the Fifth Amendment Due Process Clause due to the length of Lang's detention.

---

[2] Similar problems permeate Lang's reply brief, a substantial portion of which appears to have been copied and pasted from a webpage about "the special maritime and territorial jurisdiction of the United States."  *See* Def.'s Reply to Dismissal Mot. at 21–25 (quotation omitted).

### A.  The Court Will Not Reopen Lang's Detention Hearing at This Time

As an initial matter, it is not clear that Lang seeks his detention hearing to be reopened under 18 U.S.C. § 3142(f).  Although Lang states in his motion that he "moves this Court to reopen his detention hearing, pursuant to 18 U.S.C. § 3142(f)," he makes only passing references to that subsection in his supporting memorandum.  *See* Def.'s Release Mot. at 1, 10.  The motion goes on to state that "the limited issue here is whether Lang should be immediately released under the Bail Reform Act ("BRA")'s subsection (i)," *id.* at 5, referring to a different subsection, 18 U.S.C. § 3142(i), which authorizes temporary release in certain circumstances.  Nevertheless, construing his motion to seek reopening of the detention hearing (largely because the Government responded with its opposing view), the Court declines to grant that relief.

Lang's request for reopening fails because he has not made any mention of "information . . . that was not known to the movant at the time of the hearing" that bears on the issue of pretrial detention.  18 U.S.C. § 3142(f); *see also id.* § 3142(g) (listing factors relevant to the detention determination).  Although Lang highlights his lack of previous convictions for violent offenses and certain aspects of his conduct on January 6th that could be viewed as mitigating, *see* Def.'s Release Mot. at 3–5, "[n]ew and material information" does not consist of "a defendant's own evaluation of his character" but "truly changed circumstances, something unexpected, or a significant event."  *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (quotation omitted).  Lang has not identified any material change to the underlying reasons for his pretrial detention, so his detention hearing will not be reopened at this time.

### B.  Temporary Release Under 18 U.S.C. § 3142(i) Is Unwarranted

Turning to Lang's request for temporary release under 18 U.S.C. § 3142(i), he contends that it is necessary for the preparation of his defense.  Def.'s Release Mot. at 9.  The Court will

focus its analysis on the obstacles that Lang claims to have faced at the facility where he was detained when he filed his motion for release, as neither Party has advised the Court of a transfer since that filing.  Allegations of past difficulties in defense preparation, which may not persist at a new detention facility, have little bearing on his ability to prepare for a trial that remains over four months away.

According to Lang, defense counsel has had trouble communicating with Lang because counsel must become familiar with new sets of policies at each facility.  *Id.* at 6.  Lang claims, without any record support, that he has not been able to make legal calls or communicate with his attorney and that his calls have been "spied on and monitored."  *Id.* at 16.  Lang also objects to USP Lewisburg's policy permitting counsel to transmit discovery to Lang using a hard drive, based on claimed failed efforts to deliver hard drives at the D.C. Jail.  *Id.* at 8.  In addition, Lang complains that USP Lewisburg is located far from his defense counsel's office.  *Id.*

Even assuming that Lang's proposed custodians (his parents) would qualify as "appropriate" third-party custodians under 18 U.S.C. § 3142(i)—which the Government disputes—the Court concludes that temporary release is not "necessary" for defense preparation. To start, Lang has not shown the degree of immediacy that could make temporary release appropriate; again, over four months remain until the scheduled start of trial.  *Compare United States v. Leake*, No. 19-cr-194, 2020 WL 1905150, at *4 (D.D.C. Apr. 17, 2020) (stating that temporary release could be warranted, for instance, if a "merits hearing is scheduled for the following week" (quotation and brackets omitted)), *with United States v. Otunyo*, No. 18-251, 2020 WL 2065041, at *10 (D.D.C. Apr. 28, 2020) (concluding that temporary release was not necessary over five months in advance of trial).

Moreover, Lang has shown at most that the policies for discovery review and legal consultations are inconvenient, not that they are unworkable.  While Lang asserts that he has been unable to make legal calls at USP Lewisburg, the Government has submitted uncontroverted evidence that confidential legal calls and video visits remain available and that Lang's counsel has conducted numerous video visits in the days and weeks leading up to the filing of his motion for release.[3]  *See* Def.'s Release Mot. at 16; Gov't Ex. 1 (Jennifer Knepper Decl.) ¶¶ 7, 15–17, 21, ECF No. 92-1.  Lang's suggestion that jail staff is "potentially eavesdropping in on all of Lang's communications" is merely speculative.  Def.'s Release Mot. at 21.  And Lang's concerns about the use of hard drives to view discovery material and his ability to collect materials for use in his defense are also speculative and based only on his alleged experiences at different detention facilities.  *See* Def.'s Reply to Dismissal Mot. at 4, 12 (alleging that "every piece of legal paper he has maintained was recently taken away from him and thrown away as trash" in August 2022); Def.'s Release Mot. at 8 (claiming that three hard drives were lost at the D.C. Jail).  Lang has not shown that alternative options for the transmission of discovery material, including during in-person visits with counsel, are insufficient for him to meaningfully participate in his defense or for his counsel to be adequately prepared.

Apart from defense preparation, Lang argues that temporary release is necessary for "[o]ther compelling reasons":  the length of his pretrial detention to date, the expected length of pretrial detention in total, and the voluminous nature of discovery in this case.  Def's Release Mot.

