United States District Court
For the District of Columbia

**UNITED STATES OF AMERICA,**

v.

**EDWARD JACOB LANG,**

*Defendant*.

**Case No. 21-CR-00053 (CJN)**

# RESPONSE TO GOVERNMENT'S SUPPLEMENT IN OPPOSITION OF DEFENDANT LANG'S REQUEST FOR <u>IMMEDIATE TEMPORARY RELEASE</u>

Defendant, Edward Jacob Lang ("Jake", "Lang", or "Mr. Lang"), by and through his counsel, respectfully submits this response to the Supplement to United States's Omnibus Response in Opposition to Defendant Lang's Motion to Renew and Reconsider his Request for Immediate Temporary Release[1] and Supplemental Bond Application[2]. (*See* ECF Docs. 127, 129, and 129-1).

This response highlights the following: (1) Lang's position on his property being lost or destroyed when being transported is evoluatory, where new information is consistently being obtained – and when such new information does come to light defense counsel notifies the government, and corrects and prior statements that need to be updated; (2) since Lang has been transferred back to Brooklyn MDC, a former

---

[1] *See* ECF Doc. 125.

[2] *See* ECF Doc. 126.

Capitol police officer posted on social media under a picture of Lang: "He fought me in the tunnel. I hope other inmates find out . . . They wanted to fight antifa". Such perceived threat[3] caused Lang to naturally react and make posts on social media.[4]

Overall, some statements in the instant bond application have been corrected by defense counsel when speaking with the government – when new information has come to light. This response also seeks to make some corrections and should not be interpreted as "false claims" that Lang has made to this Court.

I. **NEW INFORMATION SINCE FEBRUARY 19, 2024 – WHILE THE DEFENSE AWAITED THE GOVERNMENT'S OPPOSITION – LANG WAS TRANSFERRED AGAIN TO PA THEN TO BROOKLYN MDC.**
   **(Response to Government Supplement Argument I)**

Since the Defendant's last public submission new information has been obtained since February 19, 2024. During this time – this instant application has been pending – and Mr. Lang and I were patiently awaiting the government's opposition. (*See* ECF Doc. 127 filed on 2/21/2024).

The day before the government's opposition was filed, Mr. Lang was unexpectedly transferred from the DC jail. During such transfer, upon information and belief, a substantial amount of his legal documents where not transferred with Lang. After making numerous calls, and even reaching out to the Government and the

---

[3] *See* ECF Doc. 129 at p. 8 highlighting that Lang's posts "describing the post [of former Capitol Police Officer] as a 'veiled threat' ".

[4] *See* ECF Doc. 129 at p. 9 stating "[Lang's posts] contains captions identifying Lang as himself and the officers as 'Tyrants' ".

Marshal's about Lang's whereabout, I was left with limited information. In light of this I drafted a supplemental letter that was intended to be sent to the government and then this Court. Before such was sent – new information was obtained, where I revised my letter, which was sent to the government. (*See* ECF Doc. 129 at p. 4, FN 1.) After counsel discussed this draft, I determined based on suggestions that a letter was not the best approach under this District's Court rules. The government and I then sought to obtain more information and discussed the possibility of a joint supplemental, or separate supplementals. I did later learn the hard drives are still in the DC Jails possession, so I never made any further representations that the hard drives were destroyed.

Since March 2024, I have spoken with government counsel about these hard drives being at the DC Jail, and as of today, the Litigation Support Unit at the DC Jail is still willing to allow me to pick up such hard drives. (*See* ECF Doc. 129-1 at p. 1). I am attempting to correct the record right now that these hard drives are still available. I did not have such information until after February 29, 2024, and even then, the details were unclear. Mr. Lang – on the record – before this Court can also correct his representations regarding these two hard drives.

Nonetheless, the facts remain that the Court ordered laptop will not transfer with Lang to another facility because based on my understanding that laptop is a possession of the DC jail. So, the ability to review discovery on Lang's laptop has been completely compromised with his most recent transfer. Also, all hard copy papers regarding Lang's

defense and defense strategies remain unknown to me at this time. Lang makes handwritten notes about specific seconds on videos, in addition to obtaining hard copies of the motion practice that has ensured in this case, before the District of Columbia Court of Appeals, and before the US Supreme Court – regarding his 1512 charges. All of the hard-physical copies of his legal work is not in his possession to my understanding at such time. So, there is much more to this equation besides two hard drives (which contain a substantial amount of discovery and took countless hours to ensemble). Then the next problem that surfaces is - if Lang obtains these hard drives – how can he review such discovery while at Brooklyn MDC.

Further, it must be noted here that various facts did get lost in translation because between February 19th and 29th of 2024, Mr. Lang was able to communicate with anyone by telephone or in-person, including his family or myself. (*See Infra*, Lang's Father was denied a visit at Lewisburg).

