United States District Court
For the District of Columbia

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        v.                          )
                                    )
EDWARD JACOB LANG,                  )
                                    )
        *Defendant.*                )
_____)

### EDWARD LANG'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

NOW COMES, Defendant Edward Jacob Lang, by and through undersigned counsel, files this Supplement in support of his Motion for Change of Venue, which also seeks to overturn, modify and supplement his previous motion to transfer venue. Overall, Lang simply requests he be tried by an impartial jury as guaranteed by the Fifth and Sixth Amendments to the United States Constitution.

### I.   BACKGROUND

In support of this application, Defendant states that he commissioned Triton Polling and Research to conduct a study of DC residents regarding potential bias. The poll respondents not only expressed bias against January 6 defendants – but also bias against *anyone* (even those who were not charged) that was present at the Capitol on January 6, 2021.

Simply put, the results of this study solidify Lang's arguments that he cannot receive a fair trial in the District of Columbia, thus requiring a mandatory change of venue for his trial.

The issue of potential bias and its impact on a fair trial is a complex legal concern. Bias can arise if a significant portion of the community holds strong, predetermined views that might impact their ability to approach the case with impartiality. When there is extensive media coverage, public discourse, and official reports characterizing events in specific ways, it can raise serious questions about the impartiality of a jury pool. Setting aside preconceived notions or biases can be challenging, especially when individuals hold strong opinions on a particular subject.

While *voir dire* and jury screening processes aim to identify potential biases to select jurors who can be impartial, human psychology acknowledges that individuals may still be influenced by their existing beliefs. Based on the results of this study, it should be clear that no amount of *voir dire* can overcome the significant bias that DC residents hold against January 6 defendants.

## II.   METHODOLOGY

Triton Polling and Research ("Triton") was founded in 2009 and is headquartered in Bend, Oregon. Their "about us" page describes themselves as a "full-service survey, polling and market research firm" whose "company's client list

includes organizations in countless industries throughout the nation, from Fortune 500 companies and statewide political campaigns to non-profit organizations to law firms large and small." *See* Tritonpolling.com (last visited July 1, 2024). Triton's live phone surveys are performed by agents located at their firm's headquarters outside of Portland, OR.

Triton was commissioned to conduct a survey of 422 (four hundred and twenty-two) Washington, DC residents about their knowledge surrounding the events of January 6, 2021. In the survey, the residents polled explained how they had developed opinions regarding the guilt of those who were present (whether charged or not). Of the 422 participants polled, 288 (68.3%) conducted a live telephone interview, with the remaining 134 (31.7%) participating via text. 100% of the participants identified themselves as a resident of DC, with 416 (98.5%) identifying as registered to vote. The remaining 1.5% (6 participants) have a DC driver's license or official identification card.

The margin of error for this study at the 95% confidence level is +/- 4.8%. This margin indicates the range within which we can reasonably expect the true population's parameters to fall. In this case, it suggests that if the survey were conducted multiple times with different residents of the District of Columbia, the results would likely vary within 4.8% of those reported in this study (90.2% to 99.8% confidence that the poll is representative of the DC population).

Based on this margin of error, one could resolve each tested parameter in favor of non-biasness and the results still heavily indicate bias against January 6 defendants.

### III. QUESTIONS PERTAINING TO FAVORABILITY AMONG PARTICIPANTS REGARDING PRESIDENT TRUMP AS COMPARED TO BIDEN

After gathering demographic information discussed above, Triton asked participants to "please tell me if you have favorable or unfavorable views of the following people in national politics." When prompted about President Joe Biden, 150 residents (35.6%) had a "very favorable impression", and 153 residents (36.2%) had a "somewhat favorable impression" compared with 25 residents (5.8%) having a "very favorable impression" and 16 residents (3.7%) having a "somewhat favorable impression" of President Donald Trump. (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Questions 4-5).

Combining the totals, 303 participants (71.8%) of this poll had either a "very favorable" or "somewhat favorable" impression of President Biden, compared with 31 (9.5%) participants having the same towards former President Trump. It should further be noted that a large majority of participants had a "very unfavorable impression" of Trump (332 respondents / 78.6%), compared with 50 participants (12%) having the same of President Biden. (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Questions 4-5).

Utilizing the above-described margin of error (+/- 4.8%), this poll shows that between 67% to 76.6% of the DC population has a favorable or somewhat favorable impression of President Biden, compared with between 4.7% to 14.3% of respondents favoring Trump.

