UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>   v.<br><br>EDWARD JACOB LANG,<br><br>   Defendant. | Case No. 1:21-cr-00053-CJN |

UNITED STATES' NOTICE REGARDING
NEED FOR CONFLICT-FREE COUNSEL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this notice to alert the Court of potential conflicts of interest regarding witnesses who appear on defendant Lang's witness list. *See* ECF 158.

On October 19, 2024, defendant Lang filed a witness list, ECF 153, for his upcoming trial now set for December 2, 2024. Several of the listed witnesses have been charged in other cases arising from the events at the U.S. Capitol on January 6, 2024 and therefore have a privilege against self-incrimination. Additional defense witnesses were present within the Capitol's restricted area on that date and therefore may also have a privilege against self-incrimination.

Lang has created at least one online crowd-funding site and has made public statements that the money he raises is used to pay for the defense of other January 6 defendants. The image below is one such example that has appeared in a post from Lang's account and the account of at least one other January 6 defendant:



# J6LEGAL.ORG
# FULL TRANSPARENCY LIST
**MANAGED BY JAKE LANG**

**1. LAWYER : MARIA RODRIGUEZ**
Amount Paid : $55,400
Jan 6ers : Chris Quaglin, Gabriel Garcia, James Brett

**2. LAWYER : BLAKE WEINER**
Amount Paid : $12,000
Jan 6er : Robert Gieswein

**3. LAWYER : LAW OFFFICES OF VISCO & SELYEM APC**
Amount Paid : $5,000
Jan 6er : Alfredo Luna

**4. LAWYER : BOYLE AND JASARI**
Amount Paid : $15,000
Jan 6er : Shane Jenkins

**5. LAWYER : CAROLYN STEWART**
Amount Paid : $13,530
Jan 6er : Richard Barnett & Jonathan Copeland

**6. LAWYER : STEVEN METCALF**
Amount Paid : $10,000
Jan 6er : Dominic Pezzola

**7. LAWYER: FARHEENA SIDDIQUI**
Amount Paid : $10,000
Jan 6er : Barry Ramey

**8. LAWYER: JOE ALLEN**
Amount Paid : $5,000
Jan 6er : Sean Mchugh

**9. TRIAL TRAVEL**
Amount Paid : $7,000
Jan 6ers : Thomas Smith & Donnie Wren

**10. TRIAL TRAVEL**
Amount Paid : $3,000
Jan 6er : Gina Bisignano

**11. EXPERT VIDEO RESEARCHER**
David Sumrall
Amount Paid : $7,500

**12. LAWYER : MICHAEL CRONKIGHT**
Amount Paid : $3,000 for Medical Expert
Jan 6er: Matthew Krol

**13. TRIAL**
Amount Paid : $12,000
Jan 6er : Alex Harkryder

**14. SMALLER MISCELLANEOUS LEGAL PAYMENTS (TRAVEL & LODGING, TRIAL EXPENSES)**
Amount Paid : $20,000

**15. TRIAL TRAVEL**
Amount Paid : $1,507
Jan 6er : Leslie Gray

**16. LAWYERS : BRAD GEYER & CAROLYN STEWART**
Amount Paid : $21,000 for Trial
Jan 6er : Eric Christie

**17. LAYWER : DAVID BENOWITZ AND AMY COLLINS**
Amount Paid : $57,000
Jan 6er : David Dempsey & Daniel Ball

**18. LAYWER : STEVEN METCALF**
Amount Paid : $ 25,000
Jan 6er: Zachary Alam

**19. LAWYERS : EDEN QUAINTON & JONATHAN GROSS**
Amount Paid : $32,500
Jan 6ers: Mark Sahady , Trevor Brown , Ryan Samsel , Annie Vo , & James Brett