---

[3] On the day before he filed his motion for release, Lang used his scheduled legal video visit to communicate with a reporter rather than an authorized attorney.  Gov't Ex. 1 (Jennifer Knepper Decl.) ¶ 17; Gov't Opp'n to Release Mot. at 18.  This choice to squander an opportunity to engage in a private conversation with counsel is not "conducive to an argument that the only way defense counsel could privately communicate with his client is if defendant were temporarily released." *United States v. Chansley*, 525 F. Supp. 3d 151, 172 (D.D.C. 2021).

at 9.  The latter reason is encompassed within his claim that temporary release is necessary for preparation of his defense.  As for the length of his pretrial detention, Lang offers no explanation of how release on this ground would be "temporary" within the meaning of 18 U.S.C. § 3142(i).  The Court will instead address this issue under the rubric of due process.

### C.  The Length of Lang's Detention Does Not Violate Due Process

Pretrial detention violates due process when it becomes punitive rather than regulatory. *Salerno*, 481 U.S. at 746–47.  There may come a point "at which detention in a particular case might become excessively prolonged, and therefore punitive," in violation of due process.  *Id.* at 747 n.4.  But the Due Process Clause "establishes no specific limit on the length of pretrial confinement."  *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989).  Courts assessing whether the length of pretrial detention violates due process generally look to the factors underlying the initial detention determination—including "the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits"—plus additional factors such as "the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity."  *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986); *see also, e.g.*, *United States v. Torres*, 995 F.3d 695, 708–10 (9th Cir. 2021).

As this Court explained on the record when evaluating Lang's previous motion for pretrial release in September 2021, the justification for his continued detention is strong.  Lang is charged with "very serious felonies," including multiple counts for assaulting police officers.  Sept. 20, 2021 Hr'g Tr. at 71.  The circumstances of Lang's offenses made them "even more troubling," given the Government's allegation that Lang encouraged violence while at the forefront of a mob

seeking to enter the Capitol building. *Id.* The evidence of Lang's offenses is also "very strong": video and photo evidence, including evidence from Lang's own social media accounts, shows Lang violently assaulting police officers as they protected the Capitol. *Id.* at 71, 73–74. This Court concluded that these factors showed a substantial threat of future violence, considering the extended duration of Lang's brazen involvement at the Capitol and his public boasting in the aftermath. *See id.* at 76–77. Although Lang had a minor criminal history, that factor was overwhelmed by evidence of Lang's interest in taking violent action after January 6th. *Id.* at 74–77. Those overt expressions of willingness to use violence in the future, along with the violent nature of Lang's offenses on January 6th, convinced this Court that Lang could not be released with adequate assurances of community safety (and that determination was affirmed by the Court of Appeals). *Id.* at 77–78; *see Lang*, 2022 WL 127437, at \*1.

Additional factors surrounding Lang's continued detention do not shift the balance. No doubt, the length of Lang's detention is cause for concern. He stands to have spent over 27 months detained by the time a verdict is rendered.[4] The length of pretrial detention is not dispositive, however, and "will rarely by itself offend due process." *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (quotation omitted). Here, the strength of the basis for detention and the fact that trial has not been unreasonably delayed by the Government weigh against finding a due process violation. Moreover, Lang has repeatedly agreed to extensions in the interest of justice under the Speedy Trial Act and recently elected to substantially delay the start of trial based on the Government's pending appeal from the dismissal of Count Nine. *See* Oct. 24, 2022 Status

---

[4] As discussed with the Parties at the October 24, 2022 status conference, the Court does not anticipate significant delay beyond the issuance of a panel opinion by the Court of Appeals and will not permit extended delay if the panel opinion remains outstanding. Oct. 24, 2022 Status Conference Tr. at 11–12, ECF No. 96. The trial itself is not expected to last more than two weeks. *Id.* at 17–18.

Conference Tr. at 8–12, ECF No. 96; Revised Scheduling Order, ECF No. 89.   Other circumstances, particularly the large volume of discovery involved in this case, have reasonably supported delay.   *See, e.g.*, June 7, 2022 Minute Order (noting Lang's consent to seven-month extension "for the facilitation of continued discovery and the various pre-trial motions").   Lang has thus made no persuasive showing that delay has occurred needlessly at the hands of the Government.   Altogether, Lang's detention is not excessively long in violation of due process.

## III.   Other Requested Orders

Lang's final requests are for an order permitting him to have access to his own laptop computer and an order prohibiting USMS from restricting his communications with people of his choosing.   The Court denied Lang's previous request for a laptop, submitted in his first motion for pretrial release, because the jail where Lang was detained had policies in place to permit the review of discovery, but Lang had not attempted to utilize those policies.   Sept. 20, 2021 Hr'g Tr. at 78–79.   The Court invited additional motions if it turned out that the policies were unworkable; however, Lang's renewed motion for laptop access still does not demonstrate that he has attempted to utilize existing policies.   *Id.* at 79.

The Court will also deny Lang's request for an order prohibiting USMS from restricting his communications with individuals other than his defense counsel.   This request is based on Lang's bare allegation that USMS communication policies interfere with his First Amendment right to free speech.   Def.'s Mem. in Support of Dismissal Mot. at 16–17.   The proper forum for this claim, which is unrelated to Lang's ability to communicate with counsel and prepare a defense, is a separate civil rights action.   *E.g.*, *Bell v. Wolfish*, 441 U.S. 520, 548–52 (1979) (civil action by pretrial detainees challenging restriction on reading material under the First Amendment); *see also*

*United States v. Folse*, Nos. CR 15-2485, CR 15-3883, 2016 WL 3996386, at \*15–19 (D.N.M. June 15, 2016).

### Conclusion

For these reasons, Lang's Motion for a Due Process Violation Finding and to Dismiss the Indictment for Want of Jurisdiction, ECF No. 69, and his Motion and Request for Immediate Temporary Release on an Expedited Basis, ECF No. 91, are **DENIED**.


DATE:  January 23, 2023

CARL J. NICHOLS
United States District Judge