In sum, I hate to sound like a broken record, but Mr. Lang being transferred at this particular time leads to a serious disadvantage in our defense strategy. Again, for more than the fifth time since this case was commenced – the defense must start at zero with Mr. Lang. As defense counsel I have to figure out a way to travel to DC and to NYC at times I am not scheduled to do so – if I want to obtain the hard drives I spent hours putting together, to only get them back in my possession and to figure out the next steps in getting such back to Lang.

A. **Background and Brief History**

As the government's opposition highlights, as of February 6, 2024, there was new information regarding Mr. Lang's whereabouts and treatments, that pertain to the instant application.

We are grateful that this application is being heard, especially based on some of the statements in the government's opposition. For example, the government's opposition stated that on or about "September 8, 2023, this Court held a hearing where Lang argued for release from detention . . . , [where] [t]his Court denied his application for release but requested DCJ to provide Lang with greater access to a laptop computer for discovery review." (*See* ECF Doc. 127 at p. 2).

Further the government's opposition, actually states that "during the September 8 hearing, this Court also found that it was 'crystal clear' that the United States wanted to preserve an October, 2023 trial date the Court had previously scheduled . . . [but] despite his continued detention, and over the government's objection, this Court set a new trial date for September 9, 2024."

The government's opposition further highlights that:

> [i]n October, 2023, Lang was moved to restrictive housing within the DC Jail for his own safety. The move did not change Lang's access to the laptop dedicated to his use or to discovery materials. On February 6, 2024, Lang was moved to even more restrictive housing for his own safety. On February 9, 2024, Deputy General Counsel for the D.C. Department of Corrections confirmed that Lang "has all of his discovery, laptop and flash drive." See Exhibit 1, attached to this response. As of February 14, 2024, while at DCJ,

>Lang was returned to the original level of restrictive housing in effect in October, 2023.

Stated otherwise, Mr. Lang was in DC Jail South 1, also known as the "hole" of Central Detention Facility. He was then transferred to the Central Treatment Facility. These are separate buildings, comprised of completely different types of inmates. In solitary confinement, Lang was subject to being hand cuffed to take shower or come out for recreation every other day, only two (2) hours. He was not allowed in person visits, no bowls or utensils to eat from. He was not afforded simple hygiene products such as bars of soap; he had limited commissary, and what's more: he was placed in an environment where other DC Jail inmates despised J6 inmates.

**B.   Additional New Information**

February 19, 2024 was the last time Mr. Lang spoke to me before he was transferred. During such conversation, Mr. Lang altered me to the fact that Officers asked Mr. Lang to have his temperature taken. In the past, such means that he is being transferred to another jail and that's why his temperature needed to be taken.

The very next morning, on February 20, 2024 at 5:00 am, Mr. Lang was moved out of jail and it was not until that Thursday that I was able to find that he was in Lewisburg. (*See* Inmate Search attached as **Exhibit A**). Since being in Lewisburg, Mr. Lang lost all of his legal documents, as his belongings were not transferred with him – and he was not able to make a single phone call. Out of concern, Mr. Lang's father made the trip to Lewisburg, on Sunday February 25, 2024. The rules for "visiting time"

at Lewisburg state that visiting hours for a Sunday are between 8:00 am to 3:00pm. (*See* Visiting Hour Rules attached as **Exhibit B**). Nonetheless, Mr. Lang's father was denied access to visiting his son and to make sure that Mr. Lang was mentally and physically in good shape.

Shortly thereafter, Mr. Lang was then transferred to Brooklyn, New York, aka MDC Brooklyn. On Friday, February 29, 2024, new information came to my attention, where I then reached out to the government in an effort to determine if any of Mr. Lang's discovery or legal documents are still at the DC jail. (*See* Inmate Search attached as **Exhibit C**).

C.   **Damage Done with Each Transfer**

Every time Mr. Lang has been moved, correctional staff takes all of Mr. Lang's belongings including all of his legal documents and equipment, where all of such belongings have been destroyed or misplaced – in the past. Again, I am attempting to clear the record in explaining that I learned after February 29, 2024, two hard drives for Lang are still at the DC jail and that the Legal Support Unit is willing to with me in obtaining these two hard drives. However, the vital essentials to preparing a defense no longer are in Mr. Lang's possession: (1) His court ordered laptop and charger; and (2) the hard copies of his legal paperwork.

On February 25, 2024, Lang's father drove to Lewisburg to visit his son and to make sure that there are no medical issues that need to be immediately addressed. That

morning, the facility refused to allow Lang's father access to visit his son, regardless of their own visiting rules. (*See* Visiting Hour Rules attached as **Exhibit B**).

Staff then looked further into their system and confirmed that Mr. Lang was in fact at the facility at the time, and was actually on "A block", which was conveyed to be for prisoners "in transit". Staff justified their denial of such visit on the basis that those inmates in "A block" have no visitation rights and are locked in their cells all weekend. Lang's father told staff their prison rules do not make a distinction between such "A block" inmates, and even showed staff their own rules. (*See* Visiting Hour Rules attached as **Exhibit B**).