This poll question indicates that a supermajority of the potential jury pool in DC possesses preconceived favorable impressions for Biden, with a corresponding supermajority having a very unfavorable impression of President Trump – raising a significant inference of bias.

### IV. QUESTIONS PERTAINING TO KNOWLEDGE AND THE UNIVERSAL AWARENESS OF THE EVENTS ON JANUARY 6, 2021.

The poll then questions participants about their knowledge of January 6th. First, the participants were asked "how much have you seen, read, or heard about the events at the Capitol on January 6th, 2021?" (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 6). In response, just under 90% of participants stated they "heard or seen a lot" (378 respondents, 89.7%).

While it is acknowledged by the Defendant that many Americans have also heard "a lot" of the extensive news coverage surrounding January 6th, the same cannot be said of 56.3% of participants who responded "yes" to the question of whether they "were [] worried about your safety or the safety of someone you know

because of the events of January 6, 2021". (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 9).

Overall, the key findings of the polling are that there is a universal awareness of the events and coverage of January 6th, and that DC residents either feared for their safety, or the safety of others based on that days events.  Key Finding # 1 of the survey is summed up as follows:

> A staggering 97.5% of those surveyed say they have "seen, read, or heard" a lot or just some about the events at the Capitol on January 6, 2021. What's even more telling is that 89.7% answered "a lot."
>
> We delved further into awareness and knowledge and asked about how much of the January 6 Select Committee hearings they had watched. Again, the numbers are overwhelming. 78.8% say they watched "a lot" or "just some" with a plurality (45.2%) saying "a lot."
>
> It's clear that the Washington, DC Jury Pool has been inundated with information about January 6 and has had a lot of time to form their own opinions on the events, defendants, and more.

(*See* Triton Polling & Research Change of Venue Survey attached as **Exhibit B** at p. 1).

Key Finding # 2 of the survey is summed up that "[b]eyond knowledge and awareness, we asked respondents if they were "worried about your safety or the safety of someone you know because of the events of January 6, 2021". Well over half, 56.3% of those surveyed said they feared for their safety or the safety of

someone they know. Fear is one of our most base instincts and is nearly impossible to set aside once you're confronted by it." (*See* Triton Polling & Research Change of Venue Survey attached as **Exhibit B** at p. 1).

Common sense, how these events have played out over the last three years, and this survey, make it clear that "[n]o other jury pool in the country will have felt this type of fear for their safety as those in the District of Columbia." (*See* Triton Polling & Research Change of Venue Survey attached as **Exhibit B** at p. 2).

V. **CHARACTERIZATIONS OF JANUARY 6, 2021 BY THE SELECT COMMITTEE**

The poll also asked participants "how much of January 6 Select Committee hearings or clips of those hearings have you watched?" 45.2% stated they watched "a lot" (191 participants), and a further 33.6% stated "just some" (142 participants). (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 6).

The January 6 House Select Committee hearings characterized January 6 as an "attack on the United States Capitol", in which "Donald Trump led an effort to up end American democracy that directly resulted in the violence of January 6th". (*See* Transcript of 9th January 6 committee at p. 68). When addressing partisanship in his opening statement of the 9th select committee hearing, Congressman Thompson stated that individuals should "let the *facts* speak for themselves … the

evidence has *proven* that there were a multipart plan led by former President Donald Trump to overturn the 2020 election." (*Id*. at p. 2). He further states later in his opening that "the *facts* and testimony are clear, consistent, and undisputed." (*Id*. at p. 3). When searching just this one transcript, the word "fact" is found 27 times as if the findings of the Select Committee are indeed undisputed findings of fact. (*Id.*).

In the Select Committee's final report, the same assertions are made regarding their findings as "fact" (which is mentioned 308 times). A search of the Select Committee's final report for "insurrection" yields 78 results including a statement in a footnote that "The Select Committee Chart Compiling Defendant Statements is not meant to be comprehensive or polished; it is a small sampling of the tremendous work the Department of Justice has done tracking down and prosecuting criminal activity during the attempted insurrection." (*See* Select Committee Final Report at p. 161)(Emphasis added). Indeed, the final report unequivocally characterizes the January 6 incident as an "insurrection" and described – as a matter of fact – that "a mob of angry insurrectionists attempted to violently upend a Presidential election". (*Id.* at p. 300).

The Select Committee's characterizations of January 6th as an "insurrection" comprised of a "mob of angry insurrectionists" – of which 79% of participants of the poll admitted to watching at least "some of" – being presented as findings of "fact", cannot be ignored as significant sources of extreme bias and partisanship

that taints the DC jury pool and prevents January 6th defendants from obtaining a fair trial.