**20. TRITON POLLING FOR CHANGE OF VENUE POLLING DATA**
Amount Paid : $ 15,000

**21. CONGRESS TESTIMONY**
Cara Castronuova
Amount Paid : $2,000

**22. J6TRUTH VIDEO INVESTIGATION TEAM**
Amount Paid :$10,000

**23. TRIAL TRAVEL / CIVIL FILING FEE**
Jan 6er : Eric Clark
Amount Paid :$4,000

**24. LAWYER : AMY COLLINS**
Amount Paid : $47,000
Jan 6ers:Dominic Box , James McGrew , & Audrey Rumsey

**25. LAWYER : GEORGE PALLAS**
Amount Paid : $65,000
Jan 6ers : Philip Anderson & Aj Fischer

**26. LAWYER : ANTHONY SABITINI**
Amount Paid : $80,000
Jan 6er : Isabella Maria Deluca , Jonathan Copeland , Jesse Rumson , Westbury Famil Defendants ),& Robert Degregoris

**27. CPAC J6 LEGAL BOOTH & TRAVEL**
Amount Paid : $15,000

**TOTAL AMOUNT SPENT: $ 553,437**

*Figure 1*

Lang has also given interviews where he describes his fund-raising efforts and he makes reference to "managing" attorneys as part of his daily activities while detained pending trial. *See* ECF 127 at 9. The image above includes the name of a January 6 defendant who appears as the ninth witness listed on Lang's witness list.[1] Witness 9 has been charged for his conduct at the Capitol and the district court judge presiding over his case has scheduled a trial. Accordingly, the Fifth Amendment to the U.S. Constitution provides Witness 9 with a privilege against self-incrimination. Lang claims the funds he that he has raised and that he manages have paid for the attorney representing Witness 9, who will presumably advise Witness 9 regarding his decision whether or not to waive his Fifth Amendment privilege and testify for Lang.

Witness 14 has been charged for his conduct at the Capitol and the district court judge presiding over his case conducted a trial; however, it does not appear that the presiding judge has rendered a verdict in that trial. Accordingly, Witness 14 retains a privilege against self-incrimination. *See Mitchell v. United States*, 526 U.S. 314, 325-26 (1999) (principal that where there can be no further incrimination there can be no assertion of the privilege applies to cases where the sentence has been fixed and the judgment has become final). Witness 14 is represented in his criminal case by Anthony Sabatini who has also filed a notice of appearance on behalf of Lang in this case. Thus, attorney Sabatini, who represents Lang, may also have a role advising Witness 14 regarding his decision whether or not to waive his Fifth Amendment privilege and

---

[1] The CM/ECF system for this Court automatically dock7ets witness lists as filings that are not publicly accessible or accessible to the parties. As a result, counsel for Lang expressed concern about publicly naming witnesses in this filing. In light of docketing practices and opposing counsel's concern, the United States has agreed for this filing to refer to individual witnesses by their respective number on the Lang's witness list.

3

testify.[2] According to the information in *Figure 1*, attorney Sabatini has also been paid for his representation of numerous January 6 defendants in cases other than Witness 14's from the fund Lang claims to manage.

Additional witnesses on Lang's list have pending cases or may otherwise have grounds to invoke the privilege of self-incrimination. The United States cannot say which if any additional defense attorneys may or may not have received payment from the funds Lang claims to manage since the information in *Figure 1* was posted.

Counsel were able to confer on November 15, 2024, and defense counsel advised that he believes Witnesses 4-10 may have a privilege against self-incrimination, regardless of whether their respective counsel may have a conflict of interest. The United States submits that in addition to Witnesses 4-10, the following listed defense witnesses also retain that privilege: Witness 11 (pending appeal from January 6 convictions), Witness 13 (pending January 6 charges), and Witness 16 (pending sentencing after trial on January 6 charges). Witnesses 1 and 5 were present within the Capitol's restricted area on January 6, 2021.[3] The United States is not yet able to assess whether Witness 4 has or will have a privilege to invoke.

When a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention. *See United States v. Tatum*, 943 F.2d 370, 379–80 (4th Cir. 1991). When the trial court knows or reasonably should know of the possibility of a conflict of interest, it has a threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict. *United States v. Kliti*, 156 F.3d 150,152 (2d Cir. 1998). In

---

[2] A second lawyer filed a notice of appearance for Witness 14 that states the appearance is pro bono. That second lawyer appears among the attorneys identified in *Figure 1* as an attorney paid for a representation of someone other than Witness 14 from the fund Lang claims to manage.
[3] Witnesses 1 and 5 have testified in other proceedings to this effect.

fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations. *United States v. Levy,* 25 F.3d 146, 153 (2d Cir. 1944).