Lang's father then explained to staff that "My son calls either his attorney or fiancé or me every day". Lang's father asked why Jake cannot use the phone and such questions could not be answered.

Shortly thereafter, Mr. Lang was then moved to Brooklyn, New York, where he remains without any of his belongings or legal documents.

Simply stated, the damage has been done.

How much more damage can be done in preparing for this trial. Strict conditions can be set to ensure compliance and an adequate defense be put in place.

## II. A Former Capitol Police Officer Posted a Threat Against Lang and He Reacted with Poetic Posts, Not to be Taken Literally. (Response to Government Supplement Argument I)

On March 7, 2024, I wrote to Supervisory Deputy Brown about my concerns for Mr. Lang's safety at the MDC jail. I acknowledged how I am familiar with how facilities believe Lang has been a difficult pre-trial detainee. However, something came to my attention on March 7 that raises concerns. These concerns, upon further thought, raise safety concerns that need to be brought to the government and the Marshal's attention. And now need to be raised before this Court.

### A. Brief History

First, I believe there are safety concerns regarding Mr. Lang at the DC Jail. Those safety concerns are for his own safety, and not the safety of others because of Lang's actions towards anyone. Second, I believe that Lang is not welcome at any other jail that is local to the DC Jail. Third, Mr. Lang was recently (on Feb. 20th) transferred from the DC jail to Lewisburg, PA – which acted as a transfer facility. Then within a week or so Lang was transferred to MDC Brooklyn, where he is currently remains.

With that being said is where my concerns generate. On March 7th, I received a picture of a tweet (or X) that was posted by a former US Capitol Police Officer. In such tweet, this former officer posted a known picture of Mr. Lang and his comments and complaints he has about: (1) being transferred to MDC Brooklyn; and (2) that he was separated from his former cellmate- another guy involved in J6.

Simply put, on March 7th Lang's location was now well known.

What is concerning is that the message above this picture of Lang complaining about MDC Brooklyn states the following: "He fought me in the tunnel. I hope other inmates find out They wanted to fight antifa".

This tweet was from a "Staff Sergeant Gonnell, Aquilino . . . @SergeantAqGo". I interpret this message one way, and am sure others can interpret such another way. But, I know from practicing in New York City is this: MDC jail is not composed of inmates who fancy J6, or those charged with the events that happened that day. I believe this is a serious concern for other inmates to cause substantial harm to Mr. Lang.

Further, as of March 7th there has been constant movement on this post, which has received upwards of 22,000 views; 1,900 "hearts" or likes; and 453 reshares or "retweets". This "Sergeant" has 139,300 followers and with the reposts - this message can reach an astronomical amount of people.

**B.  Lang Felt the Need to React in a Poetic Way on Social Media – Out of Fear**

Lang was then forced to react and try to protect himself on social media. Any interpretation of Lang's reaction must also take into consideration that Lang quoted Thomas Jefferson, and is poetic and not to be literally taken serious as a threat of even condoning physical violence.

A former Capitol Police Officer posted language that can be viewed by one in jail as a threat for other inmates at MDC Brooklyn jail to attack him. So Lang chose to defend himself, its that simple.

### III. CONCLUSION

For the aforementioned reasons, this Court should order Lang's immediate release to the custody of his father, Ned Lang, or his mother. For all of these reasons, and any that may become apparent at a hearing on this matter, Mr. Lang respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society, in light of all the recent additional evidence that submitted herein. Lang stands before this Court with the ability to post a million dollar bond package, for what its worth. He has two signatories, the two closest people to him – his mother and father. His father will sign for $300,000.00, his mother will sign for another $400,000.00, and she will put up her property that is owned free and clear and worth approximately $300,000.00. In total, such package is a Million Dollars, and a million reasons to ensure that Lang returns to court on every scheduled appearance.

𝖂𝖍𝖊𝖗𝖊𝖋𝖔𝖗𝖊, it is respectfully submitted that this Honorable Court release Lang on high intensity supervision and conditions the Court deems necessary.

Dated:  March 27, 2024                    Respectfully submitted,
                                            */s/ Steven Alan Metcalf II*
                                          _____
                                          STEVEN A. METCALF II, ESQ.
                                          *Attorneys for Mr. Lang*
                                          **Metcalf & Metcalf, P.C.**
                                          99 Park Avenue, Suite 810
                                          New York, NY 10016
                                          *Phone* 646.253.0514

*Fax* 646.219.2012
[metcalflawnyc@gmail.com](mailto:metcalflawnyc@gmail.com)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

/s/
_____
STEVEN A. METCALF II
*Attorney for Edward Jacob Lang*

Dated: 3/27/2024