## VI. CHARACTERIZATIONS OF JANUARY 6 INCIDENT AND ITS ALLEGED PARTICIPANTS

To further determine the level in which media coverage and the Select Committee's alleged findings of "fact" potentially tainted the DC jury pool, participants were asked various questions regarding how they characterize January 6 and individuals involved in the incident.

When asked to provide one word to "best describe[] the individuals who participated in the events of January 6, 2021", 116 (43.4%) answered "insurrectionists", 63 (14.9%) stated "domestic terrorists", 55 (13%) replied "criminals", 49 (11.6%) replied "traitors", and 42 (9.9%) described them as "rioters". (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 11). Combining the above responses, a whopping 92.8% characterize the individuals involved with January 6 in a negative manner, compared with 4.1% (17 participants) who view them in either a neutral or positive manner. A vast majority believe that Donald Trump is to blame for January 6th (89.4%, 377 participants), and almost 70% believe that Donald Trump supporters are racist. (69.4% / 239 participants). (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 12). Additionally,

85.8% agree with the statement that "January 6th was an insurrection", with only 2% stating they weren't sure or didn't know. 80% further agree that "January 6th was an act of domestic terrorism." (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 13).

The above-described characterizations of participants further indicate the inability for Defendant Lang (and every other January 6 defendant) to enjoy a fair, free, and unbiased trial in the District of Columbia based on facts found at trial (as opposed to those based on the alleged findings of the Select Committee or as reported on television reporting).

It is inconceivable to believe that a jury comprised of 92.8% of individuals who believe that January 6 was an "insurrection" can arrive at an unbiased decision at trial after hearing testimony and being presented evidence associated with any Defendants associated with January 6.

VII. **QUESTIONS REGARDING PREDETERMINED ASSUMPTIONS OF GUILT OF JANUARY 6 "PARTICIPANTS"**

The next series of questions were pertaining to the participants' preconceived notions regarding guilt and punishment for those involved on January 6th. An astounding 48% of participants believed that a fair punishment "for anyone who participated in any of the events of January 6" was life imprisonment or death, with 68.8% of respondents agreeing that "anyone who participated in the events at the

Capitol on January 6 should serve prison time." (*See* Top Line Results: Survey of Washington, DC Jury Eligible Residents attached as **Exhibit A** at Question 16). To be clear – neither of these questions were specific to those charged, rather, they were *generally speaking* about those who "participated" in January 6. This should create a clear inference that the DC jury pool has already unfairly predetermined that *anyone associated* with January 6 deserves severe punishment, further buttressing the Defendant's argument that he cannot have a fair trial in the District of Columbia.

## VIII. SUMMARY

The foregoing data demonstrates the participants' favorability ratings towards President Biden or the democratic nominate and former President Trump, highlighting a *strong bias* in favor of Democrats among DC residents. Questions about knowledge of the events on January 6th reveal a *high level of awareness* among participants, and Triton's polling suggests that media coverage and statements from the January 6 Select Committee have *contributed to bias*.

The majority of those polled view anyone who allegedly participated in January 6th negatively, with terms like "insurrectionists", "domestic terrorists," and "traitors" being common. The characterization of January 6 as an "insurrection" and "act of domestic terrorism" by the Select Committee, which was widely viewed by the potential DC jury pool and repeated throughout the news cycles, cannot be remedied by even the most carefully executed *voir dire*.

Questions regarding predetermined assumptions of guilt show that a significant portion of participants believes severe punishment, including life imprisonment or death, is appropriate for anyone involved in the events of January 6. These predetermined assumptions further support the Defendant's claim that a fair trial cannot be conducted in the District of Columbia.

In summary, the Defendant argues that the study's results demonstrate pervasive bias among DC residents, influenced by media coverage and statements from the January 6 Select Committee, making it impossible for him to receive a fair trial in the District of Columbia.

It is for the foregoing reasons that this Court must order a change of venue for the Defendant to receive a fair trial by an unbiased jury of his peers.

Dated:  August 12, 2024               Respectfully Submitted,

                                      */s/ Steven Alan Metcalf II*
                                      _____
                                      STEVEN A. METCALF II, ESQ.
                                      Metcalf & Metcalf, P.C.
                                      99 Park Avenue, Suite 810
                                      New York, NY 10016
                                      (*Office*) 646.253.0514
                                      (*Fax*) 646.219.2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

/s/
_____
STEVEN A. METCALF II
*Attorney for Edward Jacob Lang*

Dated: August 15, 2024