The payment of attorney's fees has the potential to create a conflict of interest. *Wood v. Georgia*, 450 U.S. 261, 268-69 (1981) ("Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise."); *United States v. Joyce*, 330 F. Supp. 2d 527 (E.D. Pa. 2004). "[W]here one defendant is paying for both lawyers . . . it would place the lawyer representing the non-paying defendant in a situation of having divided loyalties." *Joyce*, 330 F. Supp. 2d at 531, *citing Wheat v. United States*, 486 U.S. 153, 160 (1988); *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 248 n.6 (2d Cir. 1986) ("Accepting payment of clients' fees from a third party may subject an attorney to undesirable outside influence, particularly where the attorney is representing clients in criminal matters . . .")

The D.C. Bar's Rules of Professional Conduct also advise caution in this area. Rule 1.7 contains the general rule regarding conflicts of interest. Rule 1.7(b)(4) places particular requirements on a representation where "[t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests." In such a situation, the attorney may represent a client only if "(1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation." Rule 1.7(c)(1). In addition, the attorney must also "reasonably believe" that he or she will be able to provide "competent and diligent representation." Rule 1.7(c)(2).

Here, the United States wants to make the Court aware of information indicating that Lang is claiming to pay for counsel representing a witness with an ongoing privilege against self-incrimination who is likely to advise the witness whether to waive that privilege and testify as a defense witness for Lang during his trial. The United States submits that it would be appropriate for the Court to conduct an inquiry involving counsel for the witness and perhaps counsel for Lang to determine if a conflict exists and whether conflict-free counsel should be available to the witness to provide advice regarding any waiver.

A defense attorney may have a conflict when he has "divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness." *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991); *United States v. Weaver*, 265 F.3d 1074, 1075–77 (D.C. Cir. 2001) (holding that counsel's representation of a client and a potential witness against the client created a conflict of interest). Here, Witness 14 is listed as a witness for the defense; presumably, Witness 14's testimony would not be adverse to Lang. But Witness 14's decision whether or not to testify at all may be inconsistent with Lang's interest in having him testify. One of the attorneys representing Witness 14 is also representing Lang. Lang has also claimed to manage the funds that pay for that same attorney's representation of other defendants in different cases. Accordingly, these facts may present an actual or potential conflict, or the kind of appearance that is best avoided. *See Wheat*, 453 at 162 (noting among other concerns that conflicts invite disrespect for the integrity of the court, *quoting United States v. Dolan*, 570 F.2d 1177, 1184 (1978)). Further inquiry from this Court appears appropriate here too. Counsel for Lang has advised that he does not oppose such inquiry.

Finally, the United States seeks to inform this Court of the number of witnesses who retain a privilege against self-incrimination, or who may do so. With such information, this Court may

be better situated than the prosecution to inquire or assess whether or not additional witnesses may have conflicts. The United States believes that both parties have an interest in avoiding invocations of privilege during a witness' testimony and for that reason as well, the prosecution seeks to alert the Court to this issue.

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      UNITED STATES ATTORNEY
                                      D.C. Bar No. 481052

                                      */s/ Karen Rochlin*
                                      KAREN ROCHLIN
                                      DC Bar No. 394447
                                      Assistant United States Attorney Detailee
                                      U.S. Attorney's Office
                                      Southern District of Florida
                                      99 N.E. 4th Street
                                      Miami, Florida  33132
                                      (786) 972-9045
                                      Karen.Rochlin@usdoj.gov

                                      Craig Estes
                                      Assistant U.S. Attorney Detailee
                                      John Joseph Moakley Federal Courthouse
                                      1 Courthouse Way
                                      Boston, MA 02210
                                      (617) 748-3100
                                      Email: craig.estes@usdoj.gov